**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHLEY WILSON, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>PELOTON INTERACTIVE, INC., JOHN FOLEY, AND JILL WOODWORTH,<br><br><br>    Defendants. | Case No. 1:21-cv-02369-CBA-PK<br><br>AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

Plaintiff Ashley Wilson ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Peloton Interactive, Inc. ("Peloton" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

1

Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired the publicly traded securities of Peloton between September 11, 2020 and May 5, 2021, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.     Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and subsequent damages took place within this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the previously filed certification incorporated by reference herein, purchased Peloton securities during the Class Period and was economically damaged thereby.

7.      Defendant Peloton provides interactive fitness products such as the Peloton Bike and the Peloton Tread+ and Tread, which include touchscreens that stream live and on-demand classes. Peloton also provides connected fitness subscriptions and access to all live and on-demand classes. Peloton is a Delaware corporation with its headquarters located at 125 West 25th Street, 11th Floor, New York, NY 10001. Peloton's securities are traded on NASDAQ under the ticker "PTON."

8.      Defendant John Foley ("Foley") has been the Chief Executive Officer ("CEO") of Peloton throughout the Class Period.

9.      Defendant Jill Woodworth ("Woodworth") has been the Chief Financial Officer of Peloton ("CFO") throughout the Class Period.

10.     Defendants Foley and Woodworth are sometimes referred to herein as the "Individual Defendants."

11.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

12.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

<u>**SUBSTANTIVE ALLEGATIONS**</u>
<u>**Background**</u>

15.    Peloton launched the Tread+ treadmill in 2018. At that time, it was called the Tread. The Company renamed its signature treadmill in September 2020 to "Tread +."

16.    Peloton launched a new product called the "Tread" in September 2020.

<u>**Materially False and Misleading Statements**</u>

17.    On September 11, 2020, Peloton filed its annual report on Form 10-K with the SEC for the year ended June 30, 2020 ("2020 10-K"). The 2020 10-K was signed by Defendants Foley and Woodworth. Attached to the 2020 10-K were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Foley and Woodworth attesting to the accuracy of

financial reporting, the disclosure of any material changes to the Company's internal control over

financial reporting and the disclosure of all fraud. The 2020 10-K discussed the design of

Peloton's products, stating in relevant part:

> ***Our products and services may be affected from time to time by design and manufacturing defects that could adversely affect our business and result in harm to our reputation.***
>
> We offer complex hardware and software products and services that can be affected by design and manufacturing defects. Sophisticated operating system software and applications, such as those offered by us, often have issues that can unexpectedly interfere with the intended operation of hardware or software products. Defects may also exist in components and products that we source from third parties. Any such defects could make our products and services unsafe, create a risk of environmental or property damage and personal injury, and subject us to the hazards and uncertainties of product liability claims and related litigation. In addition, from time to time we may experience outages, service slowdowns, or errors that affect our fitness and wellness programming. As a result, our services may not perform as anticipated and may not meet customer expectations. There can be no assurance that we will be able to detect and fix all issues and defects in the hardware, software, and services we offer. Failure to do so could result in widespread technical and performance issues affecting our products and services and could lead to claims against us. We maintain general liability insurance; however, design and manufacturing defects, and claims related thereto, may subject us to judgments or settlements that result in damages materially in excess of the limits of our insurance coverage. In addition, we may be exposed to recalls, product replacements or modifications, write-offs of inventory, property and equipment, or intangible assets, and significant warranty and other expenses such as litigation costs and regulatory fines. If we cannot successfully defend any large claim, maintain our general liability insurance on acceptable terms, or maintain adequate coverage against potential claims, our financial results could be adversely impacted. Further, quality problems could adversely affect the experience for users of our products and services, and result in harm to our reputation, loss of competitive advantage, poor market acceptance, reduced demand for our products and services, delay in new product and service introductions, and lost revenue.

