**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ASHLEY WILSON, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC., JOHN FOLEY, AND JILL WOODWORTH,<br><br>Defendants. | Case No: 1:21-cv-02369-CBA-PK<br><br>CLASS ACTION |
| LEIGH DRORI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC., JOHN FOLEY, and JILL WOODWORTH,<br><br>Defendants. | Case No: 1:21-cv-02925-KAM-CLP<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT**
**OF BIJAN KHAMANIAN'S MOTION FOR**
**CONSOLIDATION OF ACTIONS, APPOINTMENT AS LEAD**
**PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

ARGUMENT ................................................................................................................... 5

I.    CONSOLIDATION OF THE ACTIONS IS APPROPRIATE ........................................ 5

II.   THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF ........................... 6

      A.   The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff ............. 6

      B.   Movant Satisfies the Lead Plaintiff Provisions of the PSLRA .............................. 7

           1.   Movant Filed a Timely Motion ..................................................................... 8

           2.   Movant Has the Largest Financial Interest in the Relief Sought ................ 8

           3.   Movant Meets Rule 23's Typicality and Adequacy Requirements ........... 9

                a.   Movant's Claims Are Typical of the Claims of the Class ............ 10

                b.   Movant Is an Adequate Representative ....................................... 11

III.  MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED .............................. 13

CONCLUSION ............................................................................................................... 13

i

## TABLE OF AUTHORITIES

**Cases**

*Aude v. Kobe Steel, Ltd.*,
  No. 17-CV-10085 (VSB) 2018 U.S. Dist. LEXIS 57591 (S.D.N.Y. Apr. 4, 2018) ................. 10

*Batter v. Hecla Mining Co.*,
  No. 19-cv-4883(ALC) 2020 U.S. Dist. LEXIS 51665 (S.D.N.Y. Mar. 25, 2020)...................... 8

*Brady v. Top Ships Inc.*,
  324 F. Supp. 3d 335 (E.D.N.Y. 2018)..................................................................................... 8

*Burnham v. Qutoutiao Inc.*,
  No. 20-Cv-6707 (SHS), 2020 U.S. Dist. LEXIS 206752 (S.D.N.Y. Nov. 4, 2020) .................. 5

*Chahal v. Credit Suisse Grp. AG*,
  No. 18-CV-02268 (AT)(SN) 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018) .......... 8

*Dookeran v. Xunlei Ltd.*,
  No. 18-cv-467 (RJS) 2018 U.S. Dist. LEXIS 62575  (S.D.N.Y. Apr. 12, 2018)................ 11, 12

*Faig v. BioScrip, Inc.*,
  No. 13 Civ. 06922 (AJN), 2013 U.S. Dist. LEXIS 178754 (S.D.N.Y. Dec. 19, 2013) ............ 10

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011)......................................................................................... 6, 9

*Ford v. VOXX Int'l Corp.*,
  No. CV 14-4183 (JS)(AYS), 2015 U.S. Dist. LEXIS 92705 (E.D.N.Y. Apr. 13, 2015).......... 10

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ....... 9

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005)......................................................................................... 1, 9

*In re GE Sec. Litig.*,
  No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009)................... 12

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) ......................................................................................... 10

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998)....................................................................................... 9

*In re Orion Secs. Litig.*,
  No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008)................... 10

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) .................................................................................... 13

*Kristal v. Mesoblast Ltd.*,
   No. 20-CV-08430 (PMH), 2020 U.S. Dist. LEXIS 241852 (S.D.N.Y. Dec. 23, 2020) ............. 5

*Omdahl v. Farfetch Ltd.*,
   No. 19-cv-8657 (AJN) 2020 U.S. Dist. LEXIS 103935(S.D.N.Y. June 10, 2020) .................... 7

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v.*
   *Fairfax Fin. Holdings Ltd.*,
   No. 11-cv-5097(JFK)  2011 U.S. Dist. LEXIS 117545 (S.D.N.Y. Oct. 12, 2011) ................... 11

*Rauch v. Vale S.A.*,
   378 F. Supp. 3d 198 (E.D.N.Y. 2019) ............................................................................... 5

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
   No. 10-CV-00864 (SLT) (RER), 2011 U.S. Dist. LEXIS 88552 (E.D.N.Y. May 31, 2011) ... 11

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
   No. 05-cv-04617 (RJH) 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006) ...................... 9

