**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PELOTON INTERACTIVE, INC., SECURITIES LITIGATION | Case No. 1:21-cv-02369(CBA)(PK) <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 2

    A.    Description of the Action.................................................................... 2

    B.    The Proposed Settlement ................................................................... 4

ARGUMENT............................................................................................................ 4

I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 4

    A.    The Court "Will Likely Be Able To" Approve The Proposed Settlement ............. 5

        1.    The Class Has Been Adequately Represented ............................................ 6

        2.    The Proposed Settlement Was Negotiated at Arm's Length ...................... 6

        3.    The Relief Provided for the Settlement Class Is Adequate......................... 8

            a.    The Costs, Risks, and Delay of Trial and Appeal.......................... 8

            b.    The Proposed Method for Distributing Relief Is Effective........... 10

            c.    Terms of Attorneys' Fees and Timing of Payment....................... 10

            d.    Related Agreements ................................................................... 11

        4.    The Settlement Treats Settlement Class Members Equitably................... 12

        5.    The Stage of the Proceedings and the Extent of Discovery Completed ... 12

        6.    The Risks of Maintaining the Settlement Class Action Through Trial .... 14

        7.    The Ability of Defendants To Withstand a Greater Judgment ................. 14

        8.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation...................................... 15

    B.    The Court "Will Likely Be Able To" Certify The Class For Settlement.............. 16

        1.    The Proposed Settlement Class Meets the Requirements of Rule 23(a)............................................................................................... 17

            a.    There Are Common Questions of Law and Fact .......................... 18

            b.    The Proposed Class Representative's Claims Are Typical.......... 19

i

        c.       The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Settlement Class ................................. 20

    2.       The Proposed Settlement Class Satisfies Rules 23(b)(3) ......................... 20

        a.       Common Questions of Law and Fact Predominate ...................... 20

        b.       A Class Action Is Superior to Other Methods of Adjudication .... 21

    3.       The Faruqi Firm Is Adequate to Serve as Class Counsel ......................... 22

II.       THE PROPOSED PLAN AND FORMS OF NOTICE SHOULD BE APPROVED ...... 22

III.      PROPOSED SCHEDULE ............................................................................................ 24

CONCLUSION ..................................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ...............................................................................15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) .....................................................................................7

*Allen v. Dairy Farmers of Am., Inc.*,
    No. 5:09-cv-230, 2011 WL 1706778 (D. Vt. May 4, 2011) ................................9, 16

*In re. Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012) ...................................................................................17, 20

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................20, 21

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000).................................................................................................6

*In re Beacon Assocs. Litig.*,
    No. 09 Civ. 777(LBS)(AJP), 2012 WL 1569827 (S.D.N.Y. May 3, 2012) ............................19

*In re BioScrip, Inc. Sec. Litig.*,
    273 F.Supp.3d 474 (S.D.N.Y. 2017)..............................................................................11

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
    No. 17-cv-04846-NGG-PK, 2021 WL 345790 (E.D.N.Y. Feb. 1, 2021)...............................24

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).............................................................................................16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
    Care L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)......................................................................................17, 19

*Christine Asia Co., Ltd. v. Yun Ma*,
    No. 1:15-md-02631(CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)...................11

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013)................................................................................23

*In re Citigroup Sec. Litig.*,
    No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ...............................16

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)......................................................................................... *passim*

*Consol. Edison, Inc. v. Ne. Utils.*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004)......................................................................23

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)..................................................................................14

*In re Deutsche Telekom AG Sec. Litig.*,
  229 F. Supp. 2d 277 (S.D.N.Y. 2002).....................................................................21

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)...................................9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...........................7

*Frank v. Eastman Kodak, Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)...........................................................................14

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................12, 13

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019).............................................................5, 8, 12

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 17, 2018) ...................................11

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-Civ.-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .................................11

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  210 F.R.D. 476 (S.D.N.Y. 2002) .................................................................17, 18, 21

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009)......................................................................16

*Lashambae v. Cap. One Bank, N.A.*,
  *No.* 117 Civ. 06406 (FB) (VMS),
  2020 WL 13572819 (E.D.N.Y. Oct. 21, 2020)..........................................................10, 11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262, 2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016)..........................................4

*Marisol A. by Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997).................................................................................17

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)...........................16, 17

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
   241 F.R.D. 435 (S.D.N.Y. 2007) ........................................................................19

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010).........................................................................20, 21

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)................................................................................15

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ..........................................................................18

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................14, 15

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019).......................................................................5, 12

*In re Platinum and Palladium Commodities Litig.*,
   No. 10cv3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) .................................17

*In re Prudential Sec. Inc. Ltd. P'Ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996) .........................................................................24

*Rieckborn v. Velti PLC*,
   No. 13-cv-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ....................13

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .....................................................23

*Slomovics v. All For a Dollar, Inc.*,
   906 F. Supp. 146 (E.D.N.Y. 1995) .......................................................................9

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ..........................................................................8

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................10

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ....................................................................23, 24

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ...............................................................18, 19, 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)..................................................................................4

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008).................................6

*Xuechen Yang v. Focus Media Holding Ltd.*,
    No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)...............6, 7, 13

**Statutes**

15 U.S.C. § 78u-4(a) ...........................................................................................................11, 23

