**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PELOTON INTERACTIVE, INC., SECURITIES LITIGATION | Case No. 1:21-cv-02369(CBA)(PK) <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

ARGUMENT ....................................................................................................................... 6

I.      THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ................................. 6

     A.      The Class Has Been Adequately Represented ......................................... 8

     B.      The Proposed Settlement Was Negotiated at Arm's Length ................................. 8

     C.      The Relief Provided for the Settlement Class Is Adequate................................... 9

          1.      The Costs, Risks, and Delay of Trial and Appeal...................................... 9

          2.      The Proposed Method for Distributing Relief Is Effective...................... 12

          3.      Terms of Attorneys' Fees and Timing of Payment................................. 13

          4.      Related Agreements ................................................................................. 13

     D.      The Settlement Treats Settlement Class Members Equitably............................. 14

     E.      The Stage Of The Proceedings And The Extent Of Discovery Completed.......... 15

     F.      The Risks Of Maintaining The Class Action Through Trial ............................... 17

     G.      The Reaction Of The Class ................................................................................. 17

     H.      The Ability Of Defendants To Withstand A Greater Judgment .......................... 18

     I.      The Reasonableness Of The Settlement In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation ............................................. 18

II.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE.......... 20

III.    THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS.......................................................................................................... 23

IV.     THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ................ 24

CONCLUSION................................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                               **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984) ...............................................................................18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ..............................................................................6, 20

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-MD-1775 (JG)(VVP), 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ...........................20

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ....................................................................................11

*See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litigation*,
   909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012)...............................................................24

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
   No. 17-cv-04846-NGG-PK, 2021 WL 345790 (E.D.N.Y. Feb. 1, 2021)................................24

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)....................................................................................19

*In re China MediaExpress Holdings, Inc. S'holder Litig.*,
   No. 11-CV-0804 (VM), 2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015) ...............................13

*Christine Asia Co., Ltd. v. Yun Ma*,
   No. 1:15-md-23531 (CM) (SDA), 2019 WL 5257534
   (S.D.N.Y. Oct. 16, 2019) .................................................................................. *passim*

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*,
   No. 17-md-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019) ...................................8

*In re Citigroup Sec. Litig.*,
   No. 09 MD 2070(SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ...............................19

*City of Detroit v. Grinnell Corp.*,
   356 F. Supp. 1380 (S.D.N.Y. Dec. 27, 1972) .........................................................15

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)........................17

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001).....................................................................................18

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..........................................................................................20, 21

*In re Facebook, Inc. IPO Sec and Derivative Litig.*,
   MDL No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)...........................................10

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y.2004) ........................................................................................15

*In re GSE Bonds Antitrust Litig.*,
   No. 10-cv-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020) ..............................7, 10

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 17, 2018) ...................................14

*Hicks v. Morgan Stanley*,
   No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...............................10

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)..................................................................................19

*Lashambae v. Cap. One Bank, N.A.*,
   No. 1:17 Civ. 06406 (FB), 2020 WL 13572819 (E.D.N.Y. Oct. 21, 2020) ..........................13

*Maley v. Del Global Techs. Corp.*,
   186 F.Supp.2d 358 (S.D.N.Y. Jan. 29, 2002) .........................................................................15

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020)..................................................................................14

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .........................................................................................13

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972).................................................................................................19

*In re Northern Dynasty Minerals Ltd. Sec. Litig.*,
   No. 20-CV-5917 (TAM), 2024 WL 308242 (E.D.N.Y. Jan. 26, 2024)..................................16

*Noto v. 22nd Century Grp., Inc.*,
   No. 19-cv-01285-JLS-MJR, 2023 WL 7107840 (W.D.N.Y. Oct. 17, 2023) .........................15

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)...............................18, 19

*Patel v. Axesstel, Inc.*,
   No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) .......................22

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) .............................................................................................7

*In re Prudential Sec. Inc. Ltd. P'Ships Litig.*,
    164 F.R.D. 362 (S.D.N.Y. 1996) .......................................................................................24

*In re Regulus Therapeutics Inc. Sec. Litig.*,
    No. 3:17-cv-182-BTM-RBB, 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ........................15

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020).......................14

*Slomovics v. All For a Dollar, Inc.*,
    906 F. Supp. 146 (E.D.N.Y. 1995) ....................................................................................12

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)................................................................................10

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. Sept. 10, 2008) ................................................................12

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007)...................................................................................22

*In re Valeant Pharms. Int'l Inc., Sec. Litig.*,
    No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020) ....................21

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22. 26-27 (2d Cir. 2014).............................................................................24

*In re Veeco Instruments, Inc. Sec. Litig.*,
    No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...................17, 20, 22

*In re Veritas Software Corp. Sec. Litig.*,
    No. C-03-0283 MMC, 2005 WL 3096079 (N.D. Cal. Nov. 15, 2005) .................................22

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y.1985) .....................................................................................15

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................................20

*Xuechen Yang v. Focus Media Holding Ltd.*,
    No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)...............7, 9, 16

**Statutes**

15 U.S.C. §78u-4(a)(4) ............................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 23......................................................................................................... *passim*

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), Lead Plaintiff Richard Neswick ("Lead Plaintiff" or "Neswick"), on behalf of himself and the putative Class, respectfully submits this memorandum of law in support of his motion for final approval of the proposed Settlement reached in the above-captioned securities class action (the "Action") and approval of the Plan of Allocation.[1]

**INTRODUCTION**

Lead Plaintiff and Defendants Peloton Interactive, Inc. ("Peloton" or the "Company"), John Foley, Jill Woodworth, Hisao Kushi, and Brad Olson (collectively, "Defendants") have reached a proposed Settlement of all claims asserted in the Action for $13,950,000 in cash.

