**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PELOTON INTERACTIVE, INC., SECURITIES LITIGATION | Case No. 1:21-cv-02369(CBA)(PK)<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AN AWARD TO LEAD PLAINTIFF**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................... 2

ARGUMENT ..................................................................................................................... 3

I.    LEAD COUNSEL'S ATTORNEYS' FEES REQUEST IS FAIR
AND REASONABLE ................................................................................................ 3

        A.    Lead Counsel Seeks An Award Of Attorneys' Fees From
The Common Fund ...................................................................................... 3

        B.    The Percentage-Of-The-Fund Method Of Determining Fees Is Appropriate
And Preferable ............................................................................................ 3

        C.    Attorneys' Fees Of 28% Of The Settlement Fund Are Fair, Reasonable, And
Comparable To Fees Awarded In This District In Similar Cases.......................... 4

        D.    The *Goldberger* Factors Strongly Support The Requested Fees ........................... 4

            1.    The Time and Labor Expended by Lead Counsel ..................................... 5

            2.    The Magnitude and Complexity of the Litigation ..................................... 7

            3.    The Risks of the Litigation .......................................................... 7

            4.    The Quality of Representation ...................................................... 9

            5.    The Requested Fees in Relation to the Settlement.................................. 10

            6.    Public Policy Considerations ...................................................... 10

        E.    The Settlement Class's Reaction to the Fees Request ....................................... 11

        F.    The Requested Attorneys' Fees Are Also Reasonable Under A Lodestar
Cross-Check ............................................................................................. 12

II.   LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED IN
CONNECTION WITH THIS ACTION .......................................................................... 14

III.  LEAD PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF REASONABLE
COSTS AND EXPENSES........................................................................................... 15

CONCLUSION................................................................................................................. 17

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ...............................................................................................14

*In re Am. Int'l Group, Inc. Sec. Litig.*,
    No. 04 Civ. 8141(DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) ..................................16

*In re Am. Int'l Group, Inc. Sec. Litig.*,
    No. 04 CIV. 8141 (DAB), 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012)....................................10

*Aponte v. Comprehensive Health Mgmt., Inc.*,
    No. 10 Civ 4825(JLC), 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013).......................................6

*In re Beacon Assocs. Litig.*,
    No. 09 Civ 777(CM), 2013 WL 2450960 (S.D.N.Y. May 9, 2013)...................................4, 12

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litigation*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................................................16

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).................................................................................................................3

*Burns v. FalconStor Software, Inc.*,
    No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ...............................10

*Castagna v. Madison Square Garden, L.P.*,
    No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011)..............................9

*Christine Asia Co., Ltd. v. Yun Ma*,
    No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534
    (S.D.N.Y. Oct. 16, 2019) ...............................................................................................8, 12, 14

*City of Providence v. Aeropostale, Inc.*,
    No. 11 Civ. 71323(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)...................3, 10

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13 md 2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016).................................14

*In re Deutsche Telekom AG Sec. Litig.*,
    No. 00-CV-9475 (NRB), 2005 WL 7984326 (S.D.N.Y. June 9, 2005) .................................14

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........................12

*In re Giant Interactive Group, Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) .........................................................................................7, 10

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ......................7

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................7, 15

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)...............................................................................3, 4, 12

*In re Graña y Montero S.A.A. Sec. Litig.*,
No. 17-CV-01105 (LDH) (ST),2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021) .......................9

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................4, 12, 13

*Hicks v. Stanley*,
No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).................................11

*In re IMAX Sec. Litig.*,
No. 06 Civ. 6128(NRB), 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012) ...................................14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003)....................................................................................14

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................................3, 9, 11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)...................................10

*Martínek v. Amtrust Financial Services Inc.*,
No. 19 Civ. 8030 (KPF), 2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022) ........................10, 15

*In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) .......................................................................................3, 16

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...............................................................................2, 8

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009).........................................8

*Ramsey v. MRV Commc'ns Inc.*,
No. CV 08-04561 FAG, 2010 WL 11596641 (C.D. Cal. Nov. 16, 2010)...............................16

