**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PELOTON INTERACTIVE, INC. SECURITIES LITIGATION | Case No. 1:21-cv-02369-CBA-PK |
| | CLASS ACTION |

**DECLARATION OF JAMES M. WILSON, JR. IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AN AWARD TO LEAD PLAINTIFF**

I, James M. Wilson, Jr., declare as follows:

1.      I am a member in good standing of the bar of the State of New York and am admitted in this Court.  I am a partner in the law firm of Faruqi & Faruqi, LLP.  I respectfully submit this declaration in support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement ("Final Approval Motion") and Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and an Award to Lead Plaintiff ("Fee Motion"), filed herewith.  I have personal knowledge of the facts set forth herein and would testify thereto if called.

## I.      PRELIMINARY STATEMENT

2.      Lead Plaintiff, on behalf of himself and the putative Class, and defendants Peloton Interactive, Inc. ("Peloton" or the "Company"), John Foley, Jill Woodworth, Hisao Kushi, and Brad Olson ("Defendants"), have reached a proposed settlement of the above-captioned action (the "Action") for $13,950,000 in cash that, if approved, will resolve all claims in the Action.

3.      The Settlement's terms are set forth in the Stipulation.  The Court preliminarily approved the Stipulation by its Decision and Order dated February 21, 2024 (ECF No. 91) ("Preliminary Approval Order"), a true and correct copy of which is attached hereto as ***Exhibit 1.***

4.      This declaration sets forth the nature of the claims asserted, the procedural history of the Action, and the methods by which the Class was notified of the Settlement.  It also demonstrates the reasons why the Settlement and the Plan of Allocation are fair, reasonable, and adequate, and why Lead Counsel's Fee Motion should be approved.

5.      While Lead Counsel believes that the allegations in the Action have substantial merit, Lead Counsel respectfully submits that the Settlement represents a favorable result for the Class.

1

6.    The Settlement is the result of extensive arm's length and contentious settlement negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.  With the assistance of an esteemed mediator, counsel met for a mediation session to vigorously debate the strengths and weaknesses of the claims and defenses in the Action.  The parties came to an agreement in principle during the mediation session, subject to Defendants producing and Lead Counsel reviewing confirmatory discovery to confirm that the proposed Settlement was fair, reasonable, and adequate.  Thereafter, the parties engaged in negotiations over the following months regarding the production and review of confirmatory discovery and to finalize the terms of the Stipulation.  Lead Counsel's ability to come to a compromise in light of the many complex issues present in this Action evidence the skill of representation and the quality of the results.

7.    Pursuant to the Preliminary Approval Order, beginning on March 13, 2024, the Postcard Notice were mailed to an aggregate of 160,309 potential Class Members and nominees (Mejia Decl. ¶¶9-17), [1] and were made available on the designated settlement website, www.PelotonSecuritiesSettlement.com, along with the long-form Notice, the Proof of Claim Form, the Stipulation, and the Preliminary Approval Order.  *See* Mejia Decl. ¶¶4, 18-19.  The Summary Notice was timely published in *Investor's Business Daily* on March 4, 2024 and posted by *Globe Newswire* on March 6, 2024.  *Id.* at ¶¶5-6.

8.    The Settlement provides an immediate and certain benefit to the Class considering the significant risks that a smaller recovery—or, indeed, no recovery at all—might be achieved after a trial and the likely appeals that would follow, which could prolong the Action for years

---

[1]    "Mejia Decl." refers to the Declaration of Melissa Mejia Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion, filed concurrently herewith.

and incur significant additional expenses.  For these reasons, and those set forth more fully below, Lead Counsel respectfully submits that the Settlement is in the best interests of the Class and should be approved as fair, reasonable, and adequate.

9.      Lead Counsel also respectfully requests that the Court approve the Plan of Allocation for the Settlement proceeds, the award of attorneys' fees in the amount of $3,906,000, plus accrued interest, reimbursement of expenses in the amount of $88,996.15, plus accrued interest, and an award for Lead Plaintiff pursuant to 15 U.S.C. 78u-4(a)(4) in the amount of $5,000.  The fee award constitutes 28% of the Settlement Fund, which is in line with the amount of attorneys' fees awarded by courts in this Circuit and is reasonable in light of the relevant factors, including the quality of the representation, the complexity of the Action, and the risks of representing the Class in this Action.  The expenses incurred by Lead Counsel were reasonable and necessary to prosecute this Action and to reach this favorable result for the Class.

