UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-------------------------------X  Docket#
                                :  21-cv-02369-CBA-PK
                                :
                                :
IN RE PELOTON INTERACTIVE, INC. :  U.S. Courthouse
SECURITIES LITIGATION           :  Brooklyn, New York
                                :
                                :  June 20, 2024
                                :  10:02 a.m.
-------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR FINAL APPROVAL HEARING
BEFORE THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE


**A    P    P    E    A    R    A    N    C    E    S:**


**For the Plaintiff**:        **Katherine M. Lenahan, Esq.**
                            **James Milligan Wilson, Jr., Esq.**
                            Faruqi & Faruqi, LLP
                            685 Third Avenue, 26th Floor
                            New York, NY 10017


**For the Defendant**:        **Whitney Weber, Esq.**
                            Latham & Watkins
                            505 Montgomery Street, Ste. 2000
                            San Francisco, CA 94111

                            **Andrew Brian Clubok, Esq.**
                            Latham & Watkins LLP
                            555 Eleventh Street, NW
                            Suite 1000
                            Washington, DC 20004


**Transcription Service**: **Transcriptions Plus II, Inc.**
                            61 Beatrice Avenue
                            West Islip, New York 11795
                            RL.Transcriptions2@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

THE CLERK:  This is Civil Cause For a Final Approval Hearing, docket 21-cv-2368, *In re Peloton Interactive, Inc. Securities Litigation*.  Magistrate Judge Peggy Kuo presiding.

Will the parties please state their appearances beginning with plaintiff?

MS. LENAHAN:  Good morning, your Honor.  I am Katherine Lenahan of Faruqi & Faruqi here on behalf of the plaintiff.

MR. WILSON:  James Wilson from Faruqi & Faruqi for plaintiff also.

THE COURT:  Good morning.

MR. WILSON:  Good morning, your Honor.

MS. WEBER:  Good morning, your Honor.  Whitney Weber of Latham & Watkins on behalf of defendants.

MR. CLUBOK:  And good morning, your Honor.  Andrew Clubok also Latham & Watkins on behalf of defendants.  We're also joined by our client representative, Laura Kessler, from Peloton.

THE COURT:  Okay.  And if you want to come sit at counsel table, feel free.  Okay.  No reason to be a member of the audience.

All right.  So we're here for a final approval hearing.  I'll note that there are no other people here. I would be asking for objectors.  Has anybody received

Proceedings                                    3

anything?

MR. WILSON: No, and we checked before we walked in and we didn't see anyone out there.

THE COURT: Okay. Great. So why don't we start. Ms. Lenahan, you can just walk me through what has happened since the preliminary approval.

MS. LENAHAN: Certainly, your Honor. Since the preliminary approval order was entered, the notice program went forward and thankfully it went forward without anything unusual happening. Over 300,000 notices were mailed to class members and to nominees. Notice was published in two places, Investor's Business Daily and Globe Newswire. And despite this extensive notice program, we received no objections and only six requests for exclusion of which only three are valid.

Based on the class's reaction to the settlement, we believe that this strongly supports final approval.

THE COURT: All right. And explain why three are valid and three are not valid.

MS. LENAHAN: Three of the requests for exclusion are not valid because one of the objectors did not have any class period purchases so they are not a class member. And the other two are not class members because they did not suffer any losses on their Peloton

Proceedings

securities and were therefore not damaged thereby within the definition of the class.

THE COURT:  Okay.  All right.  Very good.  And so was it also part of the plan to receive the claims as of now or will those be coming in later?

MS. LENAHAN:  The claims filing deadline was May 21st.  However, claims tend to roll in late occasionally in these cases.  So we anticipate that there will be more claims coming down the pike.  But I believe that the claims administrator so far has received over 20,000 claims.

THE COURT:  Okay.  And of those claims, remind me how the dollar amounts were being calculated.  I think it was pro rata, right?  So the idea that everybody gets some portion such that at the end there should be nothing left to distribute.

MS. LENAHAN:  That is correct, your Honor.  The claim forms come in and then the claims administrator determines which claims are valid.  It calculates the recognized loss and then divides that pro rata.

THE COURT:  Okay.  And since the deadline has already passed, when is the claims administrator intending to do that first round of calculations?

MS. LENAHAN:  That takes a little while because the quality assurance process takes some time.

5

Proceedings

Generally, the claims administrators are in a position to determine those numbers about six to nine months after final approval.

THE COURT:  Seems like a long time.  Why do they need that much time?

MS. LENAHAN:  Your Honor, it does take quite a while.  This is true and the reason is that a lot of times individuals will submit their claims and they will be missing documentation.  And so the claims administrator will give them an opportunity to supplement with the correct documentation.  And then the claims administrator, once they get all that information they will go through and make sure that none of the claims are, I guess I would put it suspicious.  Sometimes claims are submitted by bad actors who, you know, are just trying to take money from the settlement but are not actually class members.  So the quality assurance process to weed out those is part of why it takes so long.

THE COURT:  I see.  All right.  And then during this time is the claims administrator charging a flat rate or is it possible that at the end of it they'll have done so much work that they'll be asking for more money?