18.    The 2020 10-K discussed regulatory disputes and other proceedings, stating in

relevant part:

> ***From time to time, we may be subject to legal proceedings, regulatory disputes, and governmental inquiries that could cause us to incur significant expenses, divert our management's attention, and materially harm our business, financial condition, and operating results.***

From time to time, we may be subject to claims, lawsuits, government investigations, and other proceedings involving products liability, competition and antitrust, intellectual property, privacy, consumer protection, securities, tax, labor and employment, commercial disputes, and other matters that could adversely affect our business operations and financial condition. As we have grown, we have seen a rise in the number and significance of these disputes and inquiries. Litigation and regulatory proceedings, and particularly the intellectual property infringement matters that we are currently facing or could face, may be protracted and expensive, and the results are difficult to predict. Certain of these matters include speculative claims for substantial or indeterminate amounts of damages and include claims for injunctive relief. Additionally, our litigation costs could be significant. Adverse outcomes with respect to litigation or any of these legal proceedings may result in significant settlement costs or judgments, penalties and fines, or require us to modify our products or services, make content unavailable, or require us to stop offering certain features, all of which could negatively affect our membership and revenue growth. See Note 13 of the notes to our consolidated financial statements and the section titled "—Legal Proceedings" in Part I, Item 3 of this Annual Report on Form 10-K.

The results of litigation, investigations, claims, and regulatory proceedings cannot be predicted with certainty, and determining reserves for pending litigation and other legal and regulatory matters requires significant judgment. There can be no assurance that our expectations will prove correct, and even if these matters are resolved in our favor or without significant cash settlements, these matters, and the time and resources necessary to litigate or resolve them, could harm our business, financial condition, and operating results.

19.    On October 15, 2020, *Business Insider* published the article "Peloton issued a recall affecting nearly 30,000 bikes after reports of pedal breakages and customer injuries" which reported that Peloton recalled clip-in pedals for certain of the Company's bikes after Peloton received 120 reports of breakage and 16 reports of injury. The article quoted a Peloton spokesperson discussing the safety of Peloton's products, stating in relevant part:

The company announced Thursday that the recall applies to PR70P pedals, fitted on bikes sold between July 2013 and May 2016. The recall affects 27,000 bikes.

Peloton said it received 120 reports of pedal breakage and 16 reports of injury. Of the injuries, five required medical care, "such as stitches to the lower leg," the company said in a blog post.

6

> *"There is no greater priority than the safety and well-being of Peloton Members,"*
> Peloton spokeswoman Amelise Lane said in an email to Business Insider. The
> company has asked customers to stop using bikes with these pedals and get a
> replacement from the company.
>
> Peloton customers previously said they have waited months to get replacement
> pedals after the accessories break off mid-ride, Business Insider's Madeline Stone
> reported. The company has limited some in-home service due to the COVID-19
> pandemic, and customers also reported struggling to fix their own bikes.
>
> (Emphasis added).

20.     On October 16, 2020, *The New York Times* published the article "Peloton Recalls

Pedals on Thousands of Bikes After Reports of Injury" which included a statement from the

Company regarding the safety of its products, stating in part:

> *Amelise Lane, a spokeswoman for Peloton, said the company was focused on the
> safety and well-being of customers*. "*We take pride in providing the best
> equipment,* proprietary networked software, and world-class streaming digital
> fitness and wellness content that our members love," she said in a statement. She
> added that the recall affected only customers using their out-of-warranty original
> pedals on the affected bikes sold. The recall was earlier reported by Business
> Insider.
>
> (Emphasis added).

21.     On November 6, 2020, Peloton filed a Form 10-Q for the quarter ended September

30, 2020 ("1Q 2021 10-Q"). The 1Q 2021 10-Q was signed by Defendants Foley and Woodworth.

Attached to the 1Q 2021 10-Q were SOX certifications signed by Defendants Foley and

Woodworth attesting to the accuracy of financial reporting, the disclosure of any material changes

to the Company's internal control over financial reporting and the disclosure of all fraud. The 1Q

2021 10-Q discussed the design of Peloton's products, stating in relevant part:

> *Our products and services may be affected from time to time by design and
> manufacturing defects that could adversely affect our business and result in
> harm to our reputation.*
>
> We offer complex hardware and software products and services that can be affected
> by design and manufacturing defects. Sophisticated operating system software and
> applications, such as those offered by us, often have issues that can unexpectedly

interfere with the intended operation of hardware or software products. Defects may also exist in components and products that we source from third parties. Any such defects could make our products and services unsafe, create a risk of environmental or property damage and personal injury, and subject us to the hazards and uncertainties of product liability claims and related litigation. In addition, from time to time we may experience outages, service slowdowns, or errors that affect our fitness and wellness programming. As a result, our services may not perform as anticipated and may not meet customer expectations. There can be no assurance that we will be able to detect and fix all issues and defects in the hardware, software, and services we offer. Failure to do so could result in widespread technical and performance issues affecting our products and services and could lead to claims against us. We maintain general liability insurance; however, design and manufacturing defects, and claims related thereto, may subject us to judgments or settlements that result in damages materially in excess of the limits of our insurance coverage. In addition, we may be exposed to recalls, product replacements or modifications, write-offs of inventory, property and equipment, or intangible assets, and significant warranty and other expenses such as litigation costs and regulatory fines. If we cannot successfully defend any large claim, maintain our general liability insurance on acceptable terms, or maintain adequate coverage against potential claims, our financial results could be adversely impacted. Further, quality problems could adversely affect the experience for users of our products and services, and result in harm to our reputation, loss of competitive advantage, poor market acceptance, reduced demand for our products and services, delay in new product and service introductions, and lost revenue.

22.    The 1Q 2021 10-Q discussed regulatory disputes and other proceedings, stating in relevant part:

*From time to time, we may be subject to legal proceedings, regulatory disputes, and governmental inquiries that could cause us to incur significant expenses, divert our management's attention, and materially harm our business, financial condition, and operating results.*

From time to time, we may be subject to claims, lawsuits, government investigations, and other proceedings involving products liability, competition and antitrust, intellectual property, privacy, consumer protection, securities, tax, labor and employment, commercial disputes, and other matters that could adversely affect our business operations and financial condition. As we have grown, we have seen a rise in the number and significance of these disputes and inquiries. Litigation and regulatory proceedings, and particularly the intellectual property infringement matters that we are currently facing or could face, may be protracted and expensive, and the results are difficult to predict. Certain of these matters include speculative claims for substantial or indeterminate amounts of damages and include claims for injunctive relief. Additionally, our litigation costs could be significant. Adverse outcomes with respect to litigation or any of these legal proceedings may result in

significant settlement costs or judgments, penalties and fines, or require us to modify our products or services, make content unavailable, or require us to stop offering certain features, all of which could negatively affect our membership and revenue growth. See Note 8 of the notes to our condensed consolidated financial statements and the section titled "—Legal Proceedings" in Part II, Item 1 of this Quarterly Report on Form 10-Q.

23.    On February 5, 2021, Peloton filed a Form 10-Q for the quarter ended December 31, 2020 ("2Q 2021 10-Q"). The 2Q 2021 10-Q was signed by Defendants Foley and Woodworth. Attached to the 2Q 2021 10-Q were SOX certifications signed by Defendants Foley and Woodworth attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2Q 2021 10-Q discussed the design of Peloton's products, stating in relevant part:

> ***Our products and services may be affected from time to time by design and manufacturing defects that could adversely affect our business and result in harm to our reputation.***
>
> We offer complex hardware and software products and services that can be affected by design and manufacturing defects. Sophisticated operating system software and applications, such as those offered by us, often have issues that can unexpectedly interfere with the intended operation of hardware or software products. Defects may also exist in components and products that we source from third parties. Any such defects could make our products and services unsafe, create a risk of environmental or property damage and personal injury, and subject us to the hazards and uncertainties of product liability claims and related litigation. In addition, from time to time we may experience outages, service slowdowns, or errors that affect our fitness and wellness programming. As a result, our services may not perform as anticipated and may not meet customer expectations. There can be no assurance that we will be able to detect and fix all issues and defects in the hardware, software, and services we offer. Failure to do so could result in widespread technical and performance issues affecting our products and services and could lead to claims against us. We maintain general liability insurance; however, design and manufacturing defects, and claims related thereto, may subject us to judgments or settlements that result in damages materially in excess of the limits of our insurance coverage. In addition, we may be exposed to recalls, product replacements or modifications, write-offs of inventory, property and equipment, or intangible assets, and significant warranty and other expenses such as litigation costs and regulatory fines. If we cannot successfully defend any large claim, maintain our general liability insurance on acceptable terms, or maintain adequate coverage against potential claims, our financial results could be adversely impacted. Further, quality problems could adversely affect the experience for users of our products

and services, and result in harm to our reputation, loss of competitive advantage, poor market acceptance, reduced demand for our products and services, delay in new product and service introductions, and lost revenue.