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................ passim

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................ passim

Fed. R. Civ. P. 42(a) ............................................................................................................ 5, 6

Movant Bijan Khamanian ("Khamanian" or "Movant") hereby respectfully submits this Memorandum of Law in Support of Movant's Motion for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Bragar Eagel & Squire, P.C. ("BES") as Lead Counsel pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

**PRELIMINARY STATEMENT**

Presently pending before the Court are the two above-captioned securities class action lawsuits (together, the "Action") brought on behalf of a "Class" consisting of all persons and entities, other than Defendants (defined below), who purchased or otherwise acquired the publicly traded securities of Peloton Interactive, Inc. ("Peloton" or the "Company") between September 11, 2020 and May 5, 2021, inclusive (the "Class Period"). The Action alleges violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), as well as U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Peloton and certain of its senior officers (the "Defendants").

The PSLRA, as amended, 15 U.S.C. § 78u-4(a)(3)(B), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("At the lead plaintiff stage of the litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.") (internal quotations omitted). Movant has lost $127,195.34

1

as a result of the alleged fraud during the Class Period.[1]  Movant believes that he has the largest financial interest in the outcome of the Action.  Moreover, Movant satisfies the requirements of Rule 23 in that his claims are typical of the claims of the Class, and in that he will fairly and adequately represent the interests of the Class.

Accordingly, the Court should grant Movant's Motion in its entirety.

## FACTUAL BACKGROUND

Peloton provides interactive fitness products such as the Peloton Bike and the Peloton Tread+ and Tread, which include touchscreens that stream live and on-demand classes, as well as connected fitness subscriptions and access to all live and on-demand classes.  ¶ 7.[2]

On September 11, 2020, Peloton filed its annual report on Form 10-K with the SEC for the year ended June 30, 2020 ("2020 10-K") which stated, in part, "[o]ur products and services may be affected from time to time by design and manufacturing defects that could adversely affect our business and result in harm to our reputation".  ¶ 17.  The 2020 10-K also stated, "From time to time, we may be subject to legal proceedings, regulatory disputes, and governmental inquiries that could cause us to incur significant expenses, divert our management's attention, and materially harm our business, financial condition, and operating results."  ¶ 18.  Identical statements were made in subsequent Form 10-Q filings through February of 2021.  ¶¶ 21-24.

On October 15, 2020, *Business Insider* published the article "Peloton issued a recall affecting nearly 30,000 bikes after reports of pedal breakages and customer injuries" which

---

[1]  A signed certification identifying Khamanian's transactions in Peloton during the Class Period, as well as a chart calculating his losses, are attached to the Declaration of Marion C. Passmore, dated June 28, 2021 ("Passmore Decl."), as Exhibits 1 and 2, respectively.

[2]  Citations to "¶ __" are to paragraphs of the Amended Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint") (ECF No. 8), filed on May 6, 2021 in the first-filed action, *Wilson v. Peloton Interactive, Inc., et al.*, Case No: 1:21-cv-02369-CBA-PK (the "*Wilson* Action").  The facts set forth in the Complaint are incorporated herein by reference.

reported that Peloton recalled clip-in pedals for certain of the Company's bikes after Peloton received 120 reports of breakage and 16 reports of injury.  ¶ 19.

On March 18, 2021, defendant John Foley ("Foley") wrote a letter that was emailed to Tread+ owners and also published on Peloton's website revealing a tragic situation involving the death of a child from a Tread+ while reassuring investors and users that the Company' products were safe.  ¶ 25.

On April 17, 2021, a day the market was closed, the U.S. Consumer Product Safety Commission ("CPSC") issued a press release entitled "CPSC Warns Consumers: Stop Using the Peloton Tread+" alerting the public to dangers, including death, associated with the Peloton Tread+.  ¶ 27.  Following CPSC's press release, that same day, Peloton issued a press release entitled "PELOTON REFUTES CONSUMER PRODUCT SAFETY COMMISSION CLAIMS: CPSC PUBLISHES MISLEADING, INACCURATE BULLETIN ON TREAD+ PRODUCT SAFETY."  ¶ 28.

On April 18, 2021, in response to the CPSC press release, defendant Foley wrote a letter that was published on Peloton's website which stated, in part:  "we have fully cooperated with CPSC and responded to all of their requests, with one exception: we resisted their demands for personally identifiable information of certain Members because those Members had specifically requested that we not provide that information to CPSC.  At no time was Peloton trying to impede CPSC's investigation."  ¶ 29.