**Other Authorities**

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

Fed. R. Civ. P. 23, advisory committee's note 2018 amendments ................................................12

Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in
    Securities Class Action Litigation: 2022 Full-Year Review* (NERA 2023).........................1, 15

Lead Plaintiff Richard Neswick ("Plaintiff" or "Neswick") submits this memorandum of law in support of his unopposed motion for preliminary approval of the proposed Settlement with defendants Peloton Interactive, Inc. ("Peloton" or the "Company"), John Foley, Jill Woodworth, Hisao Kushi, and Brad Olson (with Peloton, the "Defendants").[1]

## PRELIMINARY STATEMENT

Plaintiff secured a $13,950,000 all cash settlement, a meaningful recovery for the Settlement Class in light of the significant risks associated with continuing to litigate this Section 10(b) securities fraud case arising from the recall of Peloton's in-home treadmill products. This Settlement is in line with the median settlement value in securities class actions cases of $13 million in 2022[2] and well within the range of reasonableness to warrant preliminary approval. This case like all securities fraud cases presented numerous significant challenges including especially establishing the required element of scienter. Even had Plaintiff defeated Defendants' numerous arguments to dismiss the case at the pleading stage, the Settlement Class faced protracted litigation with no guarantee of success or recovery.

Accordingly, Plaintiff respectfully requests that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"). The Preliminary Approval Order will, *inter alia*: (1) preliminarily approve the Settlement set forth in the Stipulation; (2) certify the Settlement Class for settlement purposes; (3) appoint Plaintiff as Class Representative and Faruqi & Faruqi, LLP (the "Faruqi Firm") as Class Counsel

---

[1]     Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated April 17, 2023 ("Stipulation"), filed concurrently herewith; (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; and (e) all references to Exhibits 1-3 are to the exhibits annexed to the Declaration of James M. Wilson, Jr. in support of this motion, filed concurrently herewith ("Wilson Decl.").

[2]     Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation – 2022 Full-Year Review* (NERA 2023) 1. Ex. 2.

1

for settlement purposes; (4) approve the form and manner of providing notice of the Settlement to the Settlement Class; and (5) set a date for the Settlement Hearing.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Description of the Action**

The litigation began on April 29, 2021, when plaintiff Ashley Wilson filed the initial class action complaint against Peloton and certain defendants in the United States District Court for the Eastern District of New York.  ECF No. 1.  On June 28, 2021, Neswick moved to consolidate the related cases pending in the E.D.N.Y., to be appointed as lead plaintiff, and approve of his selection of the Faruqi Firm as lead counsel in the Action.  ECF Nos. 25-27.  On October 26, 2021, Magistrate Judge Peggy Kuo recommended that Neswick's motion be granted, that the actions be consolidated, that Neswick be appointed as lead plaintiff, and that the Faruqi Firm be appointed as lead counsel.  ECF No. 37.  On November 16, 2021, Judge Amon adopted the report and recommendation in full, consolidating the cases and appointing Plaintiff Neswick as Lead Plaintiff and appointing the Faruqi Firm as Lead Counsel.

On January 21, 2022, Plaintiff filed an amended class action complaint (the "Complaint"). ECF No. 45. The Complaint asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder against Defendants.  Complaint ¶ 1.  Briefly, the Complaint alleges that during the Class Period, Peloton's signature treadmill, the Peloton Tread+, was involved in events in which personal injuries or product damage had occurred.  *Id.* at ¶¶ 30-40.  As well, touchscreens on some of Peloton's lower cost treadmill, the Peloton Tread, were coming loose while the treadmill was in use.  *Id.* at ¶¶ 41-44.  The Complaint alleges Defendants concealed this information and instead released outdated risk factors and positive statements about the Company's superior products and dedication to safety.  *Id.* at ¶¶ 55-69.  On March 18, 2021, Peloton disclosed that the Tread+ was

2

involved in an incident in which a child tragically died and that the Company was aware of a small number of incidents involving the Tread+ where children had been hurt. *Id.* at ¶¶ 70-71. However, the Complaint alleges the Company did not disclose the full extent of the problem, and that Peloton initially questioned the United States Consumer Product Safety Commission's efforts to protect consumers by issuing a recall. *Id.* at ¶¶ 74-84. After a series of statements Lead Plaintiff challenges, Peloton eventually recalled the Tread+ and Tread on May 5, 2021. *Id.* at ¶¶ 85-89.

On March 7, 2022, Defendants moved to dismiss the Complaint. ECF Nos. 51-52. On April 6, 2021, Plaintiff opposed Defendants' motion to dismiss (ECF No. 55), and on April 26, 2021, Defendants filed their reply in support of their motion (ECF No. 58). On June 8, 2022, the Court held oral arguments on the motion to dismiss, and reserved decision on the motion.