As discussed below and in the Wilson Declaration, the Settlement resulted from arm's length negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted. Prior to reaching the Settlement, Lead Counsel, *inter alia*, thoroughly investigated the facts alleged in the Action, and researched the applicable law with respect to the Class's claims against Defendants and the potential defenses thereto. *See*, *e.g.*, Wilson Decl. ¶¶6; 20. In light of the significant risk that a smaller recovery—or no recovery at all—might be achieved if the Action were to proceed to trial, and the likely appeals that would follow, the Settlement represents a favorable result for the Class.

The Class's reaction to the Settlement and Plan of Allocation to date has been positive. Pursuant to the Decision and Order preliminarily approving the Settlement ("Preliminary Approval Order" or "PA Order") (ECF No. 91), the Court-approved Claims Administrator, Epiq

---

[1] Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated April 17, 2023 ("Stipulation") (ECF No. 80); (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; and (e) "Wilson Declaration" or "Wilson Decl." refer to the Declaration of James M. Wilson, Jr. in support of this motion, filed concurrently herewith.

Class Action & Claims Solutions, Inc. ("Epiq"), has, *inter alia*, mailed over 160,309 copies of the Postcard Notice to potential Class Members and nominees, posted the requisite documents to the Action's settlement website, and caused the Summary Notice to be published in *Investor's Business Daily* and posted to *Globe Newswire*. Mejia Decl. ¶¶5-6, 12, 14-15; 17.[2] While the May 30, 2024 deadline for Class Members to object to the Settlement and the May 29, 2024 deadline for Class Members to request exclusion from the Class have not yet passed, as of April 23, 2024, no objections have been received and only two requests for exclusion have been received. Mejia Decl. ¶¶22-23; Wilson Decl. ¶¶49-50.

In light of the considerations discussed herein, Lead Plaintiff and Lead Counsel submit that the Settlement is fair, reasonable, and adequate; satisfies the standards of Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, and due process; and is in the best interests of the Class. Lead Plaintiff accordingly requests that the Court: (i) grant final approval of the Settlement; (ii) find that the notice program fully satisfied the requirements of Rule 23(e), the PSLRA, 15 U.S.C. §78u-4(a)(7), and the requirements of due process; (iii) find the Plan of Allocation to be a fair, reasonable, and adequate method for distributing the Net Settlement Fund to Authorized Claimants; (iv) grant final certification of the proposed Class for settlement purposes; and (v) grant final appointment of Lead Plaintiff as Class Representative and Faruqi & Faruqi, LLP (the "Faruqi Firm") as Class Counsel.

**FACTUAL AND PROCEDURAL BACKGROUND**

To avoid undue repetition, Lead Plaintiff respectfully refers the Court to the Wilson Declaration for a detailed discussion of the factual background and procedural history of the

---

[2]     "Mejia Decl." refers to the Declaration of Melissa Mejia Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion, filed concurrently herewith.

2

Action, the efforts undertaken by Lead Plaintiff and his counsel during the course of the Action, the risks of continued litigation, and a discussion of the negotiations leading to the Settlement. *See, e.g.*, Wilson Decl. ¶¶14-30.

Briefly, the amended complaint (the "Complaint" or "Compl."), ECF No. 45, alleges that during the Class Period, Peloton's signature treadmill, the Peloton Tread+, had caused personal injuries or property damage. Compl. ¶¶30-40. Additionally, the Complaint alleges that touchscreens on some of Peloton's lower cost treadmills, the Peloton Tread, were coming loose while the treadmill was in use and hitting the user or belt. *Id.* at ¶¶41-44. The Complaint alleges Defendants knew of and concealed this information and instead released outdated risk factors and positive statements about the Company's superior products and dedication to safety. *Id.* at ¶¶55-69. On March 18, 2021, Peloton disclosed that the Tread+ was involved in an incident in which a child tragically died and that the Company was aware of a small number of incidents involving the Tread+ where children had been hurt. *Id.* at ¶¶70-71. However, the Complaint alleges the Company did not disclose the full extent of the problem, and that Peloton initially questioned the United States Consumer Product Safety Commission's efforts to protect consumers by issuing a recall. *Id.* at ¶¶74-84. After a series of statements Lead Plaintiff challenged as false and/or misleading, Peloton eventually recalled the Tread+ and Tread on May 5, 2021. *Id.* at ¶¶85-89.

On March 7, 2022, Defendants moved to dismiss the Complaint. ECF Nos. 51-52. On April 6, 2022, Plaintiff opposed Defendants' motion to dismiss (ECF No. 55), and on April 26, 2022, Defendants filed their reply in support of their motion (ECF No. 58). On June 8, 2022, the Court held oral arguments on the motion to dismiss, and reserved decision.

After oral argument on Defendants' Motion to Dismiss, the Parties conferred about the

3

possibility of a resolution of class claims. As a result of these communications, the Parties were able to reach an agreement on the procedures for conducting a formal mediation. Wilson Decl. ¶21.

On December 15, 2022, while Defendants' motion to dismiss remained pending, the Parties participated in a full-day mediation session, conducted by David Murphy of Phillips ADR, a well-respected and highly experienced mediator and former securities litigator, to explore a potential negotiated resolution of the claims in the Action. The mediation involved an extended discussion about a potential resolution, and was preceded by the exchange of opening mediation statements and then reply mediation statements. The mediation with Mr. Murphy lasted well into the late evening hours and resulted in the Parties reaching an agreement-in-principle to settle and release the claims asserted against Defendants in the Action, subject to the completion of confirmatory discovery. Wilson Decl. ¶23.