*Rodriguez v. CPA Aerostructures, Inc.*,
No. 20 CV 982 (ENV) (CLP), 2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023) ..............4, 10, 14

*In re Telik Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................4, 7, 12

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) .............................................................................11

*In re Veeco Instruments, Inc. Sec. Litig.*,
  No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ..................12

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products
  Liability Litig.*,
  MDL No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017).............13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................................13

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
  No. 14-CV-8925 (KMW), 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)...............14

**Statutes**

15 U.S.C. §78u-4(a) .......................................................................................................15, 16

**Other Authorities**

H.R. Conf. Re. No. 369, 104th Cong., 1st Sess. (1995) ..................................................16

iv

Lead Counsel, Faruqi & Faruqi, LLP (the "Faruqi Firm"), respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees, expenses, and an award to Lead Plaintiff Richard Neswick ("Plaintiff") pursuant to 15 U.S.C. §78u-4(a)(4).[1]

## INTRODUCTION

As discussed in Lead Plaintiff's Motion for Final Approval of the Class Action Settlement ("Final Approval Motion") filed concurrently herewith, Plaintiff, on behalf of himself and the Class, has reached a proposed Settlement of this putative class action lawsuit (the "Action") with Defendants Peloton Interactive, Inc. ("Peloton" or the "Company"), John Foley, Jill Woodworth, Hisao Kushi, and Brad Olson (collectively, "Defendants").  Pursuant to the Settlement, Defendants have agreed to cause to be paid $13,950,000 in cash that, if finally approved, will result in the dismissal of all claims asserted in this Action and the releases of all Released Claims as set forth in the Stipulation.  The Settlement is the result of Lead Counsel's zealous prosecution throughout this Action and is a favorable result for the Class considering the significant risks that a smaller recovery—or ***no recovery***—might be achieved after a lengthy trial and likely appeals.

In connection with the Settlement, Lead Counsel respectfully seeks approval of an award of attorneys' fees in the amount of 28% of the Settlement Fund, or $3,906,000 plus accrued interest, reimbursement of $88,996.15 in expenses reasonably incurred during the course of the Action, and an award to Lead Plaintiff of $5,000 for his reasonable costs and expenses pursuant to 15 U.S.C. §78u-4.

---

[1]   Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated April 17, 2023 ("Stipulation") (ECF No. 80); (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; and (e) all references to the "Wilson Declaration" or "Wilson Decl." are to the Declaration of James M. Wilson, Jr. in support of this motion, filed concurrently herewith.

The requested fee is fair and reasonable in light of the significant obstacles Lead Counsel has faced during the prosecution of this Action, Lead Counsel's skill and expertise in litigating securities class actions, and the favorable result obtained for the Class.  In recognition of the risks undertaken and the effort expended by counsel in contingency fee cases, courts in this Circuit and throughout the United States routinely award fees of this size in complex securities cases with comparable recoveries.  The fairness of the requested fees also becomes evident when it is compared to Lead Counsel's lodestar of $1,899,060.  Wilson Decl. ¶69.  This results in a lodestar multiplier of approximately 2.06, which is reasonable and greater multipliers are often approved. *Id.* This litigation was prosecuted under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 *et seq.* ("PSLRA"), which was intended to make litigation of securities class action lawsuits significantly more challenging and burdensome on investors.  *See In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010) ("[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the [PSLRA].").

Furthermore, the Class's reaction to date supports the request for fees, litigation expenses, and an award to Lead Plaintiff.  The deadline set by the Court for objections to the Settlement is May 30, 2024.  Wilson Decl. ¶¶47- 54.  Since notice was distributed to Class Members and nominees beginning on March 13, 2024, which informed potential Class Members that Lead Counsel would seek fees up to 28% and expenses up to $100,000, no objections have been received.  *See* Wilson Decl. ¶¶47, 49.

**FACTUAL AND PROCEDURAL BACKGROUND**

To avoid undue repetition, Lead Counsel respectfully refers the Court to the Wilson Declaration for a detailed description of Lead Plaintiff's claims and the prosecution of this Action.