**II.     SUMMARY OF LEAD PLAINTIFF'S CLAIMS**

10.      This Action arises out of Defendants' allegedly false and/or misleading statements that are alleged to violate §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. 240.10b-5.  *See, e.g.,* Amended Class Action Complaint ("Complaint" or "Compl."), ECF No. 45.

11.      Briefly, the Complaint alleges that during the Class Period, Peloton's signature treadmill, the Peloton Tread+, was involved in events in which personal injuries or product damage had occurred.  Compl. ¶¶30-40.  As well, touchscreens on some of Peloton's lower cost treadmills, the Peloton Tread, were coming loose while the treadmill was in motion.  *Id.* at ¶¶41-44.  The Complaint alleges Defendants concealed this information and instead released outdated risk factors and positive statements about the Company's superior products and dedication to

3

safety. *Id.* at ¶¶55-69. On March 18, 2021, Peloton disclosed that the Tread+ was involved in an incident in which a child tragically died and that the Company was aware of a small number of incidents involving the Tread+ where children had been hurt. *Id.* at ¶¶70-71. However, the Complaint alleges that Peloton did not disclose the full extent of the problem, and that Peloton initially questioned the United States Consumer Product Safety Commission's efforts to protect consumers by issuing a recall. *Id.* at ¶¶74-84.

12. After a series of statements that Lead Plaintiff challenges as false and/or misleading, Peloton eventually recalled the Tread+ and Tread on May 5, 2021. *Id.* at ¶¶85-89.

13. Defendants deny, and continue to deny, each and every one of the claims alleged by Lead Plaintiff in the Action on behalf of the Settlement Class, including all claims in the complaints filed in the Action. Defendants have asserted and continue to assert that their public statements during the putative Class Period contained no material misstatements or omissions, and that at all times, they acted in good faith and in a manner they reasonably believed to be in accordance with all applicable rules, regulations, and laws. *See, e.g.,* Stipulation at 4-5.

## III. PROCEDURAL HISTORY

14. This Action began on April 29, 2021, when plaintiff Ashley Wilson filed the initial class action complaint against Peloton and certain defendants in the United States District Court for the Eastern District of New York. ECF No. 1.

15. On October 26, 2021, Magistrate Judge Peggy Kuo recommended that Neswick's motion be granted, that the actions be consolidated, that Neswick be appointed as Lead Plaintiff, and that the Faruqi Firm be appointed as Lead Counsel. ECF No. 37. On November 16, 2021, Judge Amon adopted the report and recommendation in full.

16.    On December 21, 2021, Defendants filed a Motion to Transfer Venue to the Southern District of New York Under 28 U.S.C. §1404(a) ("Transfer Motion"), ECF No. 40, which Lead Plaintiff opposed, ECF No. 42.

17.    Lead Plaintiff filed the amended complaint ("Complaint" or "Compl.") on January 21, 2022.  ECF No. 45.

18.    On January 26, 2022, the Court denied Defendants' Transfer Motion.  ECF No. 47

19.    On March 7, 2022, Defendants moved to dismiss the Complaint ("Motion to Dismiss") and requested judicial notice of certain materials in connection therewith ("Request for Judicial Notice").  ECF Nos. 51-54.  Plaintiff opposed Defendants' Motion to Dismiss and Request for Judicial Notice on April 6, 2021, ECF Nos. 55-56, to which Defendants replied on April 26, 2021, ECF Nos. 58-59.  On June 9, 2022, the Court held oral argument on the Motion to Dismiss and reserved decision on the motion.

## IV.    THE SETTLEMENT

### A.    Settlement Negotiations

20.    From the outset, Lead Counsel has tirelessly navigated the complicated issues present in the Action.  Prior to engaging in settlement negotiations, Lead Counsel spent considerable time evaluating the facts and argument available in this Action through the following: (1) conducting an extensive investigation into the facts alleged in the Action, including retaining an investigator to conduct an investigation, as well as reviewing press releases, online and newspaper articles, SEC filings, conference call transcripts, and stock price movements; (2) preparing a detailed amended complaint containing more than seventy pages of factual and legal allegations; (3) conducting complex legal research in connection with opposing the Transfer Motion, Motion to Dismiss and Request for Judicial Notice; (4) drafting those

5

briefs; (5) preparing for and arguing in opposition to the Motion to Dismiss at the hearing; (6) consulting with a damages expert; and (7) preparing for the settlement negotiations, including drafting a detailed mediation statement and reply mediation statement.