MS. LENAHAN:  That is certainly possible.  They incur costs as time goes on.  So as they continue to administrate settlement, and some of those are expensive

6

Proceedings

like sending out additional notices or letters and part of the deficiency process would be to send out letters to class members who need to give them more information.  So all of that takes time and money that does accumulate.

So it's possible that they would ask for more but I do say we really keep a close eye on those expenses.  And you know, we'll push back against anything that we think is unreasonable.

THE COURT:  All right.  And it's common for the Court to be asked to approve as part of the final approval process the claims administrator fees.  So what amount will you be seeking there or is that rolled into some other dollar amount?

MS. LENAHAN:  So that is an amount that we will seek at the distribution stage.  So right now the claims administrator -- so far the claims administrator's expenses and fees are around 188,000.  The notice that went out to the class estimated that the notice of administration costs would be about 653,000.

So at the time of distribution we'll know, you know, exactly how much the claims administrator has occurred in expenses and we'll seek those amounts then.

THE COURT:  All right.  And so if you were estimating earlier that it might be 600,000 but they only end up using or requesting 200,000, the remaining amount

7

Proceedings

gets rolled into the available amount to be distributed or how does that work?

MS. LENAHAN:  That is correct.

THE COURT:  Okay.

MS. LENAHAN:  It would be part of the amount to be distributed to the class.

THE COURT:  All right.  Great.  And then can you tell me based on the number of claims that were filed, it looks like it's about an 8.6 percent participation rate, can you talk about whether that is an appropriate number?

MS. LENAHAN:  That is correct.  That's pretty typical in our experience.  Claims administrators usually estimate about a 10 to 25 percent claims rate.  This is a little under that but it's based on the amount of notices that are mailed.  And the amount of notices that are mailed tends to be over-inclusive because many of the people who receive notices might have bought Peloton securities but ultimately may not be class members because of their trading pattern.  So it's kind of casting a wide net.  So at this point in time we think that's a reasonable claims rate and we anticipate that it will increase over the next month or so.

THE COURT:  Okay.  Very good.  Thank you.  And then talk briefly about -- oh, the lead plaintiff's

Transcriptions Plus II, Inc.

Proceedings                                           8

awards, it's just Mr. Neswick?

MS. LENAHAN:  That's correct.

THE COURT:  Okay.  And he's requesting, or you're requesting $5,000 on his behalf?

MS. LENAHAN:  That's correct.

THE COURT:  Okay.  And then your attorneys fees.  Talk very briefly about that.

MS. LENAHAN:  Yes.  So we are requesting attorneys fees in the amount of 28 percent of the settlement fund.  And that equates to $3.906 million dollars.  And we are also seeking reimbursement of $88,996.15 in expenses.

In our view, the requested fee is fair and reasonable in light of the obstacles we've encountered in this case.  In order to come to the settlement that we came to, counsel spent a great deal of time investigating the facts and law in order to draft and amend complaints. We also spent a great deal of time with respect to opposing defendant's motion to transfer venue, the motion to dismiss, and then the subsequent mediation proceedings and confirmatory discovery that counsel entered into in order to confirm the fairness, reasonableness, adequacy of the settlement.

This amount is commonly awarded in cases such as these and we submit that the fact that no class

9

Proceedings

members objected to our request support the reasonableness.

THE COURT: And it's a multiplier of just over two times, right?

MS. LENAHAN: That's right.

THE COURT: Right. Thank you. So I'll hear from defendants. Do you have anything you'd like to point out or add or change?

MR. CLUBOK: Your Honor, Andrew Clubok, Latham & Watkins. I think that was well put and laid it out pretty clearly. We're happy to answer any questions your Honor may have.

THE COURT: Okay. I think I've asked the questions --

MR. CLUBOK: I will say --

THE COURT: Oh, go ahead.

MR. CLUBOK: I will say there was a comment that was made I think about how nothing unusual had happened. In our experience, it's pretty unusual to have 300,000 notices and no objection. That was actually pretty striking.

THE COURT: Okay. Thank you. So hold on a second.

All right. That looks great. So I have been

Transcriptions Plus II, Inc.

10

Proceedings

referred this matter by the district judge, Judge Amon, for a report and recommendation because it's a final approval. So I will issue that shortly based on what I've heard.

The parties still have an opportunity if you want to consent to my jurisdiction in which case I can make a finding without the need for a report and recommendation that then goes to Judge Amon. It's completely up to you. So I don't want to influence you but I just put it out there because the procedural posture at the moment is that I do need to issue a written report and recommendation. So don't tell me who's agreeing or not agreeing but just put it in writing and file something on the record if that's what you want. It will take me -- I will not be issuing anything today, so you have some time to do that. But I just want to put that out as a possible avenue for you. Okay?

Is there anything else?

MS. LENAHAN: Nothing from plaintiffs. Thank you, your Honor.

THE COURT: All right. And for the defendant?

MR. CLUBOK: Nothing further, your Honor. Thank you very much.

THE COURT: All right. Thank you, everybody.

(Matter concluded)

11

**C E R T I F I C A T E**

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **19th** day of **July**, 2024.

_Mary Greco_

Transcriptions Plus II, Inc.

Transcriptions Plus II, Inc.