The results of litigation, investigations, claims, and regulatory proceedings cannot be predicted with certainty, and determining reserves for pending litigation and other legal and regulatory matters requires significant judgment. There can be no assurance that our expectations will prove correct, and even if these matters are resolved in our favor or without significant cash settlements, these matters, and the time and resources necessary to litigate or resolve them, could harm our business, financial condition, and operating results.

24.    The 2Q 2021 10-Q discussed regulatory disputes and other proceedings, stating in relevant part:

> ***From time to time, we may be subject to legal proceedings, regulatory disputes, and governmental inquiries that could cause us to incur significant expenses, divert our management's attention, and materially harm our business, financial condition, and operating results.***
>
> From time to time, we may be subject to claims, lawsuits, government investigations, and other proceedings involving products liability, competition and antitrust, intellectual property, privacy, consumer protection, securities, tax, labor and employment, commercial disputes, and other matters that could adversely affect our business operations and financial condition. As we have grown, we have seen a rise in the number and significance of these disputes and inquiries. Litigation and regulatory proceedings, and particularly the intellectual property infringement matters that we are currently facing or could face, may be protracted and expensive, and the results are difficult to predict. Certain of these matters include speculative claims for substantial or indeterminate amounts of damages and include claims for injunctive relief. Additionally, our litigation costs could be significant. Adverse outcomes with respect to litigation or any of these legal proceedings may result in significant settlement costs or judgments, penalties and fines, or require us to modify our products or services, make content unavailable, or require us to stop offering certain features, all of which could negatively affect our membership and revenue growth. See Note 9 of the notes to our condensed consolidated financial statements and the section titled "—Legal Proceedings" in Part II, Item 1 of this Quarterly Report on Form 10-Q.
>
> The results of litigation, investigations, claims, and regulatory proceedings cannot be predicted with certainty, and determining reserves for pending litigation and other legal and regulatory matters requires significant judgment. There can be no assurance that our expectations will prove correct, and even if these matters are resolved in our favor or without significant cash settlements, these matters, and the time and resources necessary to litigate or resolve them, could harm our business, financial condition, and operating results.

25.    On March 18, 2021, Defendant Foley wrote a letter that was emailed to Tread+

owners and also published on Peloton's website revealing a tragic situation involving the death

of a child from a Tread+ while reassuring investors and users that the Company' products were

safe. Defendant Foley's letter stated in part:

> *We design and build all of our products with safety in mind*. But in order to help
> ensure that you and your family members stay safe with Peloton products in your
> home, we need your help. This is especially true during what I hope is the final
> stretch of the pandemic where everyone is still at home. To prevent accidents,
> please take care to review and follow all the safety warnings and instructions that
> we provide, and always:
>
>   • Keep children and pets away from Peloton exercise equipment at all times.
>     Before you begin a workout, double check to make sure that the space
>     around your Peloton exercise equipment is clear.
>   • When you finish a workout on your Tread+, remove the safety key and store
>     it out of reach of children and anyone else who should not be able to start
>     the Tread+.
>
> We are always looking for new ways to ensure that you have the best experience
> with our products, and *we are currently assessing ways to reinforce our warnings
> about these critical safety precautions to hopefully prevent future accidents*.

(Emphasis added).

26.    The statements referenced in ¶¶ 17-25 above were materially false and/or

misleading because they misrepresented and failed to disclose the following adverse facts

pertaining to the Company's business, operational and financial results, which were known to

Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or

misleading statements and/or failed to disclose that: (1) in addition to the tragic death of a child,

Peloton's Tread+ had caused a serious safety threat to children and pets as there were multiple

incidents of injury to both; (2) safety was not a priority to Peloton as Defendants were aware of

serious injuries and death resulting from the Tread+ yet did not recall or suggest a halt of the use

of the Tread+; (3) as a result of the safety concerns, the U.S. Consumer Product Safety Commission ("CPSC") declared the Tread+ posed a serious risk to public health and safety resulting in its urgent recommendation for consumers with small children to cease using the Tread+; (4) the CPSC also found a safety threat to Tread+ users if they lost their balance; (5) Tread featured similar safety concerns; (6) merely reinforcing safety warnings would be insufficient; (7) the CPSC and Peloton would issue a recall of the Tread+ and Tread; and (8) as a result of the foregoing, Defendants' statements about Peloton's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Begins to Emerge