On this news, Peloton's stock price fell $16.28 per share, or 14%, over the next three trading days to close at $99.93 per share on April 21, 2021, damaging investors.  ¶ 30.

On May 5, 2021, during market hours, the CPSC issued a statement entitled "Statement of Acting Chairman Robert Adler on the Recall of the Peloton Tread + and Tread" which stated the

3

following, in pertinent part: "The agreement, which the Commission voted this morning to accept, requires Peloton to immediately stop selling and distributing both the Tread+ and Tread products in the United States and refund the full purchase price to consumers who wish to return their treadmills." ¶ 32.

On May 5, 2021, Peloton posted an article entitled "CPSC and Peloton Announce: Recall of Tread+ Treadmills After One Child Death and 70 Incidents; Recall of Tread Treadmills Due to Risk of Injury" to its website. ¶ 33. The same day, both recalls were posted on the CPSC website. ¶ 34.

On this news, Peloton's stock price fell $14.08 per share, or 14%, to close at $82.62 per share on May 5, 2021, further damaging investors. ¶ 35.

During the Class Period, Defendants made materially false and/or misleading statements and failed to disclose adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) in addition to the tragic death of a child, Peloton's Tread+ had caused a serious safety threat to children and pets as there were multiple incidents of injury to both; (2) safety was not a priority to Peloton as Defendants were aware of serious injuries and death resulting from the Tread+ yet did not recall or suggest a halt of the use of the Tread+; (3) as a result of the safety concerns, the CPSC declared the Tread+ posed a serious risk to public health and safety resulting in its urgent recommendation for consumers with small children to cease using the Tread+; (4) the CPSC also found a safety threat to Tread+ users if they lost their balance; (5) Tread featured similar safety concerns; (6) merely reinforcing safety warnings would be insufficient; (7) the CPSC and Peloton would issue a recall of the Tread+ and Tread; and (8) issues with the Tread+ and Tread were not patchable

4

via software updates; (9) Defendants were not fully cooperating with the CPSC; (10) as opposed to Defendants' statements, CPSC statements were not misleading or inaccurate; and, (11) as a result of the foregoing, Defendants' statements about Peloton's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.  ¶¶ 26, 31.

## ARGUMENT

### I.      CONSOLIDATION OF THE ACTIONS IS APPROPRIATE

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter has been filed," the court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Thereafter, the court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions."  *Id.*

Under the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact.  *See* Fed. R. Civ. P. 42(a).  Courts have taken the view that considerations of judicial economy favor consolidation.  *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 204 (E.D.N.Y. 2019) ("Consolidation is a valuable and important tool of judicial administration that should be invoked to expedite trial and eliminate unnecessary repetition and confusion.") (internal quotations omitted).  Consolidation is particularly appropriate in securities class action litigation.  *Burnham v. Qutoutiao Inc.*, No. 20-Cv-6707 (SHS), 2020 U.S. Dist. LEXIS 206752, at *4 (S.D.N.Y. Nov. 4, 2020) ("In securities class actions where the complaints are based on the same public statements and reports, consolidation is appropriate as long as it would not prejudice the defendants.") (citation and internal quotations omitted); *Kristal v. Mesoblast Ltd.*, No. 20-CV-08430 (PMH), 2020 U.S. Dist. LEXIS 241852, at *4 (S.D.N.Y. Dec. 23, 2020).

5

Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements.

The actions here present similar factual and legal issues, as they both involve the same subject matter and are based on the same wrongful course of conduct. The actions name the same parties as Defendants. Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate. *Burnham*, 2020 U.S. Dist. LEXIS 206752, at *4.

## II.     THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

### A.     The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff

The PSLRA mandates that the Court decide the lead plaintiff issue "as soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a) and (a)(3)(B).

First, the PSLRA provides that (1) the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after the filing of the first complaint, and (2) any class member may move for appointment as Lead Plaintiff within 60 days after the date on which the notice is published. 15 U.S.C. § 78u-4(a)(3)(A); *see Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court will, no later than 90 days after the date on which a notice is published, consider any motion filed by any purported class member in response to the notice and appoint as lead plaintiff the movant that the court determines to be "most capable of adequately representing the interests of class members." *Id.* The PSLRA provides a

6

presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

>   (aa)    has either filed the complaint or made a motion in response to a notice;
>
>   (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>   (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Omdahl v. Farfetch Ltd.*, No. 19-cv-8657 (AJN), 2020 U.S. Dist. LEXIS 103935, at *6 (S.D.N.Y. June 10, 2020). This presumption may be rebutted only upon proof by another class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa), (bb).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and has, what is to the best of his knowledge, the largest financial interest in the litigation of any other Class member(s) seeking appointment as lead plaintiff. Movant is also unaware of any unique defenses that Defendants could raise against him. Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Action.