On December 15, 2022, while Defendants' motion to dismiss remained pending, the Parties participated in a mediation, conducted by David Murphy of Phillips ADR, a well-respected and highly experienced mediator and former securities litigator, to explore a potential negotiated resolution of the claims in the Action. The mediation involved an extended discussion about a potential resolution, and was preceded by the exchange of mediation statements and reply mediation statements. The December 15, 2022 mediation with Mr. Murphy lasted well into the late evening hours and resulted in the Parties reaching an agreement-in-principle to settle and release the claims asserted against Defendants in the Action, subject to the completion of confirmatory discovery. The Parties immediately notified the Court by letter the night of December 15, 2022 of the settlement in principle. Confirmatory discovery is ongoing. Defendants began producing confirmatory discovery documents in January 2023 and will make at least one Peloton employee available for an informal interview prior to the deadline for

3

Plaintiff's final approval motion.

### B.    The Proposed Settlement

The Settling Parties agreed to resolve the litigation for total consideration of $13,950,000.00. The Settlement Amount will be paid by Defendants, placed into an interest-bearing escrow account, and after paying attorneys' fees and expenses approved by the Court and other costs of settlement, the Settlement Fund will be distributed to Authorized Claimants. In exchange for the payment of the Settlement Amount, Plaintiff and the Settlement Class will release all Released Plaintiffs' Claims against Defendants' Releasees.  As further described below, Plaintiff entered into this Settlement with a full and comprehensive understanding of the strengths and weaknesses of the claims in the Complaint.  Plaintiff and Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon, and thus is in the best interests of, the Settlement Class.

### ARGUMENT

### I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that any compromise of a class action must receive court approval. There is a "strong judicial policy" in favor of class action settlements. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005).

The settlement approval process involves two steps. First, the "court makes a preliminary evaluation" of the settlement's "fairness" to determine whether it is appropriate to send notice of the proposed settlement to the class.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016).  Second, the court determines whether to grant final approval of the proposed settlement after notice has been provided to the class and a hearing has been held.  *Id.*

4

Under the amendments to Rule 23 that went into effect on December 1, 2018, the issue at preliminary approval is whether the court "will *likely* be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purpose of judgment on the proposal." Rule 23(e)(1)(B). For the reasons explained below, the Settlement meets Rule 23(e)'s requirements.

## A.    The Court "Will Likely Be Able To" Approve The Proposed Settlement

Rule 23(e)(2) directs the court to determine whether the settlement is "fair, reasonable, and adequate" after considering: (A) the adequacy of the representation; (B) the existence of arm's-length negotiations; (C) the adequacy of the relief provided; and (D) the equitable treatment of class members. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (citing Rule 23(e)(2)).

Rule 23(e)(2)'s new factors, however, do not displace the factors that the Second Circuit previously used to determine whether a settlement is "fair, reasonable, and adequate"—the so-called "*Grinnell* factors." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (stating that "the new Rule 23(e) factors [] add to, rather than displace, the *Grinnell* factors[]"); *GSE*, 414 F. Supp. 3d at 692 (same). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Payment Card*, 330 F.R.D. at 29 (citing, *inter alia*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). A settlement need not meet all nine *Grinnell* factors to be considered "fair, reasonable and adequate[;]" rather, "the court should consider the totality of these factors

5

in light of the particular circumstances." *Xuechen Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at \*4 (S.D.N.Y. Sept. 4, 2014). As explained below, the Settlement satisfies Rule 23(e)(2) and the applicable[3] *Grinnell* factors.

### 1. The Class Has Been Adequately Represented

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Determining adequacy generally involves considering whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both prongs are met here. Plaintiff's interests are directly aligned with those of other Settlement Class Members, as he claims to have suffered damages from the same alleged conduct, and through those claims seeks the same recovery from Defendants. *Yang*, 2014 WL 4401280, at \*12 (finding adequacy established where, "like all Class Members, [lead plaintiff] purchased Focus Media ADSs at artificially inflated prices during the Class Period as a result of Defendants' alleged materially false and misleading statements and was damaged thereby[]").

Additionally, Lead Counsel is a national law firm that is qualified, experienced, and able to conduct this litigation. *See* Ex. 1, Faruqi Firm resume. Lead Counsel has devoted significant efforts to identifying and investigating the potential claims in this Action and has fought vigorously to preserve those claims.

### 2. The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires the court to consider whether the proposed settlement "was

---

[3]    *Grinnell* factor number two, the Class's reaction to the Settlement, is not a relevant factor at this time because notice has not yet been distributed. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at \*2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

negotiated at arm's length[.]"  A proposed settlement is entitled to a presumption of fairness if "it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) ("[A] strong initial presumption o[f] fairness attaches to the proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations.").

Here, the parties engaged in a mediation session after, *inter alia,* Lead Counsel thoroughly investigated the relevant facts, drafted the Complaint, vigorously opposed the motion to dismiss, and filed a separate motion to strike extrinsic materials from those motions. *See, e.g.*, ECF Nos. 45, 55, 56.  After exchanging mediation statements and exhibits, the Parties had a mediation session with the assistance of David Murphy, a well-respected mediator with significant experience mediating securities fraud class actions. *See Yang*, 2014 WL 4401280, at *5 (finding that the participation of "a highly qualified mediator[,]" "strongly supports a finding that negotiations were conducted at arm's length and without collusion[]").  After debating their positions during the mediation, the parties reached an agreement in principle subject to Defendants providing Lead Plaintiff with confirmatory discovery regarding the claims in the Complaint. Pursuant to the terms of the settlement in principle reached at the mediation, the Parties are engaged in confirmatory discovery, which is ongoing. As of the filing of this motion for preliminary approval, Defendants have produced thousands of pages of documents relating to the case and the Parties are in the process of scheduling at least one interview of a Peloton employee to be conducted by Plaintiff prior to seeking approval of the Settlement.