As soon as the Parties had reached an agreement in principle of the main terms of a settlement, including an agreement for the production of documents and Peloton employee interviews, the Parties notified the Court and asked for the Court to immediately stay and vacate pre-trial deadlines. The Parties informed the Court that they had agreed to endeavor to submit the final stipulation of settlement and preliminary approval papers within 120 days. ECF No. 77. The Court granted the Parties' motion to stay on December 26, 2022. ECF No. 78. Thereafter, the Parties continued to negotiate in good faith on the detailed terms of the proposed settlement and to reach agreement on the production of documents from Defendants regarding the claims in the Complaint. The Parties updated the Court on January 13, 2023, of the status of these negotiations that included, the negotiation of the terms of a memorandum of understanding that sets forth the material terms and conditions to settle class claims. The negotiations also included

4

the terms of a confidentiality agreement pursuant to which Lead Plaintiff would obtain confirmatory discovery from Defendants and that the document production had begun. The Parties informed the Court that they would continue to endeavor to file the formal settlement agreement and motion for preliminary approval within the 120 days since reaching the settlement on December 15, 2022. ECF No. 78. The Court then set April 17, 2023, as the deadline to file the final settlement agreement or a status letter. ECF No. 79. On April 17, 2023, Lead Plaintiff filed with the Court the Parties' Stipulation of Settlement and the proposed settlement notice documents with the Court and a motion for preliminary approval of the Settlement, subject to completion of the confirmatory discovery. ECF. Nos. 80 - 83. Wilson Decl. ¶24-26.

On April 28, 2023, Fred Alger Management, LLC ("Alger Funds") filed a letter with the Court indicating that it had concerns with certain proposed procedures in the Settlement Notice for class members to exclude themselves from the proposed settlement. ECF No 84. Thereafter, Lead Plaintiff conferred with the Alger Funds and reached an agreement on proposed revisions to the procedures for Class Members to exclude themselves from the Settlement Class. Lead Plaintiff submitted those agreed revisions with his reply papers in further support of the motion for preliminary approval on May 5, 2023. ECF No. 85. Wilson Decl. ¶28.

Lead Counsel reviewed the confirmatory discovery produced by Defendants and concluded that the Settlement reached in this Action is fair, reasonable, and adequate. *See* ECF No. 88; Wilson Decl. ¶¶6; 28. On November 17, 2023, the Parties filed a Joint Notice that Defendants had provided to Lead Plaintiff the confirmatory discovery contemplated in the Settlement, Lead Plaintiff had completed confirmatory discovery review and he confirmed that the Settlement is fair, reasonable and adequate to the Settlement Class, and that they believed that preliminary approval of the Settlement was appropriate. ECF No. 88. Wilson Decl. ¶29.

On February 21, 2024, the Court entered an Order granting Lead Plaintiff's Motion for Preliminary Approval of the Proposed Settlement, which Order reflected the proposed schedule for finalizing the Proposed Settlement.  ECF No. 91.  Wilson Decl. ¶30.

## ARGUMENT

### I.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that any compromise of a class action must receive court approval.  "The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014).

At the final approval stage, courts consider the factors in recently amended Rule 23(e)(2), which provides that a court may grant final approval of a proposed settlement:

> . . . only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>    (i) the costs, risks, and delay of trial and appeal;
>    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>    (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2).

As explained in the Preliminary Approval Motion,[3] amended Rule 23(e)(2)'s new factors

---

[3]    "Preliminary Approval Motion" or "PA Motion" refers to the Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.  ECF No. 82.

do not displace the factors that the Second Circuit previously used to determine whether a settlement is "fair, reasonable, and adequate"—the so-called "*Grinnell* factors." *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-23531 (CM) (SDA), 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (applying the Rule 23(e)(2) factors along with the *Grinnell* factors at the final approval stage) (citing *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019), for the proposition that "the new Rule 23(e) factors [] add to, rather than displace, the *Grinne[ll]* factors[]")).  The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Payment Card*, 330 F.R.D. at 29 (citing, *inter alia*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).  To find that a settlement is fair, reasonable, and adequate, not every factor needs to be satisfied, but rather, "the court should consider the totality of these factors in light of the particular circumstances." *Xuechen Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *4 (S.D.N.Y. Sept. 4, 2014).

As explained in the Preliminary Approval Motion, all of the requirements imposed by Rule 23(e)(2) and the relevant *Grinnell* factors have been met.  Courts that have analyzed the amended Rule 23(e)(2) factors have found that the factors are usually satisfied where, as here, little has changed between preliminary and final approval. *See In re GSE Bonds Antitrust Litig.*, No. 10-cv-1704 (JSR), 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) (stating that the Court's previous orders granting preliminary approval of the settlements at issue "already explained in detail why the Rule 23 and *Grinnell* factors support approval[,]" readopting that

7

analysis at the final approval stage, and focusing only on "those few developments since" preliminary approval that impact the analysis); *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the conclusions the court made in granting preliminary approval "stand and counsel equally in favor of final approval now").  Nonetheless, all the factors are further discussed below.

### A.    The Class Has Been Adequately Represented

Rule 23(e)(2)(A) is satisfied because Lead Plaintiff and Lead Counsel have adequately represented the class throughout the litigation and will continue to do so through the Settlement administration process.