## ARGUMENT

### I.   LEAD COUNSEL'S ATTORNEYS' FEES REQUEST IS FAIR AND REASONABLE

#### A.   Lead Counsel Seeks An Award Of Attorneys' Fees From The Common Fund

Attorneys who recover a common fund for class members are entitled to receive reasonable attorneys' fees from that fund.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  "The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf."  *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 71323(CM)(GWG), 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014); *see also Goldberger*, 209 F.3d at 47.  In addition to providing just compensation, an award of fair and reasonable attorneys' fees from a common fund serves to encourage skilled counsel to represent those who seek redress for injuries inflicted on a class and to discourage similar misconduct in the future. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

#### B.   The Percentage-Of-The-Fund Method Of Determining Fees Is Appropriate And Preferable

The two methods used in the Second Circuit for calculating reasonable fees in class actions are the percentage-of-the-fund method ("percentage method") and the lodestar method. *See Goldberger*, 209 F.3d at 47.  The Second Circuit favors the percentage method in common fund cases.  *See id.* at 48-49; *see also In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.* ("*Merrill Lynch Research*"), 246 F.R.D. 156, 171 (S.D.N.Y. 2007) ("The trend in the Second Circuit . . . has been to express attorneys' fees as a percentage of the total settlement . . .").

District Courts in this Circuit frequently use the percentage method to calculate lead counsel's awards in common fund cases and reserve the lodestar calculation to test the proposed

3

award's fairness.  *See, e.g., In re Beacon Assocs. Litig.*, No. 09 Civ 777(CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013).  Moreover, the percentage method is consistent with the PSLRA's provision that attorneys' fees in securities class actions should represent a "reasonable percentage" of the amount recovered for the class.  *See Rodriguez v. CPA Aerostructures, Inc.*, No. 20 CV 982 (ENV) (CLP), 2023 WL 2184496, at *13 (E.D.N.Y. Feb. 16, 2023); 15 U.S.C. §78u-4(a)(6).

The foregoing authority suggests that the Court should use the percentage method to calculate reasonable attorneys' fees in this Action.

**C.      Attorneys' Fees Of 28% Of The Settlement Fund Are Fair, Reasonable, And Comparable To Fees Awarded In This District In Similar Cases**

The amount of attorneys' fees requested, 28% of the Settlement Fund, falls within the range of attorneys' fees often awarded by courts within the Second Circuit.  *See, e.g., Rodriguez*, 2023 WL 2184496, at *13 ("[C]ourts in this Circuit routinely award attorneys' fees of around 30% of the common fund."); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *12-13 (S.D.N.Y. Dec. 19, 2014) (finding that 33 1/3% attorneys' fee award was fair and reasonable and collecting cases awarding this amount); *In re Telik Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 587 & n.8 (S.D.N.Y. 2008) (finding that the requested 25% fee was "less than the attorneys' fees awards made by courts in this District and other courts within the Second Circuit," and collecting Second Circuit securities class action cases which granted attorneys' fees of 30-33%).  Accordingly, substantial authority within this Circuit supports the attorneys' fees requested in this complex securities Action.

**D.      The *Goldberger* Factors Strongly Support The Requested Fees**

In *Goldberger*, the Second Circuit set forth the factors that district courts should use to evaluate the reasonableness of the requested attorneys' fees.  *Goldberger*, 209 F.3d at 50.  The

4

factors include the following: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risks of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id.* As discussed below, these factors as applied to this Action demonstrate that Lead Counsel's requested fee is fair and reasonable.