21.     After oral argument on Defendants' Motion to Dismiss, the Parties conferred about the possibility of a resolution of class claims.  As a result of these communications, the Parties were able to reach an agreement on the procedures for conducting a formal mediation.

22.     With the benefit of this extensive investigation and comprehensive analysis of the factual and legal issues in this Action, all Parties entered settlement negotiations well-informed of the strengths and weaknesses of the claims and defenses asserted in this Action.

23.     On December 15, 2022, while Defendants' Motion to Dismiss remained pending, the Parties engaged in a full-day mediation session before David Murphy of Phillips ADR, a well-respected and highly experienced mediator and former securities litigator.  The mediation was preceded by submission of mediation statements, reply mediation statements, and exhibits. The mediation session lasted well into the late evening hours and resulted in the Parties reaching an agreement-in-principle to settle and release the claims asserted against Defendants in the Action, subject to the completion of confirmatory discovery.

24.     As soon as the Parties had reached an agreement in principle of the main terms of a settlement, including an agreement for the production of documents and Peloton employee interviews, the Parties notified the Court and asked for the Court to immediately stay and vacate pre-trial deadlines. The Parties informed the Court that they had agreed to endeavor to submit the final stipulation of settlement and preliminary approval papers within 120 days.  ECF No. 77. The Court granted the Parties' motion to stay on December 26, 2022.  ECF No. 78.  Thereafter, the Parties continued to negotiate in good faith on the detailed terms of the proposed settlement

and to reach agreement on the production of documents from Defendants regarding the claims in the Complaint.  The Parties updated the Court on January 13, 2023, of the status of these negotiations that included, the negotiation of the terms of a memorandum of understanding that sets forth the material terms and conditions to settle class claims.  The negotiations also included the terms of a confidentiality agreement pursuant to which Lead Plaintiff would obtain confirmatory discovery from Defendants and that the document production had begun.  The Parties informed the Court that they would continue to endeavor to file the formal settlement agreement and motion for preliminary approval within the 120 days since reaching the settlement on December 15, 2022.  ECF No. 78.  The Court then set April 17, 2023 as the deadline to file the final settlement agreement or a status letter.  ECF No. 79.

25.    The Parties thereafter negotiated with respect to the confirmatory discovery and finalization of the Settlement papers.  As part of the confirmatory discovery process, Lead Counsel reviewed over 16,000 pages of documents that Defendants produced and interviewed two Peloton employees.

26.    On April 17, 2023, Lead Plaintiff filed with the Court the Parties' Stipulation of Settlement and the proposed settlement notice documents with the Court and a motion for preliminary approval of the Settlement, subject to completion of the confirmatory discovery.  ECF. Nos. 80-83.

27.    On April 28, 2023, Fred Alger Management, LLC ("Alger Funds") filed a letter with the Court indicating that it had concerns with certain proposed procedures in the Settlement Notice for class members to exclude themselves from the proposed settlement.  ECF No 84.  Thereafter, Lead Plaintiff conferred with the Alger Funds and reached an agreement on proposed revisions to the procedures for Class Members to exclude themselves from the Settlement Class.

7

Lead Plaintiff submitted those agreed revisions with his reply papers in further support of the motion for preliminary approval on May 5, 2023.  ECF No. 85.

28.     Lead Counsel reviewed the confirmatory discovery produced by Defendants and was able to confirm that the Settlement reached in this Action is fair, reasonable, and adequate.

29.     On November 17, 2023, the Parties filed a Joint Notice that Defendants had provided to Lead Plaintiff the confirmatory discovery contemplated in the Settlement, Lead Plaintiff had completed confirmatory discovery review and he confirmed that the Settlement is fair, reasonable and adequate to the Settlement Class, and that they believed that preliminary approval of the Settlement was appropriate.  ECF No. 88.

30.     On February 21, 2024, the Court entered an Order granting Lead Plaintiff's Motion for Preliminary Approval of the Proposed Settlement, which Order reflected the proposed schedule for finalizing the Proposed Settlement.  ECF No. 91.