27.    On April 17, 2021, a day the market was closed, the CPSC issued a press release entitled "CPSC Warns Consumers: Stop Using the Peloton Tread+" alerting the public to dangers, including death, associated with the Peloton Tread+, stating in relevant part:

> *Urgent Warning Comes After Agency Finds One Death and Dozens of Incidents of Children Being Sucked Beneath the Tread+ (Formerly Known as the Tread)*
>
> WASHINGTON, D.C. – The U.S. Consumer Product Safety Commission (CPSC) is warning consumers about the danger of popular Peloton Tread+ exercise machine after multiple incidents of small children and a pet being injured beneath the machines. ***The Commission has found that the public health and safety requires this notice to warn the public quickly of the hazard.***
>
> The urgent warning comes less than a month after Peloton itself released news of a child's death by a Peloton Tread+ and CPSC's announcement of an investigation into that incident.
>
> The agency is continuing to investigate all known incidents of injury or death related to the Peloton Tread+.
>
> ***To date, CPSC is aware of 39 incidents including one death. CPSC staff believes the Peloton Tread+ poses serious risks to children for abrasions, fractures, and death. In light of multiple reports of children becoming entrapped, pinned, and***

*pulled under the rear roller of the product, CPSC urges consumers with children at home to stop using the product immediately.* This underline video demonstrates the hazard to children posed by the Tread+. [*Warning, video content may be disturbing to some viewers.*] *It is believed that at least one incident occurred while a parent was running on the treadmill, suggesting that the hazard cannot be avoided simply by locking the device when not in use. Reports of a pet and objects being sucked beneath the Tread+ also suggest possible harm to the user if the user loses balance as a result.*

**What should consumers do now?**

- *Stop using the Peloton Tread+ if there are small children or pets at home. Incidents suggest that children may be seriously injured while the Tread+ is being used by an adult, not just when a child has unsupervised access to the machine.*
- If consumers must continue to use the product, CPSC urges consumers to use the product only in a locked room, to prevent access to children and pets while the treadmill is in use. Keep all objects, including exercise balls and other equipment, away from the treadmill.
- When not in use, unplug the Tread+ and store the safety key away from the device and out of reach of children.
- Report any Peloton Tread+ incidents to CPSC at www.SaferProducts.gov or to CPSC's Hotline at 800-638-2772.

(Emphasis added.)

28.    On April 17, 2021, a day the market was closed, Peloton issued a press release entitled "PELOTON REFUTES CONSUMER PRODUCT SAFETY COMMISSION CLAIMS: CPSC PUBLISHES MISLEADING, INACCURATE BULLETIN ON TREAD+ PRODUCT SAFETY" which stated the following, in pertinent part:

*The company is troubled by the Consumer Product Safety Commission's (CPSC) unilateral press release about the Peloton Tread+ because it is inaccurate and misleading. There is no reason to stop using the Tread+, as long as all warnings and safety instructions are followed.*

\*        \*        \*

*While Peloton knows that the Tread+ is safe for the home when used in accordance with warnings and safety instructions*, the company is committed to taking whatever steps are necessary and appropriate to further inform Members of

potential risks and remind them of measures they need to take to safeguard themselves and others in their households. Peloton will also continue to work to develop industry-leading safety features for connected home exercise equipment.

Peloton invited CPSC to make a joint announcement about the danger of not following the warnings and safety instructions provided with the Tread+, and Foley asked to meet directly with CPSC. ***CPSC has unfairly characterized Peloton's efforts to collaborate and to correct inaccuracies in CPSC's press release as an attempt to delay. This could not be farther from the truth.*** The company already urged Members to follow all warnings and safety instructions. Peloton is disappointed that, despite its offers of collaboration, and despite the fact that the Tread+ complies with all applicable safety standards, CPSC was unwilling to engage in any meaningful discussions with Peloton before issuing its inaccurate and misleading press release.

(Emphasis added.)