### B.    Movant Satisfies the Lead Plaintiff Provisions of the PSLRA

As described in further detail below, Movant should be appointed lead plaintiff because he satisfies all of the requirements of the PSLRA. Movant filed a timely motion to be appointed lead plaintiff, holds the largest financial interest in the relief sought by the Class, and satisfies the typicality and adequacy requirements of Rule 23.

7

### 1.    Movant Filed a Timely Motion

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the *Wilson* Action published a notice on April 29, 2021, within 20 days of the filing of the first-filed complaint, through *Business Wire*, a widely circulated national business-oriented wire service. *See* Passmore Decl., Ex. 3; *Batter v. Hecla Mining Co.*, No. 19-cv-4883 (ALC), 2020 U.S. Dist. LEXIS 51665, at \*7-8 (S.D.N.Y. Mar. 25, 2020) (finding that a notice published on *PRNewswire* satisfied Rule 23). The notice informed members of the proposed Class of the 60-day deadline to seek appointment as lead plaintiff, which is June 28, 2021. *See* Passmore Decl., Ex. 3; 15 U.S.C. § 78u-4(a)(3)(A) and (B). Pursuant to the PSLRA and within the requisite time frame after publication of the required notice, Movant timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

### 2.    Movant Has the Largest Financial Interest in the Relief Sought

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Passmore Decl., Ex. 2. The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *See Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 344-45, 349-50 (E.D.N.Y. 2018); *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185, at \*5-6 (S.D.N.Y. June 21, 2018); ("In deciding which proposed lead plaintiff has 'the largest financial interest in the relief sought by the class,' courts in this district tend to consider four criteria, known as the <u>Lax</u> factors . . . Courts generally find the fourth factor, [net loss suffered], to be the most compelling.") (emphasis in original, citations omitted); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),

8

2007 U.S. Dist. LEXIS 14878, at *8 (E.D.N.Y. Mar. 2, 2007); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *13-14 (S.D.N.Y. Jan. 24, 2006) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period."); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998).

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period.  15 U.S.C. § 78u-4(e).

Within the Class Period, Movant purchased Peloton securities in reliance upon the materially false and misleading statements issued by Defendants and was injured thereby.  Movant has suffered substantial losses of $127,195.34 under a last-in-first-out ("LIFO") analysis as a result of Defendants' alleged fraudulent statements.  *See eSpeed*, 232 F.R.D. at 101 (noting that courts prefer losses to be calculated under LIFO); *Transocean Ltd.*, 272 F.R.D. at 129; *see also* Passmore Decl., Ex. 2 (Loss Chart).  Movant, thus, has a significant financial interest in the outcome of the Action.  To the best of Movant's knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### 3.   Movant Meets Rule 23's Typicality and Adequacy Requirements

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied:   (1) the class is so numerous that joinder of all members is

9

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant.  Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed.  *See Ford v. VOXX Int'l Corp.*, No. CV 14-4183 (JS)(AYS), 2015 U.S. Dist. LEXIS 92705, at *6 (E.D.N.Y. Apr. 13, 2015) (citing *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012)); *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 U.S. Dist. LEXIS 57591, at *8 (S.D.N.Y. Apr. 4, 2018) ("The parties moving for lead plaintiff are only required to make a prima facie showing that they meet Rule 23, and courts need only consider the typicality and adequacy requirements.").

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as lead plaintiff.