Accordingly, the settlement was not achieved until the Parties were sufficiently informed

of the strengths and weaknesses of the case to competently evaluate its merits and agree on a settlement figure acceptable to Defendants and fair, adequate, and reasonable to the Settlement Class.

### 3.      The Relief Provided for the Settlement Class Is Adequate

Rule 23(e)(2)(C) requires the Court to determine whether the relief provided for the Settlement Class is adequate, taking the following four specific considerations into account: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of distributing relief to the class; (3) the terms and timing of attorneys' fees; and (4) any related agreements.  Each of these considerations is addressed below, along with the *Grinnell* factors that overlap with them.

### a.      The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is adequate when taking into account the costs, risks, and delay of trial and appeal.  Fed R. Civ. P. 23(e)(2)(C)(i).  This inquiry overlaps with *Grinnell* factors one, four, and five: the "complexity, expense and likely duration of the litigation," the "risks of establishing liability[,]" and "the risks of establishing damages."  *See GSE*, 414 F. Supp. 3d at 693-94 (noting the overlap).

Here, the Settlement Amount of $13,950,000.00 provides an immediate benefit to the Class and is adequate when compared to the risk that no recovery, or lesser recovery, might be achieved after prolonged litigation.  While Plaintiff believes that the claims asserted in the Action are meritorious and that the evidence developed to date supports those claims, he acknowledges that continuing the Action poses significant risks and additional costs.  It is well known that securities class action litigation is inherently complex.  *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (stating that "class action suits in general have a well-deserved reputation as being most complex[,]" and that federal courts "have long recognized" that securities class action "litigation is notably difficult and notoriously uncertain[]").

8

This case is no exception. There is a risk that the Court would have granted Defendants' motion to dismiss in its entirety, or would have severely limited the claims in the Action. Even if the Action were to survive a motion to dismiss, the fact discovery process would require, among other things, numerous document subpoenas to third parties, which are notoriously difficult to enforce; retention of engineering, products liability, and financial expert witnesses; discovery motion practice; production and review of thousands of pages of documents; and taking numerous depositions. Defendants have denied any wrongdoing and would undoubtedly aggressively litigate this Action at each step. Thus, even after the considerable time and expense of discovery, there is a chance Plaintiff's claims could be dismissed at summary judgment.

Even if the claims were to survive summary judgment, trial would be very time consuming and expensive and would monopolize valuable court resources. *See Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2011 WL 1706778, at *3 (D. Vt. May 4, 2011) ("Neither the controlling case law nor the applicable rules and statutes favor [] an approach" that "would also force Dean, a party that is willing to settle on terms Plaintiffs consider favorable, to proceed with costly and protracted litigation."). Indeed, the engineering and damages issues present in this case would likely boil down to a "battle of the experts" at trial, creating the risk that the jury may believe Defendants' expert over Lead Plaintiff's and find in Defendants' favor. *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *8 (S.D.N.Y. July 27, 2007).

Furthermore, a favorable judgment could be the subject of post-trial motions and appeals, delaying any payment to Settlement Class Members even if Plaintiff were to prevail at trial. *See Slomovics v. All For a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is

9

in the best interests of the Class.").

### b.      The Proposed Method for Distributing Relief Is Effective

Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of distributing relief to the class is effective, including the processing of class members' claims. The Settlement provides a well-established method for distributing relief to eligible Settlement Class Members and processing claims.  As explained in Section II, *infra*, the notice plan includes mailing a postcard notice to all Settlement Class Members who can be identified with reasonable effort.  *See* Stipulation, Ex. A-1; Ex. A-2. This notice will direct Settlement Class Members to a website dedicated to the Settlement which will provide Settlement Class Members with the opportunity to submit the information necessary for the Claims Administrator to calculate each eligible Settlement Class Member's claim pursuant to the Plan of Allocation.  *See* Stipulation, Ex. A-1 at 15-22; Ex. A-2.  Under the proposed Plan of Allocation, which was developed with the assistance of a damages consultant, Settlement Class Members who are eligible to participate in the Settlement will receive a *pro rata* share of the recovery based upon their claimed losses consistent with the Action's allegations.  *See* Stipulation, Ex. A-1 at 15-22.  Plaintiff respectfully submits that this method of distribution and claims processing is effective.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008) ("*Pro-rata* distribution of settlement funds based on investment loss is clearly a reasonable approach.").