Lead Plaintiff's interests are directly aligned with those of other Settlement Class members, as he claims to have suffered damages from the same alleged conduct, and through those claims seeks the same recovery from Defendants.  *See* PA Motion at 6 (explaining Plaintiff's adequacy).  Additionally, while serving as Lead Plaintiff, Mr. Neswick actively oversaw the litigation every step of the way, having, among other things, reviewed filings in this Action, communicated regularly with counsel about all aspects of the case and participated remotely in the day-long mediation session.  *See* Wilson Decl., Ex. 5 (Declaration of Richard Neswick ("Neswick Decl.")  ¶¶23; 80.  *See* PA Motion at 6, 20, 22 (explaining Lead Plaintiff's and Lead Counsel's adequacy); *see generally* Wilson Decl.

Furthermore, Lead Plaintiff's Counsel has zealously represented the Settlement Class at all times.  *See generally* Wilson Decl.; *see also* PA Motion at 8-9, 21 (explaining counsels' adequacy).

### B.    The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) is satisfied because the proposed Settlement was the result of arm's

length negotiations between Lead Counsel and Defendants' counsel.  Prior to engaging in negotiations with Defendants, Lead Counsel conducted considerable investigation and analysis of the hurdles facing this litigation, the facts and law supporting the claims against Defendants, and the defenses available to them.  *See* Wilson Decl. ¶¶6; 20-22.  Thereafter, counsel engaged in a mediation session with David Murphy, a well-respected mediator with significant experience mediating securities fraud class actions, after submitting mediation statements and exhibits.  *See Yang*, 2014 WL 4401280, at *5 (finding that the participation of "a highly qualified mediator[,]" "strongly supports a finding that negotiations were conducted at arm's length and without collusion[]").  After debating their positions during the mediation, the parties reached an agreement in principle subject to Defendants providing Lead Plaintiff with confirmatory discovery regarding the claims in the Complaint.  In the months following the mediation, the parties continued to negotiate about the scope and content of the confirmatory discovery.  *See* Wilson Decl. ¶¶23-24.  Ultimately, Lead Counsel reviewed over 16,000 pages of documents produced by Defendants, including internal emails, board minutes, and committee minutes, and interviewed two Peloton employees.  *See id.* at ¶25.  The confirmatory discovery provided confirmed that the settlement is fair, reasonable, and adequate.  *See id*. at ¶¶28 – 29.

### C.   The Relief Provided for the Settlement Class Is Adequate

Rule 23I(2)(C) requires the Court to determine whether the relief provided for the Settlement Class is adequate, taking four specific considerations into account.  Each of these considerations is addressed below, along with the *Grinnell* factors that overlap with them.

### 1.   The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is adequate when taking into account the costs, risks, and delay of trial and appeal.  Fed R. Civ. P. 23(e)(2)(C)(i).  This inquiry overlaps with *Grinnell* factors one, four, and five: the "complexity,

expense and likely duration of the litigation," the "risks of establishing liability[,]" and "the risks of establishing damages." *See GSE*, 414 F. Supp. 3d at 693-94 (noting the overlap).

As explained in the Preliminary Approval Motion, the $13,950,000 Settlement Amount provides an immediate benefit to the Class and is adequate when compared to the risk that no recovery, or lesser recovery, might be achieved after protracted litigation. Lead Plaintiff has always believed that the claims have merit and would be proven through fact discovery. Despite his belief in the merits of this case, Lead Plaintiff is aware of the substantial delay as well as risks and expenses that would be presented by further litigation.

For one thing, "As a general rule, securities class actions are notably difficult and notoriously uncertain to litigate." *In re Facebook, Inc. IPO Sec and Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015). This Action is no exception, and continuing to litigate this action would likely be complex, costly, and lengthy. Surviving Defendants' motion to dismiss, certifying a class, and obtaining sufficient convincing evidence to overcome Defendants' likely summary judgment motions, and convincing a jury to return a verdict in Plaintiff's favor are all highly uncertain and, in any event, would take a great deal of the Parties' and the Court's time and resources and delay any recovery. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery."); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

10

Indeed, to recover anything in the Action, Lead Plaintiff would need to overcome Defendants' pending motion to dismiss. While Lead Plaintiff is confident in his claims, the heightened pleading standards of Rule 9(b) and the PSLRA are formidable obstacles to stating a successful claim. As former Supreme Court Justice Sandra Day O'Connor described it, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). That is still true today. Indeed, as NERA Economic Consulting recently observed, "of the cases filed since 2015, as of 31 December 2022, a larger portion has been dismissed than have settled[.]" ECF No. 83-2 at 9.[4]

Without this Settlement, there is a risk that the Court would have granted Defendants' motion to dismiss in its entirety or would have severely limited the claims in the Action. Wilson Decl. ¶¶8, 31-36.

If the Action survived, it would have proceeded to the fact and expert discovery process which would undoubtedly be time-consuming and expensive, involving difficult to enforce third-party subpoenas against, *inter alia*, the U.S. Consumer Product Safety Commission, along with the retention of expensive engineering, products liability, and financial expert witnesses. *See* Wilson Decl. ¶¶31-33.

In addition to the discovery process, the parties would also have to brief motions for class certification and summary judgment and prepare for trial. Defendants challenged the elements of falsity and scienter at the motion to dismiss stage, ECF No. 52, and Plaintiff anticipates that Defendants would continue to argue that Plaintiff could not establish that the statements challenged in the Complaint were false or misleading, or that Defendants acted with the requisite

---

[4] Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA 2023).

scienter.  Furthermore, establishing damages would require expert testimony, with Defendants' expert likely opining that the class suffered minimal damages, if any, and there is no way to tell which side's experts a jury might credit.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. Sept. 10, 2008) ("Calculation of damages is a complicated and uncertain process, typically involving conflicting expert opinion . . . In this battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited . . . ").