### 1.    The Time and Labor Expended by Lead Counsel

The requested fee is supported by the substantial time and diligent effort expended by Lead Counsel to achieve the Settlement in this Action. *See* Wilson Decl. ¶¶68. As set forth in more detail in the Wilson Declaration, Lead Counsel conducted a thorough investigation into Defendants' alleged fraud and committed extensive resources to developing the challenging, technical aspects of Plaintiff's claims throughout the litigation. Over the course of more than two years and 2,748.50 hours resulting in a lodestar of $1,899,060, Lead Counsel, *inter alia*:

- Conducted a lengthy investigation into the facts alleged in the Action, including reviewing and analyzing press releases, SEC filings, conference call transcripts, and stock price movements;

- Conferred with an investigator who conducted an investigation that included contacting individuals likely to possess relevant information;

- Conducted research in opposition to Defendants' motion to transfer venue and drafted brief in opposition;

- Prepared a detailed amended complaint containing more than 70 pages of factual and legal allegations;

- Conducted complex research in opposition to Defendants' motion to dismiss and request for judicial notice;

5

- Drafted briefs in opposition to defendants' motion to dismiss and request for judicial notice;

- Prepared for, attended, and argued at the hearing on the motion to dismiss and request for judicial notice;

- Consulted with a damages expert to determine the damages suffered by the Class and to better understand the issues facing recovery for the Class;

- Conducted extensive research into Peloton's finical condition and had multiple conferences and emails with client regarding same;

- Drafted opening mediation statement and reply mediation and then participated in settlement negotiations with opposing counsel and David Murphy, a well-respected and highly experienced mediator, in a day-long mediation session and engaged in negotiations over the following months with opposing counsel regarding confirmatory discovery and to finalize the terms of the Stipulation;

- Reviewed over 16,000 pages of confirmatory discovery and conducted two employee interviews to confirm that the proposed settlement was fair, reasonable, and adequate;

- Drafted the Settlement Stipulation and attendant notice documents; and

- Prepared motions and briefs in support of preliminary approval of the Settlement.

*See id.;* Wilson Decl. Ex. 3.

Lead Counsel will devote additional hours and resources to preparing for and attending the Settlement Hearing, assisting potential Class Members with the completion and submission of their Proof of Claim and Release Forms, monitoring the claims process, corresponding with the Claims Administrator, and responding to Class Member inquiries. *See Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825(JLC), 2013 WL 1364147, at *7 (S.D.N.Y.

Apr. 2, 2013).  The significant amount of time and effort that Lead Counsel devoted to this case to obtain a $13,950,000 recovery, work that will continue even if the Settlement is approved, confirms the reasonableness of the 28% fee request.

### 2.    The Magnitude and Complexity of the Litigation

"Securities class action litigation is notably difficult and notoriously uncertain."  *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *10 (E.D.N.Y. Sept. 18, 2007).  This litigation proved no exception, presenting substantial challenges from its inception.  As discussed in greater detail below and in the Wilson Declaration, the magnitude and complexity of this Action support the award of Lead Counsel's requested fees.

### 3.    The Risks of the Litigation

Courts in this Circuit consider the risks of the litigation critical to determining the reasonableness of the requested fees.  *See Telik*, 576 F. Supp. 2d at 592 (describing the risks of the litigation as "pivotal" to assessing the appropriateness of the requested fee award); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004).  Among the types of litigation risks considered, "[t]he most salient is the attorneys' risk in accepting a case on a contingency fee . . ."  *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011).

Lead Counsel prosecuted this Action on a contingent fee basis and did not receive any compensation for its services or reimbursement for litigation expenses for over two years. Wilson Decl. ¶61.  As described below, in the Wilson Declaration, and in the Final Approval Motion, there were significant risks that Lead Counsel might not obtain any recovery for the Class and would not be compensated at all for its efforts.  *Id.* at ¶¶8, 64.  Indeed, losses in contingent fee cases, particularly those brought under the PSLRA, are exceedingly expensive. There are numerous instances in which plaintiff's counsel expended a significant amount of

money on litigation expenses and thousands of hours in contingency fee cases without receiving any recovery. *See, e.g., In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment for defendants after eight years of litigation).