**B.      Reasons for the Settlement**

31.     Although Lead Plaintiff and Lead Counsel strongly believe that the claims asserted in this Action are meritorious and the evidence developed to date supports them, they recognized and acknowledge the substantial expense and duration of continued proceedings that would be necessary to prosecute the Action.  Lead Plaintiff and Lead Counsel are also mindful of the inherent difficulty of proving claims under the federal securities laws and the possible defenses to the claims asserted in this Action, as well as the uncertainties presented by complex litigation.  Defendants have denied, and continue to deny, Lead Plaintiff's allegations, and would undoubtedly continue to vigorously oppose the Action and mount strong defenses were the Action to continue.

32.     For example, while Lead Plaintiff believes that his claims would have survived Defendants' motion to dismiss, he acknowledges that this result was far from guaranteed.  Even

8

if the Action survived the Motion to Dismiss, the fact and expert discovery process would likely be time-consuming and expensive. For example, Lead Counsel anticipates that the fact and expert discovery process would require numerous document subpoenas to third parties such as those allegedly injured by Peloton's products and the U.S. Consumer Product Safety Commission, which subpoenas are notoriously difficult to enforce; retention of engineering, products liability, and financial expert witnesses; discovery motion practice, particularly in light of the fact that Lead Plaintiff challenged some of Defendants' privilege redactions during the confirmatory discovery process; production and review of thousands of pages of documents; and the taking of numerous fact and expert depositions.

33.     Lead Plaintiff acknowledges that, notwithstanding his ability to further develop factual support for his claims through fact and expert discovery, the road to trial would involve numerous motions, including summary judgment, and require the preparation of expert reports and debate over witnesses, all of which would be time consuming and would monopolize valuable court resources.

34.     Assuming that Lead Plaintiff filed a successful class certification motion and the claims in the Action were able to survive Defendants' likely motion for summary judgment, and the case proceeded to trial, Lead Plaintiff might not recover anything for the Class. While Lead Plaintiff is prepared to prove the complex factual and legal issues in this Action at trial, there is a substantial risk that the jury would not have agreed with his theory of the case. For example, the parties fundamentally disagree about the amount of damages in this case should Plaintiff prove his claims. Often this essential element is reduced to a "battle of the experts." A jury's reaction to conflicting expert testimony is unpredictable and Lead Plaintiff recognized the possibility that a jury could have been swayed by Defendants' experts and awarded little to no damages. Even if

Lead Plaintiff were to prevail at trial, Defendants might have appealed the decision. The appeals process can go on for months or even years, significantly prolonging the Action and jeopardizing any recovery awarded to the Class at trial should Defendants be victorious.

35.     Notwithstanding the risks to recovery posed by a trial in this Action, the trial process is lengthy, complicated, and would be taxing on the Court and the attorneys involved.

36.     In contrast to the foregoing, the Settlement represents an immediate and certain benefit for the Class. Lead Counsel, having evaluated the substantial risk, time, and expense required to prosecute this Action through trial and appeals, strongly believes that the Settlement is a favorable result for the Class.

## C.     The Settlement Terms

37.     The Settlement, which the Court preliminarily approved, provides for the gross payment of $13,950,000 to secure a settlement of the claims asserted in the Action against Defendants. If approved, the Settlement will finally resolve Lead Plaintiff's allegations against Defendants and release all Released Claims against them in the Action.

38.     All eligible Class Members who timely submit valid Proof of Claim Forms will receive a distribution from the Net Settlement Fund, which is the Settlement Fund minus administration expenses, any Taxes and Tax Expenses, and any awards granted by the Court to Lead Counsel and Lead Plaintiff. The Court will be asked to approve the distribution of the Net Settlement Fund at a future date, once the administration is complete.

39.     Based on this declaration and for the reasons set forth in the accompanying memoranda, Lead Plaintiff respectfully submits that the terms of the Settlement and the Plan of Allocation are fair, reasonable, and adequate.

## V.    THE COURT'S PRELIMINARY APPROVAL ORDER AND LEAD PLAINTIFF'S DISSEMINATION OF NOTICE

### A.    Preliminary Approval Order

40.    On April 17, 2023, Lead Plaintiff filed the Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion"), seeking preliminary approval of the Settlement, preliminary certification of the Class, approval of the manner and content of the proposed notice, and scheduling of the Settlement Hearing. *See* ECF Nos. 80-83.