29.    On April 18, 2021, in response to the CPSC press release, Defendant Foley wrote

a letter that was published on Peloton's website which stated in part:

… I want to let you know what's happened in the past month. After we learned about the child's death, we immediately reported to the U.S. Consumer Product Safety Commission (CPSC). ***Since then we have fully cooperated with CPSC and responded to all of their requests, with one exception: we resisted their demands for personally identifiable information of certain Members because those Members had specifically requested that we not provide that information to CPSC. At no time was Peloton trying to impede CPSC's investigation.*** We were simply standing behind our Members' right to maintain their privacy, and we remain committed to providing this type of information only with a Member's consent or pursuant to a subpoena. Government agencies shouldn't have unfettered access to consumers' private information, and I am proud that we took a stand to protect these Members' privacy.

\*      \*      \*

***You may also have read news reports suggesting that CPSC believes that we should stop selling or recall the Tread+. I want to assure you that we have no intention of doing so. The Tread+ is safe when our warnings and safety instructions are followed***, and we know that, every day, thousands of Members enjoy working out safely on their Tread+.

\*      \*      \*

Finally, I'm proud to share that our Tread+ product team is working on a new ***software-enabled, backup access code that will provide an additional layer of***

14

***protection against unwanted use of the Tread+***. We are working hard to roll this out soon! We will continue to look for new ways to maintain our goal of leading the industry in safety and Member experience.

(Emphasis added.)

30.    On this news, Peloton's stock price fell $16.28 per share, or 14%, over the next three trading days to close at $99.93 per share on April 21, 2021, damaging investors.

31.    The statements referenced in ¶¶ 28-29 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) in addition to the tragic death of a child, Peloton's Tread+ had caused a serious safety threat to children and pets as there were multiple incidents of injury to both; (2) safety was not a priority to Peloton as Defendants were aware of serious injuries and death resulting from the Tread+ yet did not recall or suggest a halt of the use of the Tread+; (3) as a result of the safety concerns, the CPSC declared the Tread+ posed a serious risk to public health and safety resulting in its urgent recommendation for consumers with small children to cease using the Tread+; (4) the CPSC also found a safety threat to Tread+ users if they lost their balance; (5) Tread featured similar safety concerns; (6) the CPSC and Peloton would issue a recall of the Tread+ and Tread; (7) issues with the Tread+ and Tread were not patchable via software updates; (8) Defendants were not fully cooperating with the CPSC; (9) as opposed to Defendants' statements, CPSC statements were not misleading or inaccurate; and (10)  as a result of the foregoing, Defendants' statements about Peloton's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Emerges**

32.    On May 5, 2021, during market hours, the CPSC issued a statement entitled

"Statement of Acting Chairman Robert Adler on the Recall of the Peloton Tread + and Tread"

which stated the following, in pertinent part:

> I am pleased by today's announcement that the U.S. Consumer Product Safety
> Commission and Peloton have come to an agreement to protect users of the Peloton
> Tread+ and Tread products. ***The agreement, which the Commission voted this
> morning to accept, requires Peloton to immediately stop selling and distributing
> both the Tread+ and Tread products in the United States and refund the full
> purchase price to consumers who wish to return their treadmills.***
>
> The agreement between CPSC and Peloton is the result of weeks of intense
> negotiation and effort. I would like to thank the CPSC technical staff who have
> worked tirelessly to protect consumers and to warn the public. Even today, CPSC
> engineers are in our lab testing these treadmills to refine our understanding of their
> hazards. I would also like to thank Peloton and their CEO, John Foley, for taking
> these important steps to protect their customers. I am confident that Peloton will be
> making additional improvements in the coming weeks and months to ensure the
> safety of their users.
>
> The road to a recall is never smooth, to use a running metaphor. But CPSC faces a
> nearly insurmountable hurdle each and every time the agency wants to warn the
> public about a hazardous product. ***Under the gag order of Section 6(b) of our
> statute, the agency must negotiate with companies—often for weeks—before
> issuing any kind of safety warning.*** No other federal health and safety agency faces
> this restriction, and it is plain to see how bad it is for consumers that we are so
> limited in how we can protect them.
>
>                               \*        \*        \*
>
> ***Today is a day when we have taken steps to prevent further harm from these two
> products.*** As an exercise enthusiast, I know how important treadmills can be to the
> people who use them. ***But, I also know that those who use exercise equipment
> want to be sure that the only pain they might feel at the end of a workout is a sore
> muscle from their exertion, not a serious injury from a defective product.***
>
> (Emphasis added.)