### a.     Movant's Claims Are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  A plaintiff satisfies the typicality requirement if the plaintiff has:  (1) suffered the same injuries as the absent class members; (2) the injuries are as a result of the same course of conduct by defendants; and (3) the plaintiff's claims are based on the same legal issues that prove the defendant's liability.  *See Faig v. BioScrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 U.S. Dist. LEXIS 178754, at *9 (S.D.N.Y. Dec. 19, 2013).  "The lead plaintiff's claims, however, 'need not be identical' to the claims of the class to satisfy this requirement."  *Id.*; *see also In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008)

10

("Indeed, [t]he possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (internal quotations omitted).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with, the claims of the other Class members. *See Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-00864 (SLT) (RER), 2011 U.S. Dist. LEXIS 88552, at *12 (E.D.N.Y. May 31, 2011) (typicality satisfied where movants purchased stock at artificially inflated prices "and suffered damages as a result"); *Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 U.S. Dist. LEXIS 62575, at *7 (S.D.N.Y. Apr. 12, 2018) (finding typicality requirement "easily met" when proposed lead plaintiff "asserted that it purchased [the company's] securities during the class period and was injured by false and misleading representations made by defendants") (quoting *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, No. 11-cv-5097(JFK), 2011 U.S. Dist. LEXIS 117545, at *5 (S.D.N.Y. Oct. 12, 2011)). Movant, like the other members of the Class, acquired Peloton securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby. Thus, Movant's claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and his losses were a result of Defendants' common course of wrongful conduct. Movant therefore satisfies the required *prima facie* showing of the typicality requirements of Rule 23(a)(3) for purposes of this Motion. *See Xunlei Ltd.*, 2018 U.S. Dist. LEXIS 62575, at *7.

### b.       Movant Is an Adequate Representative

Movant is also an adequate representative for the Class. Under Rule 23(a)(4), representative parties must "fairly and adequately protect the interests of the class." Adequate

11

representation will be found if: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Xunlei*, 2018 U.S. Dist. LEXIS 62575, at *6 (citation omitted); *see also In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *15 (S.D.N.Y. July 29, 2009) (Movant "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and [she] has retained competent and experienced counsel."). The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative class and whether there is evidence of any antagonism between the interests of a movant and other members of the class. 15 U.S.C. § 78u-4(a)(3)(B).

Movant meets the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative Class. Not only is there no evidence of conflict between the interests of Movant and those of the other members of the putative Class, but Movant has a significant and compelling interest in prosecuting the Action based on the large financial loss he has incurred as a result of the wrongful conduct alleged therein. *See Xunlei*, 2018 U.S. Dist. LEXIS 62575, at *7 (Movants' "substantial losses provide a sufficient incentive to vigorously litigate this case"). Indeed, Movant has already taken steps which demonstrate that he both recognizes and will protect the interests of the Class, including: (1) executing a certification detailing his Class Period transactions and expressing his willingness to serve as Class representative; (2) moving this Court to be appointed lead plaintiff; and (3) retaining competent and experienced counsel, who, as shown below, are experienced in class action litigation such as this involving allegations of securities fraud. Therefore, Movant will prosecute the Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and therefore satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  In addition, because Movant sustained the largest amount of losses from Defendants' alleged wrongdoing, Movant is the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead the Action.

### III.   MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  15 U.S.C. § 78u-4(a)(3)(B)(v); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'").  The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Here, Movant has selected and retained BES as proposed Lead Counsel for the Class.

As set forth in its accompanying firm résumé (Passmore Decl., Ex. 4), BES is highly accomplished in, and is currently acting as lead counsel in, a number of federal securities actions and has achieved many multi-million-dollar recoveries for investors.  The members of BES have extensive experience in successfully prosecuting complex securities class actions such as this and are well-qualified to represent the Class.  Thus, this Court may be assured that if the instant Motion is granted, the members of the Class will receive the highest caliber of legal representation.

**<u>CONCLUSION</u>**

For all the foregoing reasons, Movant respectfully requests that the Court:  (1) consolidate the above-captioned actions; (2) appoint Khamanian as Lead Plaintiff on behalf the Class;

13

(3) approve Movant's selection of BES as Lead Counsel for the Class; and (4) grant such other

and further relief as the Court may deem just and proper.

DATED: June 28, 2021                    Respectfully submitted,

                                        **BRAGAR EAGEL & SQUIRE, P.C.**

                                        By: */s/ Marion C. Passmore*
                                        Marion C. Passmore
                                        Melissa A. Fortunato
                                        810 Seventh Avenue, Suite 620
                                        New York, NY 10019
                                        Telephone:  (212) 308-5858
                                        Facsimile:  (212) 214-0506
                                        Email: passmore@bespc.com
                                        Email: fortunato@bespc.com

                                        *Counsel for Movant and Proposed*
                                        *Lead Counsel for the Class*

14

## CERTIFICATE OF SERVICE

I, Marion C. Passmore, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this 28th day of June, 2021.

/s/ Marion C. Passmore
Marion C. Passmore

15