### c.      Terms of Attorneys' Fees and Timing of Payment

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment[.]"  Lead Counsel intends to seek an award of attorneys' fees in an amount up to 28% of the Settlement Amount, plus accrued interest, and expenses in an amount not to exceed $100,000.  This request is in line with those awarded in recent cases in this District.  *See, e.g., Lashambae v. Cap. One Bank, N.A.*, No. 117 Civ. 06406

10

(FB) (VMS), 2020 WL 13572819, at *5 (E.D.N.Y. Oct. 21, 2020) (finding that 30% of the Settlement Amount[] is reasonable"); *In re BioScrip, Inc. Sec. Litig.*, 273 F.Supp.3d 474, 477, 502-03 (S.D.N.Y. 2017) (approving requested fee of 25% of the $10.9 million settlement amount); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ.-8557 (CM), 2014 WL 7323417, at *3, *12 (S.D.N.Y. Dec. 19, 2014) (approving requested fee of 33.3% of the $3.8 million settlement amount and collecting cases awarding that percentage). Pursuant to the Stipulation, any award of attorneys' fees and expenses is separate from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation and any disapproval or modification of an application for an award of attorneys' fees and/or litigation expenses by the Court shall not affect the enforceability of the Stipulation. Stipulation ¶ 19. Additionally, Plaintiff intends to request an amount not to exceed $5,000 pursuant to 15 U.S.C. § 78u-4(a)(4) for his reasonable costs and expenses in connection with representing the Settlement Class.

### d.    Related Agreements

Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy in light of any agreements made in connection with it. The only such agreement is the Parties' confidential Supplemental Agreement, which gives Defendants the option "to terminate the Settlement and render the Stipulation null and void in the event that requests for exclusion from the Settlement Class exceed certain agreed upon criteria[.]" Stipulation ¶40.a. This type of agreement is common in class actions and does not render a settlement unfair. *See Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631(CM) (SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 17, 2018) ("The existence of a termination

11

option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### 4.    The Settlement Treats Settlement Class Members Equitably

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways. . . ." Fed. R. Civ. P. 23, advisory committee's note to 2018 amendments.  Under the proposed Plan of Allocation, Settlement Class Members who are eligible to participate in the Settlement will be required to sign the same release and will receive a *pro rata* share of the recovery based upon their claimed losses consistent with the Action's allegations. *See* Stipulation, Ex. A-1 at 15-22. Thus, the proposed Settlement treats members of the Settlement Class equitably relative to each other. *See GSE*, 414 F. Supp. 3d at 698-99 ("Under the proposed plan of distribution, claimants will be treated equitably by receiving a pro rata share of the recovery based on the estimated price impact of defendants' conduct on their . . . transactions."); *Payment Card*, 330 F.R.D. at 47 (finding that this factor weighed in favor of preliminary approval where, inter alia, "the scope of the release applies uniformly to putative class members, and does not appear to affect the apportionment of the relief to class members . . .").

### 5.    The Stage of the Proceedings and the Extent of Discovery Completed

*Grinnell* factor number three, "the stage of the proceedings and the amount of discovery completed – is intended to assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004). Formal discovery is not required before settlement; rather, "the question is whether the parties had adequate information about their

claims" before entering into settlement. *Id.*; *see Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding that "[d]espite reaching settlement relatively early in the life span of this case, the Settling Parties have shown that their decision to settle was made on the basis of a thorough understanding of the relevant facts and law[,]" even though settlement was reached prior to even the filing of a motion to dismiss).

Although the Settlement was achieved early in the litigation, it was reached only after the parties on both sides had a comprehensive understanding of the potential risks and procedural hurdles facing further litigation of this Action. For example, prior to the mediation, Lead Counsel conducted a thorough investigation by reviewing and analyzing several years-worth of publicly available information regarding Defendants, consulted with investigators who conducted an investigation including by contacting relevant former employees of the Company *inter alia*, and consulted with damages experts to evaluate the Settlement Class's damages and loss causation issues.  Lead Counsel also conducted substantial legal research in connection with opposing Defendants' motion to dismiss. Thus, Plaintiff and Lead Counsel had sufficient information to enter into the settlement in principle during the mediation. *Yang*, 2014 WL 4401280, at *7 (finding that this factor supported settlement where "Plaintiff and Lead Counsel have some knowledge of the strengths and weaknesses of Plaintiff's claims and considerable knowledge about the limits on their ability to recover anything for the Class if they win . . . ."). Lead Counsel has seen a substantial number of internal confidential documents and emails and is confident at this point that the settlement is fair and adequate.  Lead Counsel will continue to review thousands of pages of confirmatory discovery documents and will conduct an interview of at least one Peloton employee who is knowledgeable about the facts alleged in the Complaint to fully confirm that the settlement is fair and reasonable before seeking final approval.

**6.     The Risks of Maintaining the Settlement Class Action Through Trial**

*Grinnell* factor number six inquires into the "risks of maintaining the class action through the trial." *Grinnell*, 495 F.2d at 463. The Class has not yet been certified. While Plaintiff is confident that the class meets the requirements for certification, *see* Section I.B, *infra*, Plaintiff is aware that there is a risk the Court could disagree given the size and trading in the market for the Company's stock.  Furthermore, even if the Court were to certify the Class, there is always a risk that the Class could be decertified at a later stage in the proceedings. *See Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (acknowledging that while plaintiffs might ultimately prevail on class certification were the settlement disapproved, "the risk that the case might be not certified is not illusory and weighs in favor of the Class Settlement[]"). Thus, the risks and uncertainty surrounding Class certification also supports approval of the Settlement.