Even if Plaintiff were successful through summary judgment and trial, it would "be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court[.]"  *Christine Asia*, 2019 WL 5257534, at *10.  Even a favorable judgment could be the subject of post-trial motions and appeals, delaying any payment to Settlement Class Members even if Plaintiff were to prevail at trial.  *See Slomovics v. All For a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class.").

Thus, the costs, risks, and delay of trial and appeal weigh in favor of the Settlement.

### 2.      The Proposed Method for Distributing Relief Is Effective

Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of distributing relief to the class is effective, including the processing of class members' claims. The method used in this Action is that traditionally used in securities class actions, which involves disseminating notice to the Class as described in Section III, *infra*, followed by cash payments to eligible class members based on their *pro rata* share of the recovery pursuant to the Plan of Allocation as established by the trading information eligible class members provide.  *See* Wilson Decl. ¶¶55; 57.  This factor supports final approval for the same reason that it supported preliminary approval.  *See* PA Motion at 10.

### 3.    Terms of Attorneys' Fees and Timing of Payment

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment[.]"  Consistent with the Notice, and as discussed in the Fee Motion,[5] Lead Counsel seeks an award of attorneys' fees in an amount of 28% of the Settlement Fund and reimbursement of $88,996.15 in expenses, which is in line with those awarded in recent cases in this Circuit.  *See, e.g., Lashambae v. Cap. One Bank, N.A.*, No. 1:17 Civ. 06406 (FB) (VMS), 2020 WL 13572819, at *5 (E.D.N.Y. Oct. 21, 2020) (finding that 30% of the Settlement Amount[] is reasonable").  Pursuant to the Stipulation, attorneys' fees and expenses are to be paid to Lead Counsel "promptly after entry of the Order awarding such attorneys' fees and expenses and entry of Judgment [,]" subject to Lead Counsel's obligation to repay in the event that such award is reversed or modified, or the Settlement is canceled or terminated for any other reason.  Stipulation ¶19.  The timing of payment is standard in class action cases and typically approved.  *See, e.g., In re China MediaExpress Holdings, Inc. S'holder Litig.*, No. 11-CV-0804 (VM), 2015 WL 13639423, at *2 (S.D.N.Y. Sept. 18, 2015) (awarding fees to class counsel to be paid "from the Settlement Fund within ten calendar days" of the entry of the relevant order); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479-80 (S.D.N.Y. 1998) (overruling objection regarding timing of fee award, stating, "[n]umerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter[,]" and collecting cases).

### 4.    Related Agreements

Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy in light of any agreements made in connection with it.  The only such agreement is the parties'

---

[5]    "Fee Motion" refers to Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and an Award to Lead Plaintiff, filed concurrently herewith.

13

confidential Supplemental Agreement, which gives Defendants the option "to terminate the Settlement and render the Stipulation null and void in the event that requests for exclusion from the Settlement Class exceed certain agreed upon criteria[.]"  Stipulation ¶40.a.  This type of agreement is common in class actions and does not render a settlement unfair.  *See Christine Asia*, 2019 WL 5257534, at *15 ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 17, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

**D.      The Settlement Treats Settlement Class Members Equitably**

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  That is exactly what the Settlement is designed to do.

As discussed in Section II, *infra*, the Plan of Allocation treats Class members equitably based on the timing of their purchases and acquisitions of Peloton securities, and by providing that each Authorized Claimant shall receive their *pro rata* share of the Net Settlement Fund based on their recognized losses.  *See* Mejia Decl., Ex. C (Claims Package) at 14.  "Courts uniformly approve [a plan of allocation] as equitable" when it "allocates funds among Class members on a *pro rata* basis[.]"  *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) (determining that the settlement treats class members equitably when "eligible claimants approved for payment by the Court will receive their *pro rata* share of the recovery[.]").

The Plaintiff's request for an award of $5,000 pursuant to 15 U.S.C. §78u-4(a)(4) is reasonable, as explained in the accompanying Fee Motion, and does not change this conclusion.

14

*See In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-cv-182-BTM-RBB, 2020 WL 6381898, at *5 (S.D. Cal. Oct. 30, 2020) (finding that a reasonable service award to Lead Plaintiff "does not constitute inequitable treatment of class members").

### E.    The Stage Of The Proceedings And The Extent Of Discovery Completed

The Settlement was achieved relatively early in the litigation, which under circumstances favors approval of the Settlement.  Based upon public news reports and other public financial information about Peloton, at the time of the mediation, Lead Plaintiff had serious concerns regarding Peloton's solvency and future as a going concern. Had Peloton become insolvent and filed for bankruptcy, the Class would have been significantly negatively impacted. *See City of Detroit v. Grinnell Corp.,* 356 F. Supp. 1380, 1389 (S.D.N.Y. Dec. 27, 1972) (the "prospect of a bankrupt judgment debtor [down] at the end of the road does not satisfy anyone involved in the use of class action procedures"); *In re Warner Commc'ns Sec. Litig.,* 618 F. Supp. 735, 746 (S.D.N.Y.1985) (where defendant cited to risk of bankruptcy, "certainty of payment of the settlement is advantageous to the class"); *see also In re Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 460 (S.D.N.Y.2004) ("without the proposed settlement, class members might well receive far less than the settlement would provide to them, even if they could prevail on their claims"); *Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 365 (S.D.N.Y. Jan. 29, 2002) (In view of defendant's "dire financial condition," and noting wasting nature of insurance, "obtaining a greater recovery than provided by the Settlement would have been difficult." (citing *In re American Bank Note Holographics, Inc.,* 127 F.Supp.2d 418,  427 (S.D.N.Y. 2001))).