Lead Plaintiff and Lead Counsel continue to believe that the claims asserted in this Action are meritorious and that the evidence developed to date supports those claims. However, without the Settlement, in view of the heightened pleading standards in a PSLRA case, there is a risk that the Court might have granted Defendants' motion to dismiss in whole, which would result in no recovery for the Class. *See* Wilson Decl. ¶¶32. If the motion to dismiss was denied, the Action would have proceeded to the fact and expert discovery process which is invariably time-consuming and expensive. Here, the necessary discovery would also have involved potentially difficult-to-enforce subpoenas to individuals injured by Peloton's products, the Consumer Product Safety Commission, and other third parties, as well as the retention of expensive engineering and financial experts. *See id.* at ¶¶32-35. Even if Plaintiff could obtain the necessary discovery, Defendants would undoubtedly continue to aggressively pursue dismissal of Lead Plaintiff's claims at the summary judgment stage or at trial. *Id.*

As a result, there was a significant chance that the Class would recover nothing at all, and that Lead Counsel would receive no reimbursement of expenses or fees for its work. Thus, Lead Counsel's assumption of the contingency fee risk in light of the risks posed by this complex securities class action strongly weighs in favor of the requested award. *See In re MetLife*, 689 F. Supp. 2d at 361 (contingency fee risk supported the requested award); *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019) (same).

### 4.    The Quality of Representation

The quality of the representation that Lead Counsel provided supports the reasonableness of the requested fee.  Lead Counsel is a national law firm with extensive experience representing investors in large, complex securities class actions.  *See* Wilson Decl. ¶¶9, 66-67.   The favorable outcome in this case is attributable to Lead Counsel's experience, hard work, diligence, and determination.

Lead Counsel's efficient prosecution of the Class's claims also speaks to the quality of representation.  *See Maley*, 186 F. Supp. 2d at 373 ("A prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice.").  Here, Lead Counsel achieved a favorable settlement for the Class early in the litigation, saving hundreds if not thousands of hours of legal time that may have increased its fees and expenses.  *See Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011).  Additionally, by settling early with Defendants whose available funds were being depleted due to, *inter alia*, costs related to additional litigation involving derivative claims and personal injury claims, as well as Lead Plaintiff's concerns for the overall condition of the Company (*e.g.,* declining revenues, increasing debt and the competitive landscape of the gym equipment industry; *see* ECF No. 83-3), Lead Counsel helped maximize the Class's recovery by averting further litigation expenses which would have further eroded the funds available.  *See e.g., In re Graña y Montero S.A.A. Sec. Litig.*, No. 17-CV-01105 (LDH) (ST),2021 WL 4173684, at *16 (E.D.N.Y. Aug. 13, 2021) ("The trend in this circuit is toward the percentage method, which directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation" (citing *In re Parking Heaters Antitrust Litig.*, No. 15-MC-0940 (DLI)(JO), 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019))).

9

### 5.    The Requested Fees in Relation to the Settlement

To determine whether the requested fee is reasonable in relation to the settlement, Courts compare the requested fee to those "awarded in similar securities class-action settlements of comparable value." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *19 (S.D.N.Y. Dec. 23, 2009). The 28% fee is on par with the range of fees awarded in comparable cases within the Second Circuit. *See, e.g., Martínek v. Amtrust Financial Services Inc.*, No. 19 Civ. 8030 (KPF), 2022 WL 16960903, at *1 (S.D.N.Y. Nov. 16, 2022) (awarding attorneys' fees of 33.33% on $13 million settlement); *City of Providence.*, 2014 WL 1883494, at *12 (awarding attorneys' fees of 33% of $15 million settlement fund), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015); *In re Giant Interactive Group*, 279 F.R.D. at 162, 164 (awarding 33% of $13 million settlement).

Accordingly, this factor further supports Lead Counsel's requested fee award.

### 6.    Public Policy Considerations

Courts in this District have found that "public policy considerations" favor the request for reasonable fees. *See Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 11, 2014) (finding that public policy favors the 33.3% fee request).