41.    On February 21, 2024, the Court issued the Preliminary Approval Order, which:

a)    Granted preliminary approval of the Stipulation and the Settlement set forth therein, subject to further consideration at the Settlement Hearing;

b)    Scheduled a Settlement Hearing for June 20, 2024 at 10:00 a.m. to determine whether (1) the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate and should be approved; (2) the proposed final Judgment as provided in the Stipulation should be entered; (3) the proposed Plan of Allocation for the proceeds of the Settlement is fair, reasonable, and adequate and should be approved; and (4) Lead Counsel's application for attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiff should be granted:

c)    Approved the appointment of Epiq Class Actions and Claims Solutions, Inc. ("Epiq") as the Claims Administrator to supervise and administer the notice procedure as well as the processing of the claims;

d)    Approved the form, substance, and requirements of the Postcard Notice, Notice, Summary Notice, and Proof of Claim Form, and approved the plan for mailing, distribution, and/or publication of these documents;

11

e)  Directed Lead Counsel to file with the Court proof of such mailing and publication no later than June 13, 2024;

f)  Established procedures and deadlines for Class Members to object to the Settlement, Plan of Allocation, or the requests in the Fee Motion and to appear at the Settlement Hearing; and

g)  Established procedures and deadlines for Class Members to submit Proof of Claim Forms or seek exclusion.

**B.    Notice**

42.    Pursuant to the Preliminary Approval Order, Lead Counsel served on Defendants' Counsel and filed with the Court the Mejia Declaration, filed concurrently herewith.  The Mejia Declaration sets forth the efforts undertaken by Epiq to mail the Postcard Notice to Class Members, to publish the Summary Notice, and to establish the website www.PelotonSecuritiesSettlement.com and toll-free telephone helpline.

43.    As detailed in the Mejia Declaration, beginning on March 13, 2024, Epiq mailed or caused to be mailed an aggregate total of 160,309 copies of the Postcard Notice to potential Class Members and nominees.  *See* Mejia Decl. ¶17.  The Summary Notice was published in *Investor's Business Daily* on March 4, 2024 and posted by *Globe Newswire* on March 6, 2024. *See id.* at ¶¶5-6.

44.    Additionally, Epiq established a toll-free telephone helpline to accommodate potential Class Members who have questions about the Settlement and who can request that the Long Form Notice and claims forms be mailed to them.  *See id.* at ¶¶20-21.

45.    Epiq also set up the website to provide information about the proposed Settlement to Class Members and others.  *See id.* at ¶18.  The website makes available for viewing and downloading important documents, including the Notice, Proof of Claim Form, and the

Stipulation. *See id.* The website also lists the exclusion, objection, and claim deadlines as well as the date and time of the Settlement Hearing. *See id.*

46.     As required by Rule 23 of the Federal Rules of Civil Procedure, due process, and the PSLRA, the Notice: (a) described the nature of the claims asserted in the Action; (b) included the case caption; (c) included a definition of the Settlement Class; (d) summarized the Settling Parties' reasons for entering into the Settlement; (e) listed the name, telephone number, and address for Lead Counsel; (f) disclosed that Lead Counsel intends to seek attorneys' fees of up to 28% of the Settlement Fund, plus reimbursement of expenses not to exceed $100,000, and an award for Lead Plaintiff up to $5,000; (g) provided the date, time, and location of the Settlement Hearing; (h) advised Settlement Class Members of their right to appear at the Settlement Hearing and instructed them that the date may change; (i) advised Class Members of their right to exclude themselves from the Class and the binding effect of doing so; (j) provided the deadline and procedure for opting out of or opposing the Settlement, Plan of Allocation, or award of attorneys' fees, expenses, or an award to Lead Plaintiff; (k) explained the consequences of remaining in the Settlement Class; (l) provided the manner in which to obtain more information, including the address for the designated website; and (m) explained how to access the case docket at the courthouse or on PACER. *See generally* Mejia Decl., Ex. C.

### C.     Reaction of the Class

47.     The Postcard Notice provides that objections to the Settlement, Plan of Allocation, and/or the application for attorneys' fees, reimbursement of expenses, and an award for Lead Plaintiff must be received no later than May 30, 2024. *See* Mejia Decl., Ex. B.