16

33.     On May 5, 2021, Peloton posted an article entitled "CPSC and Peloton Announce:

Recall of Tread+ Treadmills After One Child Death and 70 Incidents; Recall of Tread Treadmills

Due to Risk of Injury" to its website. The article stated the following, in pertinent part:

> **Today, the U.S. Consumer Product Safety Commission (CPSC) and Peloton are announcing two separate voluntary recalls of Peloton's Tread+ and Tread treadmills.**
>
> **Consumers who have purchased either treadmill should immediately stop using it and contact Peloton for a full refund or other qualified remedy** as described in the press releases below.
>
> **Peloton has also stopped sale and distribution of the Tread+ and continues to work on additional hardware modifications.** CPSC previously warned consumers about the Tread+ in April.
>
> In the United States, the Tread was only sold as part of a limited invitation-only release from about November, 2020 to about March, 2021 and the company is currently working on a repair to be offered to Tread owners in the coming weeks.
>
> [Links omitted.]
>
> **Statement of Robert S. Adler, Acting Chairman of the CPSC**
>
> I am pleased that the U.S. Consumer Product Safety Commission and Peloton have come to an agreement to protect users of the Peloton Tread+ and Tread products. The agreement, which the Commission voted this morning to accept, **requires Peloton to immediately stop selling and distributing both the Tread+ and Tread products in the United States and refund the full purchase price to consumers who wish to return their treadmills**. The agreement between CPSC and Peloton is the result of weeks of intense negotiation and effort, culminating in a cooperative agreement that I believe serves the best interests of Peloton and of consumers. I would like to thank the CPSC technical staff who have worked tirelessly to protect consumers and to warn the public. **Today we have taken steps to prevent further harm from these two products.**
>
> [Link omitted.]
>
> **Statement of Peloton's CEO John Foley**
>
> The decision to recall both products was the right thing to do for Peloton's Members and their families. **I want to be clear, Peloton made a mistake in our initial response to the Consumer Product Safety Commission's request that we recall the Tread+. We should have engaged more productively with them from the**

17

*outset. For that, I apologize.* Today's announcement reflects our recognition that, by working closely with the CPSC, we can increase safety awareness for our Members. We believe strongly in the future of at-home connected fitness and are committed to work with the CPSC to set new industry safety standards for treadmills. We have a desire and a responsibility to be an industry leader in product safety." [sic]

(Emphasis added.)

34.    On May 5, 2021, both recalls were posted on the CPSC website: "Peloton Recalls Tread+ Treadmills After One Child Died and More than 70 Incidents Reported"[1] and "Peloton Recalls Tread Treadmills Due to Risk of Injury[.]"[2]

35.    On this news, Peloton's stock price fell $14.08 per share, or 14%, to close at $82.62 per share on May 5, 2021, further damaging investors.

36.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities, other than Defendants, who purchased or otherwise acquired the publicly traded securities of Peloton during the Class Period and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

---

[1]    https://web.archive.org/web/20210505195443/https://cpsc.gov/Recalls/2021/peloton-recalls-tread-plus-treadmills-after-one-child-died-and-more-than-70-incidents.
[2]    https://web.archive.org/web/20210505195537/https://cpsc.gov/Recalls/2021/peloton-recalls-tread-treadmills-due-to-risk-of-injury.

38.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether Defendants' acts as alleged violated the federal securities laws;

(b)    whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

19

(c)    whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)    whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)    whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f)    whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    the omissions and misrepresentations were material;

(c)    the Company's securities are traded in efficient markets;

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company traded on the NASDAQ, and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)     Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

44.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.      During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

49.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

50.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which

22

made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

51.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

52.    As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

53.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

54.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

55.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

### COUNT II
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

58.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

59.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section

20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

60.    Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 6, 2021     Respectfully submitted,

          **THE ROSEN LAW FIRM, P.A.**

          By: /s/ Phillip Kim
          Phillip Kim, Esq. (PK 9384)
          Laurence M. Rosen, Esq. (LR 5733)
          275 Madison Ave., 40th Floor
          New York, NY 10016
          Tel: (212) 686-1060
          Fax: (212) 202-3827
          Email: pkim@rosenlegal.com
          Email: lrosen@rosenlegal.com

          *Counsel for Plaintiff*