**7.     The Ability of Defendants To Withstand a Greater Judgment**

*Grinnell* factor number seven inquires into whether Defendants could withstand a judgment greater than that secured by the settlement. *Grinnell*, 495 F.2d at 463. Lead Counsel believes that the possibility of achieving a greater recovery than that provided by the settlement is unlikely. The Settlement Amount will be funded by Defendants and/or their insurers. *See* Stipulation ¶9. It is Plaintiff and Lead Counsel's understanding that greater recovery is unlikely. *See* Ex. 3.

Even if Defendants could withstand a greater judgment, this factor is generally not determinative where, as here, "other *Grinnell* factors weigh heavily in favor of settlement." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (affirming district court's decision to approve the proposed settlement even though the "defendants' ability to withstand a higher judgment weighed against the settlement"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("[T]he fact that a defendant is able to pay more than it offers in

14

settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

**8.     The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

Grinnell factors eight and nine require the Court to evaluate the Settlement's reasonableness in light of the best possible recovery and the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. The adequacy of a Settlement is judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). There is no specific equation by which a court determines that a settlement is reasonable, adequate, or fair. *See PaineWebber*, 171 F.R.D. at 130. Rather, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see PaineWebber*, 171 F.R.D. at 130 (the determination of a settlement's reasonableness "is not susceptible of a mathematical equation yielding a particularized sum, but turns on whether the settlement falls within a range of reasonableness").

The Settlement Fund of $13,950,000.00 represents approximately 2% of the Class's potential damages (assuming the proposed Class is certified and all claims and damages were proven) that Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged fraudulent activity.  This is right in line with the median ratio for recent securities class action settlements, which NERA Economic Consulting determined was 1.8% for 2022.  *See* Ex. 2 at 18, Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA 2023). The percentage is also within the range of

15

typical recoveries in complex securities litigation. *See, e.g.*, *In re Citigroup Sec. Litig.*, No. 09 MD 2070(SHS), 2014 WL 2112136, at *5 (S.D.N.Y. May 20, 2014) (determining settlement amount equal to 2% of the class's out-of-pocket losses "falls squarely within this range of reasonableness"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483-85 (S.D.N.Y. 2009) (finding settlement equal to 2% of aggregate expected recovery to be reasonable); *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in complex securities class actions range from 1.6% to 14% of estimated damages).

Given the significant risk and expense of continued litigation, the proposed Settlement is well within the range of reasonableness and warrants preliminary approval to permit Class Members to at least ***consider*** its terms. *See Dairy Farmers*, 2011 WL 1706778, at *3 ("[W]ere the court to deny preliminary approval . . . it would be depriving settlement class members of the right to even ***consider*** the [] Settlement.").

### B.    The Court "Will Likely Be Able To" Certify The Class For Settlement

Rule 23(e)(1)(B)(ii) requires the Court to consider whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Plaintiff seeks certification of the following Class for the purposes of Settlement only:

> "Settlement Class" means all persons or entities who purchased or otherwise acquired Peloton securities during the Class Period, and were damaged thereby. Excluded from the Settlement Class are: (i) Defendants; (ii) current and former officers and directors of Peloton; (iii) members of the immediate family of each of the Individual Defendants; (iv) all subsidiaries and affiliates of Peloton and the directors and officers of Peloton and their respective subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, officers, directors, and any other individual or entity in which any Defendant has a controlling interest; (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of all such excluded parties; and (vii) any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion.

"The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class-action settlement." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04

16

Civ. 8144(CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009); *In re Platinum and Palladium Commodities Litig.*, No. 10cv3617, 2014 WL 3500655, at *8 (S.D.N.Y. July 15, 2014) ("A court may certify a class for the purpose of a classwide settlement."). To certify a class for the purposes of settlement, a court must find that the proposed class satisfies the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as at least one subsection of Rule 23(b). *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) ("Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied."). Furthermore, in this Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility[.]" *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). This "liberal standard is in accord with this Circuit's preference for the use of class actions in securities law claims." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). The proposed class easily meets the certification standards under Rules 23(a) and 23(b).

      **1.     The Proposed Settlement Class Meets the Requirements of Rule 23(a)**

Rule 23(a) provides that a class may be certified if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To demonstrate numerosity, Plaintiff must show only the extreme difficulty or inconvenience of joining all members of the class. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007) ("The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."). The "numerosity requirement is presumed satisfied if there are 40 class members." *Platinum*, 2014 WL 3500655, at *8. In securities class actions that relate "to publicly owned and nationally listed corporations, the

17

numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 69-70 (S.D.N.Y. 2009).

During the Class Period, Peloton securities were listed and actively traded on the NASDAQ Global Select Market.  Complaint ¶ 18. As of April 30, 2021, there were 268,744,362 Peloton Class A shares outstanding (Peloton SEC Form 10-Q at 1 (filed May 7, 2021)), potentially owned by hundreds or thousands of persons who are Class Members.  Accordingly, joinder would be impracticable, thus satisfying the numerosity requirement of Rule 23(a)(1).

### a.    There Are Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality does not mandate that all class members make identical claims and arguments.  Rather, a "plaintiff must identify some unifying thread among the members' claims that warrants class treatment." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007). For example, in securities class actions, "where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." *Indep. Energy*, 210 F.R.D. at 479 ("The commonality requirement has been applied permissively in securities fraud litigation.").