Moreover, the Settlement was reached only after the Parties on both sides had a comprehensive understanding of the potential risks and procedural hurdles facing further litigation of this Action.  *Noto v. 22nd Century Grp., Inc.*, No. 19-cv-01285-JLS-MJR, 2023 WL 7107840, at *12 (W.D.N.Y. Oct. 17, 2023) ("Courts regulatory approve settlements where, as

15

here, Lead Counsel has engaged in sufficient investigation of the facts, even without formal discovery."). Before entering into the mediation, Lead Counsel, *inter alia*: (a) conducted a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, articles, press releases, stock price movements, and earnings conference calls; (b) thoroughly researched the law relevant to Lead Plaintiff's claims; (c) consulted with investigators who conducted a background investigation including by contacting individuals likely to possess relevant information; (d) prepared a detailed amended complaint with over 70 pages of factual and legal allegations; (e) researched and drafted briefs in opposition to the motions to dismiss; and (f) consulted with a damages expert to evaluate the Class's damages. *See* Wilson Decl. ¶¶20; 67.

Following the Mediation session, Lead Counsel negotiated with Defendants' counsel to produce the confirmatory discovery necessary to confirm that the settlement is fair, reasonable, and accurate. Wilson Decl. ¶¶24-25. These negotiations involved conferring with Defendants' counsel regarding follow-up questions to their productions, which involved numerous calls and correspondence between the parties to resolve. As a result of the foregoing negotiations, Lead Counsel reviewed over 16,000 pages of key documents and interviewed two Peloton employees to discuss matters relevant to the merits of Plaintiff's claims and Defendants' potential defenses. *Id.* at ¶25. Based on the pre-mediation work Lead Counsel conducted, as well as the extensive confirmatory discovery process, Lead Counsel confirmed that the settlement is fair, reasonable, and adequate. *See Yang*, 2014 WL 4401280, at *7 (finding that "brief confirmatory discovery process" involving review of "hundreds of pages of documents" contributed to conclusion that Plaintiff had sufficient information to make informed decisions about settlement); *In re Northern Dynasty Minerals Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL 308242, at *11 (E.D.N.Y.

16

Jan. 26, 2024) ("Although the parties have not engaged in formal discovery, the record demonstrates that Plaintiffs' counsel have thoroughly investigated the strengths and weaknesses of the claims and conducted extensive legal research in opposing the motion to dismiss.").

**F.      The Risks Of Maintaining The Class Action Through Trial**

While Lead Plaintiff and Lead Counsel are confident that the class meets the requirements for certification, *see* Section IV, *infra*, the Class has not yet been certified and Plaintiff is aware that there is a risk the Court could disagree.

**G.      The Reaction Of The Class**

The Class's reaction to the Settlement "is considered perhaps the most significant factor to be weighed in considering its adequacy." *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007). In fact, the "absence of objections may itself be taken as evidencing the fairness of a settlement." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014).

To date, a total of 160,309 copies of the Postcard Notice have been mailed to potential Class members and nominees. *See* Mejia Decl. ¶17. Despite this large number of potential Class Members, no objections have been received. Wilson Decl. ¶49. To date, two requests for exclusion have been received, which Epiq is treating for the time being as "potentially valid." *See* Mejia Decl. ¶22, Ex. D. The Class is defined as "all persons or entities who purchased or otherwise acquired Peloton securities from September 11, 2020 to May 5, 2021, inclusive, and were damaged thereby." PA Order at 22 ¶2. The exclusion submitted by Pratyush Mishra ("Mishra") appears to be invalid because Mishra did not purchase or acquire any Peloton securities during the Class Period. *See* Wilson Decl. ¶51. The exclusion submitted by Bradford Neumann ("Neumann") appears to be invalid because Neumann suffered no losses on his

17

Peloton options contracts.  *Id.* at ¶52.  Lead Counsel in consultation with Epiq will make a final determination whether these investors are included in the Class definition and/or suffered damages who would have qualified for participation in the Settlement in the first place and reported to the Court in reply papers. Wilson Decl. ¶53-54.

Although the deadlines to submit objections (May 30, 2024) and exclusions (May 29, 2024) have not yet passed, the reaction of the Class so far has been positive, which supports final approval of the Settlement.  *See Christine Asia*, 2019 WL 5257534, at *11 (finding that the class's reaction to the settlement supported approval where only a "few" class members opted out).

### H. The Ability Of Defendants To Withstand A Greater Judgment

Lead Counsel believes that the possibility of achieving a greater recovery than that provided by the settlement is unlikely.  *See* ECF No. 83-3 (article discussing Peloton's solvency issues and future).  Even if Defendants could withstand a greater judgment, however, this factor is generally not determinative where, as here, "other *Grinnell* factors weigh heavily in favor of settlement."  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (affirming district court's decision to approve the proposed settlement even though the "defendants' ability to withstand a higher judgment weighed against the settlement"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

### I. The Reasonableness Of The Settlement In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation

The adequacy of a Settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of

plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the settlement falls within a "range of reasonableness" to determine whether it is reasonable, adequate, and fair.  *See PaineWebber*, 171 F.R.D. at 130.  This range "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]"  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see PaineWebber*, 171 F.R.D. at 130 (the determination of a settlement's reasonableness "is not susceptible of a mathematical equation yielding a particularized sum, but turns on whether the settlement falls within a range of reasonableness").