Moreover, attorneys' fees must be sufficient "to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC." *In re Am. Int'l Group, Inc. Sec. Litig.*, No. 04 CIV. 8141 (DAB), 2012 WL 345509, at *5 (S.D.N.Y. Feb. 2, 2012); *Rodriguez*, 2023 WL 2184496, at *14. As one court explained:

> Private actions to redress real injuries further the objectives of the federal
> securities laws by protecting investors and consumers against fraud and other
> deceptive practices. . . . To make certain that the public is represented by talented
> and experienced trial counsel, the remuneration should be both fair and

10

> rewarding. The concept of a private attorney acting as a private attorney general is vital to the continued enforcement and effectiveness of the Securities Acts.

*Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

As a practical matter, securities class action lawsuits, such as this one, can only be maintained if counsel can receive reasonable compensation for its successful representation of plaintiffs injured by violations of the federal securities laws. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989) ("A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken."). Lead Counsel was willing to assume the considerable risks of this litigation and achieved a successful result for the Class through its efforts. Accordingly, public policy supports an award of the reasonable attorneys' fees and expenses requested herein.

### E.    The Settlement Class's Reaction to the Fees Request

Although not included among the *Goldberger* factors, the Settlement Class's reaction to the requested attorneys' fees "is entitled to great weight by the Court." *Maley*, 186 F. Supp. 2d at 374. Pursuant to this Court's Preliminary Approval Order, 160,309 copies of the Postcard Notice were sent to potential Class Members beginning on March 13, 2024. Mejia Decl. ¶17.[2] The long-form Notice and Claim Form were made available on the Settlement's website, www.PelotonSecuritiesSettlement.com. *Id.* at ¶18. Summary Notice was published in *Investor's Business Daily* on March 4, 2024 and posted over *Globe Newswire* on March 6, 2024. *Id.* at ¶¶5-6. The Notice informed the Class that Lead Counsel would apply for an award up to 28% of the Settlement Fund, expenses not to exceed $100,000, and an award for Lead Plaintiff up to $5,000.

---

[2]    "Mejia Decl." refers to the Declaration of Melissa Mejia Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion, filed concurrently herewith.

*See id.*, Ex. C.  The deadline for objection to the fee request is May 30, 2024, as published in the Notice.  *Id.* at 2.  To date, no Settlement Class Member has objected to the amount of attorneys' fees requested.  *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007) (finding lack of any objections "suggests that the fee request is fair and reasonable").

> **F.    The Requested Attorneys' Fees Are Also Reasonable Under A Lodestar Cross-Check**

This Circuit encourages a lodestar cross-check on a requested fee award to evaluate its reasonableness.  *See Goldberger*, 209 F.3d at 50; *Beacon*, 2013 WL 2450960, at *5.  To determine the lodestar, the court multiples the number of hours an attorney devoted to the litigation by that attorney's hourly rate.  Then, by applying a multiplier, the court adjusts the lodestar amount to reflect factors including the risks of litigation, the result obtained, and the quality of representation.  *See, e.g., Hi-Crush*, 2014 WL 7323417, at *18; *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *25-26 (S.D.N.Y. Nov. 8, 2010).

Lead Counsel spent a total of 2,748.50 hours litigating this Action over the past few years, resulting in a lodestar of $1,899,060.  Wilson Decl. ¶68.  The Faruqi Firm's hourly billing rates range from $675-1,250 for partners, $500-625 for associates, and $325-470 for paralegals. Wilson Decl. ¶71.  To determine "the propriety of the hourly rates charged by plaintiffs' counsel in class actions, courts have continually held that the standard is the rate charged in the community where the services were performed for the type of service performed by counsel," *i.e.,* the "market rate."  *Telik*, 576 F. Supp. 2d at 589.  Courts have found comparable rates charged by plaintiffs' counsel to be reasonable.  *See Christine Asia*, 2019 WL 5257534, at *20 (approving requested fees in securities class action and citing in support *In re Credit Default*