48.     The Postcard Notice provides that requests for exclusion from the Settlement must be received no later than May 29, 2024. *See id.*

13

49.    Although 160,309 Postcard Notices have been mailed to potential Class Members and nominees as of April 23, 2024, no objections to the Settlement, the Plan of Allocation, and/or the application for attorneys' fees, reimbursement of expenses, and an award for Lead Plaintiff have been received.  *See* Mejia Decl. ¶23.

50.    Only two requests for exclusion have been received: one from Pratyush Mishra ("Mishra") and one from Bradford Neumann ("Neumann").  The Class is defined as "all persons or entities who purchased or otherwise acquired Peloton securities from September 11, 2020 to May 5, 2021, inclusive, and were damaged thereby."  PA Order at 22 ¶2.  Neither requester appears to be a Class Member who can submit a valid claim for recovery, therefore their requests for exclusion appear to be invalid.

51.    Mishra's request appears to be invalid because Mishra did not purchase or acquire any Peloton securities during the Class Period and therefore is not a member of the Settlement Class.  *See* Mejia Decl., Ex. D at 2-26.

52.    Neumann's request appears to not be valid because his trades in options contracts resulted in gains on Peloton securities and is therefore not a Class Member because he was not "damaged thereby."  *See* Mejia Decl., Ex. D at 28-79.

53.    Lead Counsel in consultation with Epiq will make a final determination whether these two investors are included in the Class definition and/or suffered damages who would have qualified for participation in the Settlement in the first place.

54.    If any objections or additional requests for exclusion are received, they will be addressed in Lead Plaintiff's reply papers.

14

**D.     Plan of Allocation**

55.     Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Class Members who wish to participate in the Settlement must submit a Proof of Claim Form with supporting documentation no later than May 30, 2024. *See* Mejia Decl., Ex. C.

56.     As set forth in the Notice, all Class Members who timely file a valid Proof of Claim Form and whose *pro rata* share of the Net Settlement Fund amounts to $10.00 or more will receive a distribution of the Settlement proceeds, after deduction of, *inter alia*, attorneys' fees, expenses, and taxes incurred on the Settlement Fund. *See* Mejia Decl., Ex. C (Claims Package) at 14. The distribution will be made in accordance with the Plan of Allocation set forth and described in detail in the Notice. *See id.* at 10-11.

57.     The Plan of Allocation's objective is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic loss as a result of Defendants' alleged misconduct as opposed to losses caused by market or industry factors not related to the alleged fraud. *See id.*

58.     Under the Plan of Allocation, the Claims Administrator will calculate each Authorized Claimant's Recognized Loss, as explained in the Notice. *See id.* at 11-13. The calculation of a Recognized Loss will depend on several factors, including when and for how much Class Members purchased or otherwise acquired their Peloton securities, and whether those securities were sold, and if sold, when and for how much. *See id.* In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have held through at least one of the corrective disclosures set forth in the Plan of Allocation. *See id.* The Claims Administrator will use the Recognized Loss formula to determine each Authorized Claimant's *pro rata* share to proportionately allocate the Net Settlement Fund to the Authorized Claimants. *See id.*

15

59.     The Plan of Allocation was formulated with the assistance of Lead Plaintiff's damages consultant, and it tracks the theory of damages alleged in the Complaint.  It was also reviewed and approved by Epiq, a claims administrator with substantial experience in claims administration.

60.     The terms of the Plan of Allocation were fully disclosed in the Notice that was made available on the Action's website beginning on February 21, 2024.  Mejia Decl. ¶18.  To date, there have been no objections to the Plan of Allocation; and thus, Lead Plaintiff respectfully submits that it is fair, reasonable, and adequate and should be approved by the Court.

## VI.     LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AN AWARD FOR LEAD PLAINTIFF

### A.     Attorneys' Fees

61.     Lead Counsel has represented the Class on a wholly contingent basis for over two years, not receiving any payment for its services or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement.  Throughout this time, Lead Counsel's dedication to recovering a favorable result for the Class has been expensive and challenging.

62.     The Notice informed Class Members that Lead Counsel will apply for an award of attorneys' fees up to 28% of the Settlement Fund and reimbursement of expenses not to exceed $100,000.  *See* Mejia Decl., Ex. C at 1.