The overarching issues shared by all Class Members is whether Defendants violated the Exchange Act and the rules promulgated thereunder in connection with the factual allegations discussed above. Specifically, common questions of law and fact in this case include: (a) whether Defendants violated the Exchange Act and the rules promulgated thereunder; (b) whether Defendants omitted and/or misrepresented material facts; (c) whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (d) whether Defendants knew or recklessly

18

disregarded that their statements were false and misleading; (e) whether the price of Peloton securities were artificially inflated; and (f) the extent of the damage sustained by Class Members and the appropriate measure of damages. Complaint ¶151. These are all common questions because each Class Member has to prove the same elements to establish Defendants' liability and satisfy the low hurdle of Rule 23(a)(2). *See Vivendi*, 242 F.R.D. at 84 (finding commonality satisfied where plaintiffs allege elements of a Rule 10b-5 claim).

<strong>b.      The Proposed Class Representative's Claims Are Typical</strong>

A Class may be certified if the claims of the representative parties are typical of the claims of the Class. Rule 23(a)(3). The typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States*, 504 F.3d at 245; *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 241 F.R.D. 435, 444 (S.D.N.Y. 2007) ("The typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. . . . A close nexus between the claims assures that the representatives will advance the interests of all class members[.]"). Typicality, however, does not require that all class members share identical claims. When a representative alleges that "the same unlawful conduct was directed at or affected both [himself] and the class sought to be represented" he will usually satisfy the typicality requirement "irrespective of minor variations in the fact patterns underlying individual claims." *In re Beacon Assocs. Litig.*, No. 09 Civ. 777(LBS)(AJP), 2012 WL 1569827, at *7 (S.D.N.Y. May 3, 2012).

Plaintiff's claims arise from the same events and alleged misconduct and are based on the same legal theories as those of the proposed Settlement Class. Plaintiff claims (a) that Defendants violated §§10(b) and 20(a) of the Exchange Act by issuing false and misleading

19

statements; (b) that he and other Class Members purchased Peloton securities at artificially inflated prices based on those statements and were damaged thereby; and (c) by proving his own claims, Plaintiff would prove the claims of the Class Members. Accordingly, there is a sufficient nexus between Plaintiff's claims and the claims asserted on behalf of the members of the Settlement Class. For these reasons, Rule 23(a)(3) is satisfied.

**c.      The Proposed Class Representative Will Fairly and
Adequately Protect the Interests of the Settlement Class**

Under Rule 23(a)(4), the plaintiff must establish that "the representative parties will fairly and adequately protect the interests of the class." Plaintiff has established his adequacy for the reasons explained in Section I.A.1, *supra*.

**2.      The Proposed Settlement Class Satisfies Rules 23(b)(3)**

Once the four prerequisites of Rule 23(a) are met, the proposed class must also satisfy one of the requirements of Rule 23(b). *See Am. Int'l Grp.*, 689 F.3d at 238. In this case, certification is proper under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

**a.      Common Questions of Law and Fact Predominate**

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is satisfied when a plaintiff demonstrates that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir.

20

2010). The Supreme Court has expressly recognized that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud[.]" *Amchem*, 521 U.S. at 625.

The common questions of law and fact described above predominate over any individual questions. The same set of operative facts applies to each Class Member (*i.e.*, each Class Member purchased the securities of Peloton during the Class Period at prices alleged to be artificially inflated as a result of Defendants' false and misleading statements and/or omissions, and each Class Member was allegedly harmed when the undisclosed facts came to light). Accordingly, the "predominance" requirement is satisfied.

b.    A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) outlines the following four factors to be considered by the Court in making a determination regarding superiority: (a) the interest of individual members in controlling the litigation; (b) the extent and nature of any litigation concerning the controversy already commenced; (c) the desirability or undesirability of concentrating litigation of the claims in a particular forum; and (d) the difficulties likely to be encountered in the management of the class action. *See Vivendi*, 242 F.R.D. at 91 (explaining that "[t]his list of pertinent factors is nonexhaustive").[4] When considering these factors, several courts in this District have noted that "[c]lass actions are generally well-suited to securities fraud cases such as this one because they avoid the time and expense of requiring all class members to litigate individually." *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 282 (S.D.N.Y. 2002); *Indep. Energy*, 210 F.R.D. at 486 ("There is also no question here that the class action device is superior to other methods of litigation. Class actions are generally well-suited to securities fraud cases[.]").

---

[4]    The fourth factor need not be considered because the proposed Settlement eliminates any manageability problems that may have existed here. *See Amchem*, 521 U.S. at 620 (stating that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . .").

The relevant factors are satisfied in this case. First, prosecution of this lawsuit on a class action basis will be more efficient than adjudication of the numerous individual shareholder claims. Indeed, the types of federal securities law violations alleged in this Action inflict economic injury on possibly hundreds of geographically dispersed investors, and pursuing individual litigation against well-financed corporate adversaries is not financially feasible for most investors. Second, Plaintiff and Lead Counsel have already invested significant resources thus far in preserving the claims of Peloton investors and prosecuting the claims asserted in the Action. Any additional individual litigation would simply be duplicative of Plaintiff's efforts. As well, certification is the superior method to facilitate the resolution of the Settlement Class's claims against Defendants because, absent certification, Defendants would not be able to obtain a Class-wide release and thus would have little incentive to enter into a settlement.  Accordingly, Plaintiff has satisfied the superiority requirement of Rule 23(b)(3) and this Court should certify the proposed Settlement Class.