The Settlement Fund of $13,950,000.00 represents approximately 2% of the Class's potential damages (assuming the proposed Class is certified and all claims and damages were proven) that Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged fraudulent activity.  This is right in line with the median ratio for recent securities class action settlements, which NERA Economic Consulting determined was 1.8% for 2022.  *See* ECF No. 83-2 at 18.  The percentage is also within the range of typical recoveries in complex securities litigation.  *See, e.g.*, *In re Citigroup Sec. Litig.*, No. 09 MD 2070(SHS), 2014 WL 2112136, at *5 (S.D.N.Y. May 20, 2014) (determining settlement amount equal to 2% of the class's out-of-pocket losses "falls squarely within this range of reasonableness"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483-85 (S.D.N.Y. 2009) (finding settlement equal to 2% of aggregate expected recovery to be reasonable); *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in complex securities class actions range from 1.6% to 14% of estimated damages).

Given the significant risk and expense of continued litigation, the proposed Settlement

19

offers the opportunity to provide immediate relief to the Class, rather than a speculative payment years in the future. *See* Wilson Decl. ¶¶8; 36.

## II.       THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The standard for approval of the Plan of Allocation is the same as that for approving the settlement: "it must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). Generally, "the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable under the particular circumstances of the case." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2015 WL 5918273, at *4 (E.D.N.Y. Oct. 9, 2015). "Allocation formulas, including certain discounts for certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim[,]" and "[t]here is no rule that settlements benefit all class members equally[.]" *Veeco*, 2007 WL 4115809, at *13. "When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *Advanced Battery*, 298 F.R.D. at 180.

In developing the Plan of Allocation, which is set forth in the Notice, Plaintiff enlisted the help of a damages consultant, Stanford Consulting Group, Inc., who was familiar with the various damages issues in this Action, as well as the Claims Administrator which has many years of experience implementing plans of allocation in securities class actions. *See* Wilson Decl. ¶76. The Plan of Allocation's objective is to distribute a *pro rata* share of the Net Settlement Fund to Authorized Claimants based upon their respective losses attributable to the alleged fraud, consistent with the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). In *Dura*, the Supreme Court stated that securities fraud plaintiffs must prove that "defendant's misrepresentations caused the loss for which the plaintiff seeks to recover." *Id.* at 345-56. Consistent with *Dura*, the Plan of Allocation does not compensate Class Members for

20

losses suffered on sales made before any corrective disclosures—but only for those losses

attributable to the alleged fraud and the stock drops alleged. *See Dura*, 544 U.S. at 342

(explaining that if "the purchaser sells the shares quickly before the relevant truth begins to leak

out, the misrepresentation will not have led to any loss[]").

Specifically, after Authorized Claimants submit their Proof of Claim forms and

supporting documentation, the Claims Administrator will calculate each Authorized Claimants'

Recognized Loss according to a formula that will take into account when and at what price they

purchased Peloton securities and when such securities were sold. *See* Wilson Decl. ¶57.  In

order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have

purchased or otherwise acquired Peloton securities during the Class Period and held their

securities through at least one of the corrective disclosures set forth in the Plan of Allocation as

derived from the Complaint. *See id.* at ¶58.  The amount recovered will vary depending upon

when in relation to the corrective disclosures each security was sold. *See id.*

Due to the difficulty in calculating damages for option traders,[6] the Plan of Allocation

provides that the total payments associated with transactions in Peloton options is limited to 3%

of the Net Settlement Fund, commensurate with the relative trading volumes of Peloton

securities during the Class Period as determined by Plaintiff's damages expert. *See* Mejia Decl.

Ex. C at 12-13.  This means that if the cumulative Recognized Loss amounts for option claims

exceed 3% of all Recognized Losses, the Recognized Losses for option claims will be reduced

---

[6]      *Cf. In re Valeant Pharms. Int'l Inc., Sec. Litig.*, No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456, at *10 (D.N.J. June 15, 2020) (Report & Recommendation of the Special Master) (explaining that the treatment of options in the plan of allocation, which included allocating a maximum of 5% of the Net Settlement Fund to options, was appropriate because, *inter alia*, "option values naturally diminish over[ ]time and the complex option price dynamics makes it difficult to differentiate between fraud- and non-fraud based factors[,]" and that such treatment "is a generally accepted and widely used methodology for equitably allocating a settlement fund in light of the differentiating factors affecting options damages[]").

proportionately until they collectively equal 3% of all Recognized Losses.  *Id.*  Courts often find such limitations on options claims to be fair and reasonable.  *See, e.g., In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 264 (D.N.H. 2007) (overruling objection to the plan of allocation's limitation of losses from option trading to 1% of the settlement amount); *In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283 MMC,  2005 WL 3096079, at *9 (N.D. Cal. Nov. 15, 2005) (finding limitation on total recovery by options traders to 2% of the settlement proceeds to be "fair and reasonable"), *vacated in part on other grounds*, 496 F.3d 962 (9th Cir. 2007).

The terms of the Plan of Allocation were fully disclosed in the Notice that was available on the Action's website.  *See* Wilson Decl. ¶60.  To date, no objections to the Plan have been received.  *See id.*  Thus, for the reasons set forth herein, Plaintiff respectfully requests that the Court approve the Plan of Allocation as fair, reasonable, and adequate.  *See Veeco*, 2007 WL 4115809, at *13-14 (approving plan of allocation where no class members objected to it and it was consistent with *Dura* because "it provides for the distribution of the Net Settlement Fund on a proportionate basis, using a formula based on the decline in the price of Veeco stock following the disclosure[]"); *Christine Asia*, 2019 WL 5257534, at *15 (finding a plan of allocation "fair and adequate" where it "has a clear rational basis, equitably treats the class members, and was devised by experienced and estimable class counsel[]"); *Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073, at *7 (S.D. Cal. Oct. 23, 2015) (finding Plan of Allocation to be "fair, reasonable, and adequate[,]" where it "allocates the settlement fund proportional to the actual injury of each class member[]").