12

*Swaps Antitrust Litig.*, No. 13 md 2476 (DLC), 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) as "approving $253.8 million fee based on multiplier of 'just over 6' in a case that settled before class certification and based on lodestar generated from 2016 partner rates of $834 to $1,125 and associate rates of $411 to $714"); *Hi-Crush*, 2014 WL 7323417, at *14 (finding the rates billed by Lead Counsel (ranging from $425 to $825 per hour for associates, and $180 per hour for staff and paralegals to be appropriate)); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding lodestar cross-check supported the reasonableness of the requested fee award where "[t]he blended average hourly billing rate is $529 per hour for all work performed and projected, with billing rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals[]"). A lodestar multiplier of approximately 2.15, well within the range commonly awarded in securities class actions of this complexity and magnitude. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 n.27 (2d Cir. 2005) (upholding multiplier of 3.5 on lodestar of $62.9 million in antitrust class action). Accordingly, the market rate supports the reasonableness of the hourly rate used by Lead Counsel in the calculation of its lodestar.

The hours worked by Lead Counsel are also reasonable. While the Settlement was achieved early in the litigation, Lead Counsel performed a great deal of work on behalf of the Class in the time leading up to the Settlement. *See* Section I.D, *supra*; Wilson Decl. ¶¶71. Lead Counsel respectfully submits that the 2,748.50 hours worked in connection with this Action were necessary to achieve this favorable Settlement for the benefit of the Class and are therefore reasonable. *See* Wilson Decl. ¶¶68.

13

The requested attorneys' fees, 28% of the Settlement Fund, or $3,780,000 plus accrued interest, represents a multiplier of approximately 2.06 of Lead Counsel's lodestar. *See* Wilson Decl. ¶69. This multiplier is similar to those typically awarded in securities class actions in this Circuit and confirms the reasonableness of the requested fees. *See Rodriguez*, 2023 WL 2184496, at *13 (stating that in "other complex contingent litigation, courts have awarded lodestar multipliers of between 2 and 5 or more" and collecting cases); *Christine Asia*, 2019 WL 5257534, at *20 (approving fees resulting in a lodestar multiplier of 2.15); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-CV-8925 (KMW), 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) ("Although a lodestar multiplier of 3.14 for a settlement of $210 million is high, it is still within the range of lodestar multipliers approved in this Circuit."); *In re Credit Default Swaps*, 2016 WL 2731524, at *17 (approving multiplier of "just over 6"); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 (NRB), 2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005) (approving 3.96 multiplier for settlement of $120 million).

## II.    LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED IN CONNECTION WITH THIS ACTION

Pursuant to the notices, Lead Counsel also respectfully seeks reimbursement of $88,996.15 reasonably incurred in connection with prosecuting this Action. *See* Wilson Decl. ¶¶72-79. It is well-established that "[c]ounsel is entitled to reimbursement from the common fund for reasonable litigation expenses." *In re IMAX Sec. Litig.*, No. 06 Civ. 6128(NRB), 2012 WL 3133476, at *6 (S.D.N.Y. Aug. 1, 2012). Courts in this Circuit frequently grant reasonable reimbursement requests from plaintiffs' counsel in common fund cases. *See, e.g., In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (granting lead counsel's request for reimbursement of "out-of-pocket expenses reasonably and necessarily incurred" in prosecuting the action); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp.

14

2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients."). The expenses sought by Lead Counsel here are far lower than the expense awards courts have deemed reasonable for other settlements of comparable size. *See, e.g., Martínek*, 2022 WL 16960903, at *1 (granting expense request of $460,000 for $13 million settlement).

Lead Counsel has itemized the categories of expenses it incurred and attests to its accuracy in the Wilson Declaration. Wilson Decl. ¶73; Ex. 4. Lead Counsel's expenses include fees paid to a fact investigator and damages consultant, mediation fees, court reporter fees, electronic research, photocopying, postage, and meals. Wilson Decl. ¶¶74-78. These expenses are those for which "the paying, arms' length market" routinely reimburses attorneys. *Global Crossing*, 225 F.R.D. at 468 (granting the requested reimbursement and categorizing the expenses—witnesses, filing fees, service of process, travel, legal research, document review—as those for which attorneys are often reimbursed). Furthermore, the requested reimbursement is less than the $100,000 in expenses that the notices informed the Class about. *See* Mejia Decl, Ex. C.