63.     Lead Counsel requests that the Court award a fee of 28% of the Settlement Fund, or $3,906,000 plus accrued interest.

64.     As discussed in the Fee Motion, filed concurrently herewith, the requested fee is fair, adequate, and reasonable.  In light of the factors including the favorable result achieved for the Class, the skill required, the quality of work performed, and the risk of pursuing claims on a

16

contingency basis, Lead Counsel respectfully submits that a fee of 28% of the Settlement Fund is justified and should be approved.

65.      According to Lead Plaintiff's damages consultant, the $13,950,000 Settlement Amount will recover approximately 2% of the maximum potential damages available in this Action (assuming the proposed Class is certified and all claims and damages were proven).  This is above the median ratio of 1.8% for recent securities class action settlements as determined by NERA Economic Consulting.  *See* ECF No. 83-2 at 18.  Based on Defendants' adamant denial of any liability, as well as the substantial time and expense of continued litigation, and the risks that financial risks faced by Peloton at the time the Parties engaged in settlement negotiations and reached the Settlement, this Settlement Amount represents a very favorable recovery for the Class.

66.      Lead Counsel's expertise and persistence have been vital to obtaining such a favorable result for the Class.  As set forth in its firm resume, attached as *Exhibit 2* hereto, the Faruqi Firm is a nationally-recognized class action firm with extensive experience litigating and negotiating settlements as lead or co-lead counsel in complex securities class actions.

67.      In order to reach a successful resolution of this Action, Lead Counsel was required to litigate at a high skill level because Defendants were represented by Latham & Watkins LLP, which fought vigorously for its clients throughout the Action and were formidable opponents.

68.      As set forth in the Faruqi Time Report, a true and correct copy of which is attached hereto as *Exhibit 3*, Lead Counsel has committed thousands of hours to litigating this Action for more than two years, from the initial investigation to this final resolution. Specifically, Lead Counsel has devoted 2,748.50 hours to this Action, which includes time spent,

*inter alia*: (1) conducting an extensive investigation into the facts alleged in the Action, including conferring with an investigator and reviewing and analyzing press releases, SEC filings, conference call transcripts, and stock price movements; (2) conducting research for and briefing the lead plaintiff motion; (3) conducting complex legal research for and drafting the detailed AC with more than seventy pages of factual and legal allegations; (4) conducting legal research for and drafting a brief in opposition to Defendants' Transfer Motion; (5) conducting complex legal research for and drafting briefs in opposition to the Motion to Dismiss and Request for Judicial Notice; (6) preparing for and arguing in opposition to the Motion to Dismiss at the hearing; (7) consulting with a damages consultant to better understand the issues facing recovery for the Class; (8) conducting research for and drafting a mediation statement and a reply statement; (9) communicating with Lead Plaintiff throughout the Action; (10) engaging in a mediation session and corresponding with the mediator and Defendants' counsel after the session to reach a resolution of the claims; (11) negotiating with Defendants regarding the confirmatory discovery following the mediation; (12) reviewing over 16,000 pages of confirmatory discovery and interviewing two Peloton employees; (13) drafting the Settlement Stipulation, Postcard Notice, Notice, Summary Notice, Proof of Claim Form, and related materials; and (12) drafting the preliminary approval and final approval motion papers.

69.     Based upon the hours expended by Lead Counsel, and the current billing rates for Lead Counsel's professionals, the total lodestar is $1,899,060.  The lodestar results in a multiplier of 2.06 where the fee requested by Lead Counsel in the amount of $3,906,000 is approximately 2.06 times Lead Counsel's lodestar of $1,899,060.

70.     Lead Counsel's time is taken from daily time records regularly prepared and maintained by the firm in the ordinary course of business.  The hours expended in preparing the

18

application for fees and reimbursement of expenses have been excluded from Lead Counsel's total time.

71. The total number of hours Lead Counsel spent were reasonable and necessary to achieve the Settlement. Lead Counsel's hourly billing rates range from $675-1,250 for partners, $500-625 for associates, and $325-470 for paralegals. The hourly rates for attorneys and support staff, included in *Exhibit 3*, are reasonable for the region and expertise of the attorneys.