### 3.    The Faruqi Firm Is Adequate to Serve as Class Counsel

"[A] court that certifies a class must appoint class counsel." Rule 23(g)(1). Plaintiff respectfully requests that the Court appoint the Faruqi Firm as Class Counsel for the Settlement Class. The Faruqi Firm has, and will continue to, fairly and adequately represent the Settlement Class.  As explained in Section I.A.1, *supra*, proposed Class Counsel is knowledgeable about the applicable law, experienced in handling class actions, has performed substantial work in pursuing the claims and in reaching a settlement, and has committed the necessary resources to representing the Settlement Class. *See* Rule 23(g)(1)(A).

## II.    THE PROPOSED PLAN AND FORMS OF NOTICE SHOULD BE APPROVED

When a settlement is proposed, class notice must meet the requirements of both Rules 23(c)(2) and 23(e) of the Federal Rules of Civil Procedure.  *See In re Citigroup Inc. Sec. Litig.*,

22

965 F. Supp. 2d 369, 379-80 (S.D.N.Y. 2013).  Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014) (finding delivery of notice by first class mail to be reasonable).  In addition to being sent by an adequate delivery method, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id*.; *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) (". . . Rule 23(e) requires notice that is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements.  *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connections with [the] proceedings.").

Plaintiff's proposed postcard notice, which will be sent by mail to potential Class Members, has been carefully drafted to notify the Class of the Settlement's terms, the Class Members' rights in connection with the Settlement, the date of the Settlement Hearing, and the address for the dedicated website on which to obtain more information about the Settlement in compliance with Rules 23(c)(2) and 23(e), the PSLRA, and due process. For example, the postcard notice provides the most important information for Class Members, including: (i) the case caption; (ii) a description of the Settlement Class; (iii) the names of counsel for the Settlement Class; (iv) the Settlement Hearing date; (v) the option to opt out of or object to the

23

Settlement; and (vi) the manner in which to obtain more information. *See, e.g.,* Stipulation, Ex. A-2.

The Parties have agreed to use the traditional methods for notifying the Class Members: notification by mail, publication by wire service, publication in a national newspaper focusing on investors, and on a designated website. This manner of providing notice represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process. *See Vargas*, 559 F. App'x at 26-27; *In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 164 F.R.D. 362, 369 (S.D.N.Y. 1996) ("[N]otice by mail sent to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort[.]'"); *see also In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-cv-04846-NGG-PK, 2021 WL 345790, at *3 (E.D.N.Y. Feb. 1, 2021) (postcard notice is considered adequate). Accordingly, the content of the Notices and procedures for their dissemination are reasonably calculated to provide notice of the settlement to Class Members.

## III.   PROPOSED SCHEDULE

As outlined in the proposed Preliminary Approval Order submitted herewith, the Parties propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Deadline for Peloton to cause the Claims Administrator to be provided with a list of record owners | 5 business days after entry of the Preliminary Approval Order ([Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("PA") at ¶9) |
| Deadline for Claims Administrator to mail the Postcard Notice to the list of record owners and publish them to the website ("Notice Date") | 21 calendar days after entry of the Preliminary Approval Order (PA at ¶10) |
| Deadline for publishing Summary Notice | 14 calendar days after the Notice Date (PA at ¶12) |
| Deadline for submitting Proofs of Claim and Release | 90 calendar days after the Notice Date (PA at ¶15) |

| Event | Time for Compliance |
|---|---|
| Deadline for filing the motion in support of final approval of the Settlement and the application for attorneys' fees and expenses | 56 calendar days before the Settlement Hearing (PA at ¶23) |
| Deadline for filing the proof of mailing of the Postcard Notice and publishing Summary Notice | 7 calendar days before the Settlement Hearing (PA at ¶13) |
| Deadline for objections and exclusions | 21 calendar days before the Settlement Hearing (PA at ¶¶17, 19) |
| Deadline for filing reply memoranda in response to any objections | 7 calendar days before the Settlement Hearing (PA at ¶23) |
| Settlement Hearing | At least 100 days after entry of the Preliminary Approval Order, at the Court's convenience (PA at ¶5) |

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court enter the Preliminary Approval Order which will: (a) preliminarily approve the proposed Settlement; (b) approve the proposed form and manner of providing notice; (c) certify the Class for settlement purposes; (d) appoint Plaintiff as Class Representative and the Faruqi Firm as Class Counsel for settlement purposes; and (e) set a hearing date for the Settlement Hearing.

Dated: April 17, 2023                    Respectfully submitted,


**FARUQI & FARUQI, LLP**

By:    */s/ James M. Wilson, Jr.*
       James M. Wilson, Jr.

James M. Wilson, Jr.
Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com
        rkillorin@faruqilaw.com

*Attorneys for Lead Plaintiff and Lead Counsel for the putative Class*

25