22

### III.    THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS

Notice of a class actions settlement must meet the requirements of Rule 23, the PSLRA and the Due Process Clause of the United States Constitution.  Rules 23(c)(2)(B) and 23(e)(1) require the Court to direct to potential settlement class members "the best notice that is practicable under the circumstances" and "in a reasonable manner."  The PSLRA and the due process clause impose similar requirements.

The Court preliminarily approved the form, content, and method of dissemination of the notice provided to potential Class Members.  *See* PA Order at 24 ¶6.  Pursuant to the Preliminary Approval Order, Epiq undertook the following services to notify Class Members of the Settlement: (i) published the Summary Notice in *Investor's Business Daily and Globe Newswire:* (ii) mailed Postcard Notices or long form Notices and Claim Forms to Settlement Class Members; (iii) established and maintained an official settlement Website about the Settlement; (iv) established an official too-free phone number to contact for information about the Settlement. Mejia Decl. ¶4.  The Postcard Notice was mailed to 160,309 potential Class Members and nominees beginning on March 13, 2024.  *See* Mejia Decl. ¶12 -17.  The Notice and Proof of Claim Form were made available on the Settlement website, along with the Stipulation and its exhibits, and the Preliminary Approval Order.  *See id.* at ¶18; Wilson Decl. ¶¶7; 45; 60. The Summary Notice was published in *Investor's Business Daily* on March 4, 2024 and posted by *Globe Newswire* on March 6, 2024.  *See* Mejia Decl. ¶¶5-6; Wilson Decl. ¶¶7; 43. Additionally, Epiq has set up a toll-free telephone helpline to accommodate potential Class Members who have questions regarding the Settlement.  *See* Mejia Decl. ¶20.

Pursuant to the requirement of Rule 23, the due process clause, and the PSLRA, the notices were carefully drafted to notify the Class of the Settlement's terms, the Class Members'

rights in connection with the Settlement, the date of the Settlement Hearing, and the address for the dedicated website on which to obtain more information about the Settlement in compliance with Rules 23(c)(2) and 23(e), the PSLRA, and due process.  For example, the Postcard Notice provides the most important information for Class Members, including: (i) the case caption; (ii) a description of the Settlement Class; (iii) the names of counsel for the Settlement Class; (iv) the Settlement Hearing date; (v) the option to opt out of or object to the Settlement; and (vi) the manner in which to obtain more information.  *See, e.g.,* Mejia Decl., Ex. B.

Courts in this Circuit have routinely found that this method of mailing, publication, and internet notice satisfies the applicable notice standards in similar class actions.  *See Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22. 26-27 (2d Cir. 2014); *In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 164 F.R.D. 362, 369 (S.D.N.Y. 1996) ("[N]otice by mail sent to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort[.]'"); *see also In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-cv-04846-NGG-PK, 2021 WL 345790, at *3 (E.D.N.Y. Feb. 1, 2021) (postcard notice is considered adequate). Thus, Plaintiff respectfully requests that the Court find the notice program satisfies the requirements of Rule 23, the PSLRA, and due process.

## IV.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Pursuant to the Preliminary Approval Order, the Court conditionally certified the Class for Settlement purposes.  *See* PA Order at 23 ¶2.  Since the entry of that Order, no circumstances have changed to alter the propriety of the Court's certification and appointments.  *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litigation*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (granting final certification to a settlement class where there had been no material changes since the court preliminarily certified the class).  Thus, pursuant to Rule 23(a) and (b)(3), and for the reasons set forth in further detail on pages 16-22 of the Preliminary Approval Motion,

24

Plaintiff respectfully requests that the Court grant final certification of the following Class for the purposes of Settlement only:

> "Settlement Class" means all persons or entities who purchased or otherwise acquired Peloton securities during the Class Period, and were damaged thereby. Excluded from the Settlement Class are: (i) Defendants; (ii) current and former officers and directors of Peloton; (iii) members of the immediate family of each of the Individual Defendants; (iv) all subsidiaries and affiliates of Peloton and the directors and officers of Peloton and their respective subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, officers, directors, and any other individual or entity in which any Defendant has a controlling interest; (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of all such excluded parties; and (vii) any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion.

Stipulation ¶1.vv.  Plaintiff also requests that the Court appoint Richard Neswick as Class Representative and the Faruqi Firm as Class Counsel as they have adequately represented the Class throughout the Action and will continue to do so.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court: (a) grant final approval of the Settlement; (b) find that the notice program fully satisfied the requirements of Federal Rule of Civil Procedure 23(e), the PSLRA, and due process; (c) find the Plan of Allocation to be a fair, reasonable, and adequate method for distributing the Net Settlement Fund to Authorized Claimants; (d) grant final certification of the proposed Class for settlement purposes; and (e) grant final appointment of Plaintiff as Class Representative and the Faruqi Firm as Class Counsel for settlement purposes.

Dated: April 24, 2024                          Respectfully submitted,


                                               **FARUQI & FARUQI, LLP**

                                               By:    _/s/ James M. Wilson, Jr._
                                                      James M. Wilson, Jr.

                                               James M. Wilson, Jr.


25

Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com
           rkillorin@faruqilaw.com

*Attorneys for Lead Plaintiff and Lead Counsel for
the putative Class*

26