Moreover, no objections to the expense request have been received. Wilson Decl. ¶49. As such, the requested reimbursement should be awarded from the Settlement Fund.

## III. LEAD PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF REASONABLE COSTS AND EXPENSES

Finally, Lead Counsel seeks an award in the amount of $5,000 for the Lead Plaintiff's costs and expenses pursuant to the PSLRA 15 U.S.C. §78u-4(a)(4). The Notice disseminated to the Class stated that Lead Plaintiff may seek reimbursement of up to $5,000 from the Settlement Fund as compensation for the time and expense he incurred. Wilson Decl. ¶46; Mejia Decl., Ex.

15

C.  To date, there have been no objections to the proposed award to Lead Plaintiff. Wilson Decl. ¶49.

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class[,]" but explicitly provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).  Congress acknowledged "that lead plaintiffs *should* be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly."  H.R. Conf. Re. No. 369, 104th Cong., 1st Sess. (1995).

Many courts have construed 15 U.S.C. §78u-4(a)(4) to include as compensable "costs" or "expenses" the amount of time spent on litigation that would otherwise have been spent on other things, such as the lead plaintiff's work, investment activities, or personal life.  *See, e.g., In re Am. Int'l Group, Inc. Sec. Litig.*, No. 04 Civ. 8141(DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (awarding lead plaintiffs $30,000 pursuant to 15 U.S.C. §78u-4(a)(4) "to compensate them for the time and effort they devoted on behalf of a class"); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litigation*, 909 F. Supp. 2d 259, 273 (S.D.N.Y. 2012) (awarding $31,053.14 to institutional lead plaintiff); *Ramsey v. MRV Commc'ns Inc.*, No. CV 08-04561 FAG (RCx), 2010 WL 11596641, at *8-9 (C.D. Cal. Nov. 16, 2010) (applying 15 U.S.C. §78u-4(a)(4) and awarding the lead plaintiff $11,000 to reimburse him for 35.75 of the hours he spent working on the case at an hourly rate of $300 an hour, which the court found appropriate for a lead plaintiff who works in the financial industry or runs a business, and collecting cases).

16

Lead Plaintiff's request here is justified for similar reasons. As set forth in Richard Neswick's declaration accompanying this motion, he conservatively estimates that he spent 25 hours of his time in work directly related to the representation of the Class. Wilson Decl. ¶¶80-82; Ex. 5 (Neswick Decl.). Lead Plaintiff's work on behalf of the Class included: engaging in numerous communications with Lead Counsel about the Action throughout the litigation; collecting information concerning his Peloton transactions; reviewing documents filed in the Action; attending the mediation virtually; and authorizing the settlement. *Id.*

Accordingly, Lead Counsel, on behalf of Lead Plaintiff, respectfully requests that the Court reimburse Lead Plaintiff for his reasonable costs and expenses, amounting to $5,000 incurred in fulfilling his duty to ably represent the interest of the Class and achieve the substantial result reflected in the Settlement.

## CONCLUSION

For the reasons stated above, Lead Counsel respectfully requests that the Court award attorneys' fees of 28% of the Settlement Fund, reimbursement of litigation expenses in the amount of $ 88,996.15, and an award to Lead Plaintiff in the amount of $5,000.

Dated: April 24, 2024                    Respectfully submitted,


                                         **FARUQI & FARUQI, LLP**

                                         By:    */s/ James M. Wilson, Jr.*
                                                James M. Wilson, Jr.

                                         James M. Wilson, Jr.
                                         Robert W. Killorin (*pro hac vice* forthcoming)
                                         **FARUQI & FARUQI, LLP**
                                         685 Third Avenue, 26th Floor
                                         New York, NY 10017
                                         Telephone: 212-983-9330
                                         Facsimile: 212-983-9331
                                         Email:  jwilson@faruqilaw.com
                                                 rkillorin@faruqilaw.com


17

*Attorneys for Lead Plaintiff and Lead Counsel for the putative Class*

18