**B.    Costs and Expenses**

72. The expenses incurred by Lead Counsel in the prosecution of this Action are set forth in the accompanying Expense Report from the Faruqi Firm, a true and correct copy of which is attached hereto as *Exhibit 4*. In total, Lead Counsel has incurred $88,996.15 in expenses.

73. The expenses in the Expense Report are taken from the books and records of the Faruqi Firm maintained in the ordinary course of business. The books and records are prepared from expense vouchers, check records, and other such documents. The expenses were reasonable and necessary for the effective and efficient prosecution of this Action and are the type that would normally be charged to a fee-paying client in the private legal marketplace.

74. The majority of this amount, $45,518.50, represents expenses primarily incurred by the private fact investigator and the damages consultant retained by Lead Counsel.

75. Lead Counsel hired L.R. Hodges & Associates, Ltd. to conduct a background fact investigation and to reach out to potential confidential witnesses who may be able to provide more insight into what was happening at Peloton during the Class Period.

76. Lead Counsel also retained an economic consulting firm, Stanford Consulting Group, Inc., to consult on the damages and loss causation issues present in this Action, and to assist with the preparation of the Plan of Allocation.

77. Lead Counsel respectfully submits that fees paid to the fact investigator and the damages consultant were reasonable and necessary to prosecute this Action to the point at which it settled.

78. The remainder of Lead Counsel's expenses, $43,477.65, reflect routine and typical expenditures incurred during the course of litigation, including mediation fees, e-discovery management, electronic research, court reporting fees, photocopying, postage, transportation and meals. All of these expenditures are the types of expenses incurred in similar class actions of this size and would be billed to a fee-paying client.

79. The total expenses, $88,996.15 are less than the $100,000 in potential expenses that the notices informed the Class may be incurred. Lead Counsel respectfully submits that these expenses are reasonable in light of the pace and duration of the Action and were necessarily incurred for its successful resolution. Lead Counsel understood that it might not recover any expenses in the event the Action was dismissed, and thus took steps to minimize costs wherever possible without jeopardizing its duty to zealously represent the Class.

**C.    Award for Lead Plaintiff**

80. Lead Counsel also respectfully requests that the Court grant an award of $5,000 to the Lead Plaintiff, Richard Neswick, to reimburse him for his services as representative of the Class.

81. As set forth in the Declaration of Richard Neswick, attached hereto as ***Exhibit 5***, Lead Plaintiff has taken his role very seriously. Mr. Neswick has dedicated at least 25 hours of his time to the Action by, *inter alia*:

   a) Engaging in frequent telephone and email communications with Lead Counsel about this Action;

20

b) Reviewing documents filed and/or prepared in the Action, including the Complaint, the Motion to Dismiss briefing, mediation documents, and the Preliminary Approval Motion;

c) Virtually attending the mediation; and

d) Providing input on the mediation and settlement negotiations and authorizing the Settlement.

See **Exhibit 5**.

82. The types of activities that Mr. Neswick engaged in to lead this litigation are precisely the type of efforts that courts have found support an award to class representatives. Because Mr. Neswick played an integral role in the Action, Lead Counsel respectfully submits that Lead Counsel should be reimbursed for the time and effect he devoted to actively representing the Class.

## VII.    LIST OF EXHIBITS

83. Attached as Exhibit 1 is a true and correct copy of the Court's Preliminary Approval Order, dated February 21, 2024,

84. Attached as Exhibit 2 is a true and correct copy of the Faruqi Firm's resume.

85. Attached as Exhibit 3 is a true and correct copy of the Faruqi Firm's Lodestar Report.

86. Attached as Exhibit 4 is a true and correct copy of the Faruqi Firm's Expense Report.

87. Attached as Exhibit 5 is a true and correct copy of the Declaration of Richard Neswick.

21

## VIII.  CONCLUSION

88.    Lead Counsel respectfully submits that the Settlement should be granted final approval as fair, reasonable, and adequate; that the Plan of Allocation should be approved as fair, reasonable, and adequate; that attorneys' fees in the amount of 28% of the Settlement Fund, or $3,906,000, plus accrued interest, should be granted; that Lead Counsel's $88,996.15 in expenses should be reimbursed in full; and that Lead Plaintiff should be granted an award of $5,000 for the time and effort he put forth in representing the putative class.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 24th day of April 2024 at New York, NY.

*/s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

22