**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PELOTON INTERACTIVE, INC., SECURITIES LITIGATION | Case No. 1:21-cv-02369(CBA)(PK) <br><br> <u>CLASS ACTION</u> |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR DISTRIBUTION OF THE NET SETTLEMENT FUND**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I. THE CLAIMS ADMINISTRATOR'S ADMINISTRATIVE DETERMINATIONS SHOULD BE APPROVED ................................................................................................ 2

    A. Overview Of The Claims Administration Process .................................................... 3

    B. Timely Eligible Claims And Late But Otherwise Eligible Claims Should Be Accepted ..................................................................................................................... 4

    C. Ineligible Claims Should Be Rejected ........................................................................ 5

    D. Claims Received After January 6, 2025 Should Be Rejected As Untimely ............... 6

    E. The Five Disputed Claims Should Be Rejected .......................................................... 6

II. THE DISTRIBUTION OF THE NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS SHOULD BE APPROVED ........................................................................ 8

III. PAYMENT OF EPIQ'S OUTSTANDING FEES AND EXPENSES FROM THE SETTLEMENT FUND SHOULD BE AUTHORIZED .................................................... 10

IV. RETENTION OF PROOF OF CLAIM FORMS AND OTHER DOCUMENTS ............ 11

V. RELEASE OF CLAIMS ................................................................................................... 11

CONCLUSION ........................................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*In re Auction Houses Antitrust Litig.*,
    No. 00 Civ. 0648 LAK RLE, 2004 WL 3670993 (S.D.N.Y. Nov. 17, 2004) ...........................6

*In re Authentidate Holding Corp. Sec. Litig.*,
    No. 05 Civ. 5323(LTS), 2013 WL 324153 (S.D.N.Y. Jan. 25, 2013) ...................................4, 5

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..................................................................................................................9

*In re Citigroup Inc. Sec. Litig.*,
    199 F. Supp. 3d 845 (S.D.N.Y. 2016)......................................................................................9

*Meyer v. United Microelectronics Corp.*,
    2022 WL 43345 (S.D.N.Y. Jan. 5, 2022) .................................................................................8

*In re Oxford Health Plans, Inc.*,
    383 F. App'x 43 (2d Cir. 2010) ................................................................................................4

*Poirer v. Bakkt Holdings, Inc.*,
    No. 22-CV-2283 (PK), 2025 WL 552607 (E.D.N.Y. Feb. 19, 2025).......................................5

*Smilovits v. First Solar, Inc.*,
    No. CV-12-00555-PHX-DGC, 2020 BL 245619 (D. Ariz. June 30, 2020) ...........................10

Lead Plaintiff and Settlement Class Representative Richard Neswick ("Plaintiff"), on behalf of himself and the Class, respectfully submits this memorandum of law in support of his Motion for Distribution of the Net Settlement Fund.[1] For the reasons set forth herein and in the accompanying Declaration of Melissa Mejia in Support of Lead Plaintiff's Motion for Distribution of the Net Settlement Fund ("Mejia Distribution Declaration" or "Mejia Distrib. Decl.") filed herewith, prepared on behalf of Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Claims Administrator"), Lead Plaintiff respectfully requests that the Court enter the proposed Distribution Order, submitted herewith.

If entered by the Court, the Distribution Order would, among other things: (i) approve Epiq's administrative recommendations accepting and rejecting Claims submitted in the above-captioned action (the "Action"); (ii) authorize distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted; (iii) authorize Epiq's distribution plan; (iv) authorize payment of Epiq's fees and expenses incurred and to be incurred in the administration of the settlement; and (v) grant the release of claims related to the administration or taxation of the Settlement Fund.

Pursuant to the Stipulation, Peloton Interactive, Inc. ("Peloton" or the "Company"), John Foley, Jill Woodworth, Hisao Kushi, and Brad Olson (collectively, "Defendants") have no interest in the relief sought by this motion. *See* Stipulation ¶16 ("The Settlement is not a claims-made settlement.").

## INTRODUCTION

On July 30, 2024, Magistrate Judge Kuo issued the Decision and Order ("Final Approval

---

[1] Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotation marks are omitted; and (c) all capitalized terms have the meaning ascribed to them in the Stipulation and Agreement of Settlement dated April 17, 2023 ("Stipulation") (ECF No. 80).

1

Order") granting final approval to the $13,950,000.00 cash settlement between Plaintiff, on behalf of the Class, and Defendants under the terms set forth in the Stipulation, and dismissing the Action with prejudice.  ECF No. 106.

Epiq, under Class Counsel's supervision, provided the requisite notice of the pendency and Settlement of the Action to potential Class Members, processed the Proof of Claim forms, calculated Recognized Loss amounts, and performed related work consistent with the Stipulation, and the Decision and Order preliminarily approving the settlement ("Preliminary Approval Order" or "PA Order"), ECF No. 91.  *See generally* Mejia Distrib. Decl.

Epiq has completed the processing of Claims, including Claims submitted after the May 21, 2024 Claims-submission deadline but postmarked or received on or before January 6, 2025, and related work.  As a result, the Claims Administrator is now prepared to distribute the Net Settlement Fund to Authorized Claimants in accordance with the Plan of Allocation.

## ARGUMENT

### I. THE CLAIMS ADMINISTRATOR'S ADMINISTRATIVE DETERMINATIONS SHOULD BE APPROVED

Pursuant to the Stipulation and the Preliminary Approval Order, all Class Members wishing to obtain their *pro rata* share of the Net Settlement Fund were required to timely submit a completed Proof of Claim Form with supporting documentation to Epiq, postmarked or received on or before the submission deadline of May 21, 2024.  *See, e.g.*, PA Order 25-26 ¶15; Stipulation ¶28.

As detailed in the accompanying declaration, Epiq received and reviewed all Claims submitted by potential Class Members through January 6, 2025.  Mejia Distrib. Decl. ¶3.  Epiq prepared exhibits detailing: (i) all timely eligible Claims postmarked or received on or before the Claims submission deadline (Mejia Distrib. Decl. ¶41, Ex. D-1); (ii) all late but otherwise

2

eligible claims that were postmarked or received after the Claims submission deadline but on or before January 6, 2025 (Mejia Distrib. Decl. ¶41, Ex. D-2); and (iii) all rejected Claims that were deemed ineligible through Epiq's deficiency process (Mejia Distrib. Decl. ¶41, Ex. D-3).

> A.   **Overview Of The Claims Administration Process**

To avoid undue repetition, Lead Counsel respectfully refers the Court to the Mejia Distribution Declaration filed herewith for a detailed description of the factual and procedural background of the claims review and administration process.

Briefly, Epiq sent 684,263 Postcard Notices and received and processed 157,043 Claims. Mejia Distrib. Decl. ¶¶3-4. Epiq reviewed all Claim Forms and supporting documentation to determine, among other things, whether each claimant had purchased or acquired Peloton securities during the Class Period and whether the claimant was in fact a Class Member or whether the claimant was an excluded person. *Id.* at ¶¶6-15.

Epiq made substantial efforts to provide claimants with a fair opportunity to cure deficiencies in their Claims. As set forth in the Mejia Distribution Declaration, Epiq sent a Notice of Deficient Claim Form Submission ("Deficiency Notice") to claimants who submitted Claims by mail or email that Epiq determined contained deficiencies. *Id.* at ¶¶19-20. Such deficiencies included incomplete supporting documentation, a Claim Form that did not indicate an eligible transaction, or missing signatures. *Id.* at ¶19. Epiq sent 5,932 Deficiency Notices to claimants in an effort to inform the claimants of the steps needed to remedy the deficiencies. *Id.* at ¶19. The Deficiency Notice informed the claimant that the appropriate information or documentary evidence needed to complete the Claim must be submitted within twenty (20) days from the date of the letter, or the Claim would be recommended for rejection to the extent the deficiency or ineligibility was not cured. *Id.* at ¶20.

Those who submitted Claims electronically were notified of their Claims' ineligibility or

deficiency by email in a Transaction Report listing the data that was incorrect or incomplete. *Id.* at ¶22.

Epiq received and processed claimants' responses to the Deficiency Notices and Transaction Reports. *Id.* at ¶¶21, 23. If a claimant's response corrected the defects in the Claim, Epiq updated the database to reflect the change in the Claim's status. *Id.* at ¶¶21, 23. To date, five (5) claimants have requested review by the Court of the Claim determination made by Epiq (the "Disputed Claimants"). *Id.* at ¶¶24-32. They are discussed in §I.E, *infra*.

### B. Timely Eligible Claims And Late But Otherwise Eligible Claims Should Be Accepted

Epiq has determined that 79,213 Claims should be accepted. *Id.* at ¶42. Of those Claims, 77,425 were postmarked or received on or before the Claims submission deadline ("Timely Eligible Claims") and 1,788 were postmarked or received after the Claims submission deadline but on or before January 6, 2025 ("Late But Otherwise Eligible Claims" or "Late Claims"). Mejia Distrib. Decl. ¶42, Exs. D-1, D-2. The total Recognized Losses calculated pursuant to the Plan of Allocation for the Timely Eligible Claims is $1,267,654,926.89 and the total Recognized Losses for the Late Claims is $316,447,438.11. *Id.* at ¶42. Epiq recommends, and Class Counsel agrees, that the Late Claims should be deemed timely and included in the Settlement distribution. *See* Mejia Distrib. Decl. ¶37.

"[A] district court overseeing [a] settlement distribution has inherent power to accept late claims . . . ." *In re Authentidate Holding Corp. Sec. Litig.*, No. 05 Civ. 5323(LTS), 2013 WL 324153, at *1 (S.D.N.Y. Jan. 25, 2013). In determining whether to allow a late-submitted claim to a settlement, the Court "should examine the equities." *In re Oxford Health Plans, Inc.*, 383 F. App'x 43, 45 (2d Cir. 2010). "[T]here is an implicit recognition that late claims should ordinarily be considered in the administration of a settlement of a complex action."

4

*Authentidate*, 2013 WL 324153, at *2.

The equities weigh in favor of accepting the Late But Otherwise Eligible Claims here. The Preliminary Approval Order provides that "Class Counsel may, in its discretion, accept late submitted claims for processing by the Claims Administrator so long as distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby." ECF No. 91 at 26 ¶15. Epiq believes that no delay in the processing or distribution of the Net Settlement Fund has resulted from provisionally accepting the Late Claims, *see* Mejia Distrib. Decl. ¶37, and there has been no prejudice to any Authorized Claimant in provisionally accepting the Late Claims. Therefore, Lead Plaintiff respectfully requests that the Court approve Epiq's recommendation to include the 1,788 valid Late Claims in the Settlement distribution. *See Poirer v. Bakkt Holdings, Inc.*, No. 22-CV-2283 (PK), 2025 WL 552607, at *1 (E.D.N.Y. Feb. 19, 2025) (accepting 1,818 valid claims, including 768 that were filed late, where plaintiffs contended that the late claims "have not caused delay in the distribution of the Net Settlement Fund or otherwise prejudiced any Authorized Claimant").

### C.  Ineligible Claims Should Be Rejected

Epiq has completed the processing of the Claims received through January 6, 2025 and recommends 77,830 Claims for rejection. Mejia Distrib. Decl. ¶¶39-40; Ex. D-3 (schedule of all ineligible claimants). Most of the Rejected Claims either have no Recognized Loss (62,652 Claims) or no eligible purchases/acquisitions during the Class Period (13,453 Claims). *Id.* at ¶40. The remainder of the ineligible claims were rejected because the Proof of Claim contained defects that were never cured (1,478 Claims), were withdrawn or voided by request (103 Claims), or were duplicative of another claim (144 Claims). *Id.* Lead Plaintiff respectfully requests that the Court approve Epiq's recommendation to reject the 77,830 Claims deemed ineligible.

### D. Claims Received After January 6, 2025 Should Be Rejected As Untimely

There must be a final cut-off date after which no more Claims may be accepted so that there may be a proportional distribution of the Net Settlement Fund without further delay and expense for the Class. Mejia Distrib. Decl. ¶38; *see In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648 LAK RLE, 2004 WL 3670993, at *4 (S.D.N.Y. Nov. 17, 2004) ("In any class settlement, it is necessary to establish a cutoff date to bring closure to the action."). Accordingly, Plaintiff respectfully requests that the Court order that any Claim or any responses to Deficiency Notices or Transaction Reports received after January 6, 2025 be rejected as untimely. *See* Mejia Distrib. Decl. ¶38.

### E. The Five Disputed Claims Should Be Rejected

As set forth in detail in the Mejia Distribution Declaration, 5 claimants disputed the Claims Administrator's determination of ineligibility. All 5 of the claimants did not have a Recognized Loss under the Plan of Allocation, for the reasons set forth in the Mejia Distribution Declaration at ¶¶24-32. Lead Counsel has reviewed the documentation the claimants provided and the correspondence between Epiq and the claimants. After reviewing this information, Lead Counsel agrees that the 5 disputed claims should be rejected for having no Recognized Loss.

Briefly, in order to be eligible to receive a payment from the Net Settlement Fund, a claimant must have a Recognized Loss pursuant to the Plan of Allocation. *See* ECF No. 98-3 at 10. A claimant's Recognized Loss depends upon, *inter alia*, when the Peloton security was sold, and if sold, for what amount. *Id.* Disputed Claimants Nos. 1-3, and No. 5 bought shares potentially eligible to participate in the Settlement Fund between September 11, 2020 and May 5, 2021 at 9:57 a.m., and held their shares through August 2, 2021. Mejia Distrib. Decl. ¶¶25-29, 32. Thus, Section I.c. of the Plan of Allocation applies. *Id.*; *see also* ECF No. 98-3 at 11. Under that provision, "the Recognized Loss per share is the *lesser* of: (i) the price of inflation on the

6

date of purchase/acquisition as provided in Table 1 [of the Plan of Allocation]; or . . . (ii) the purchase price minus the average closing price for the Common Stock during the 90-Day Lookback Period, which is $110.40." ECF No. 98-3 at 11. For each of these Disputed Claimants, the "lesser of" amount was the second provision, which resulted in a negative number. Mejia Distrib. Decl. at ¶¶25-29, 32. The Plan of Allocation provides that a Recognized Loss calculated to be a negative number "shall be set to zero ($0.00))." ECF No. 98-3 at 11. The relevant information for Disputed Claimant Nos. 1-3, 5 are set forth below:

| Disputed Claimant No. | Date Purchased | Price of inflation on date purchased | Purchase Price per share | Purchase price minus $110.40 | Recognized Loss |
|---|---|---|---|---|---|
| 1 | April 22, 2021 | $13.23 | $100.60 | -$9.80 | $0 |
| 2[2] | November 20, 2020 | $22.84 | $102.52 | -$7.88 | $0 |
| 3 | April 1, 2021 | $19.71 | $105.93 | -$4.47 | $0 |
| 5 | November 19, 2020 | $22.84 | $97.01 | -$13.39 | $0 |

Disputed Claimant No. 4 bought 140 shares on October 16, 2020, but sold them on November 30, 2020. Mejia Distrib. Decl. ¶30. The Plan of Allocation provides that a share sold before March 18, 2021 has a Recognized Loss per share of $0 because it was sold before any corrective disclosures. See ECF No. 98-3 at 10 ("[I]f a share of Peloton Common Stock was sold before March 18, 2021 (the earliest Corrective Disclosure Date), the Recognized Loss for that share is $0.00, and any loss suffered is not compensable under the federal securities laws."). Thus, Disputed Claimant No. 4 has no Recognized Loss either.

---

[2]  Disputed Claimant No. 2 also bought shares on November 5, 2021, after the Class Period. Those shares are not eligible to participate in the settlement and are not reflected in this chart. See ECF No. 98-3 at 11 (providing that for "each share . . . purchased or otherwise acquired after May 5, 2021, at 9:57 a.m. ET, the Recognized Loss per share is $0.00").

7

## II. THE DISTRIBUTION OF THE NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS SHOULD BE APPROVED

The Mejia Distribution Declaration sets forth a plan for distribution of the Net Settlement Fund to Timely Eligible Claims and Late But Otherwise Eligible Claims (*i.e.*, Authorized Claimants), in accordance with the Plan of Allocation. Pursuant to the plan, Epiq will mail letters to Authorized Claimants whose payment amount is less than the $10.00 minimum check amount set forth in the Notice, advising them of the fact that their *pro rata* share of the Net Settlement Fund is below the minimum threshold for payment. Mejia Distrib. Decl. ¶46(a)(ii). After setting aside a 5% reserve of the Net Settlement Fund to address any tax liability or claims administration-related contingencies that may arise, Epiq will then distribute checks (or effectuate wire transfers where applicable), to all other Authorized Claimants whose *pro rata* share of the Net Settlement Fund amounts to a distribution of $10.00 or more. *Id.* at ¶46(a)(iii). *See Meyer v. United Microelectronics Corp.*, 2022 WL 43345, at *2 (S.D.N.Y. Jan. 5, 2022) (allowing "remaining 5% of the Net Settlement Fund [to] be held in reserve [] to address any tax liability and claims administration-related contingencies that may arise").

To encourage Authorized Claimants to cash their distribution checks promptly and to avoid or reduce future expenses relating to uncashed checks, all checks for distribution should bear the notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE." Mejia Distrib. Decl. ¶46(a)(iv).

As set forth in the Notice at 14, if any funds remain in the Net Settlement Fund after the Claims Administrator has made reasonable and diligent efforts to contact claimants who have not cashed their payments, but no earlier than six (6) months after the initial distribution, the Claims Administrator should consult with Lead Counsel to determine if a redistribution of the remaining Net Settlement Fund (including any funds not depleted from the 5% reserve) is cost effective.

8

*Id.* at ¶46(a)(iii), (b).  Such redistribution would go to Class Members who cashed their initial distribution check and would receive a minimum of $10.00.  *Id.* at ¶46(b).  Determining whether such a redistribution is cost effective requires taking into consideration payment of any additional costs and expenses that would be associated with a redistribution.  *Id.*  These redistributions shall be repeated until it is no longer feasible to conduct any further distributions of the Net Settlement Fund.  *Id.* at ¶46(c).  Any *de minimis* balance that still remains in the Net Settlement Fund at that point shall be donated to the CII Research and Education Fund ("CII-REF"), in accordance with the Notice.  *See id.*; ECF No. 98-3 at 14 (providing that if funds are left over after all feasible redistributions are made "such remaining balance will then be distributed to a non-sectarian, not-for-profit organization identified by Lead Counsel").

      CII-REF is an appropriate recipient—or *"cy pres* designee"— of any residual Settlement Funds because it "reasonably approximate[s] the interests of the class."  *In re Citigroup Inc. Sec. Litig.*, 199 F. Supp. 3d 845, 852 (S.D.N.Y. 2016).  This Action was brought under the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder. Stipulation at 2.  The purpose of the Exchange Act is "to protect investors against manipulation of stock prices."  *Basic Inc. v. Levinson*, 485 U.S. 224, 230 (1988).  As the Class consists of all persons or entities who purchased or otherwise acquired Peloton securities during the Class Period and were damaged thereby (Stipulation ¶I.vv), its members are located throughout the nation.  Consistent with the case law, the *cy pres* recipient should relate to protecting investors from securities fraud. CII-REF is a nonpartisan tax-exempt organization under § 501(c)(3) of the Internal Revenue Code, which "focuses on educating the public, investors, corporations, and other financial market participants and policymakers about topical issues, including corporate governance, shareholder rights, investment, capital markets, accounting standards and securities litigation."  *See*

9

www.ciiref.org (last visited Apr. 24, 2025). CII-REF is therefore a suitable recipient of any residual funds in this shareholder class action alleging violations of the federal securities laws. *See Smilovits v. First Solar, Inc.*, No. CV-12-00555-PHX-DGC, 2020 BL 245619, at *7 (D. Ariz. June 30, 2020) (approving CII-REF as the *cy pres* recipient to be "a suitable recipient of any residual funds in this shareholder class action alleging violations of the federal securities laws" because "there is a nexus between the plaintiff class" and CII-REF).

### III. PAYMENT OF EPIQ'S OUTSTANDING FEES AND EXPENSES FROM THE SETTLEMENT FUND SHOULD BE AUTHORIZED

The Court retains jurisdiction to consider an application for an award of fees and reimbursement of expenses relating to the Claims Administrator's implementation of the terms of the Stipulation. Stipulation at ¶49. Pursuant to the Stipulation, the Settlement Fund may be used to pay Notice and Administration Costs, which include all expenses incurred in connection with distributing the Notices to the Class and the costs of the Claims Administrator, among other things. *See* Stipulation ¶¶1(gg), 12.

Epiq was retained to supervise and administer the notice procedure and to process Claims in connection with the Settlement. *See* PA Order 24 ¶7. As Claims Administrator, Epiq was and is responsible for, among other things, printing and mailing copies of the Postcard Notices to Class Members and nominees, effecting publication of the Summary Notice of the Settlement, processing and reviewing the filed Claims, preparing the tax returns for the Settlement Fund, calculating the *pro rata* distribution amount by calculating each Authorized Claimant's percentage of the Net Settlement Fund in accordance with the Plan of Allocation, and distributing the Net Settlement Fund to accepted claimants. *See generally* Mejia Distrib. Decl.; PA Order 24-26, ¶¶7, 11-15; Stipulation ¶¶1(g), 21-22, 24, 28.

In connection with that work, Epiq has incurred a total of $833,171.77 in administrative

fees and expenses, which includes $127,619.00 in reimbursements to brokers and nominees for expenses they incurred in connection with mailing the Postcard Notices to potential Class Members or providing the relevant information for Epiq to do so. Mejia Distrib. Decl. ¶45; Notice at 14 (providing that brokers and nominees are entitled to reimbursement from the Settlement Fund). To date, Epiq has received no payment for its fees and expenses. *See* Mejia Distrib. Decl. ¶45.

Plaintiff respectfully requests that the Court authorize payment to Epiq of the outstanding balance of $833,171.77 for costs and expenses already incurred, and the reservation of $23,606.75 for anticipated costs and expenses related to the initial distribution. *See id*. If the cost of the initial distribution is less than $23,606.75, the excess will be returned to the Net Settlement Fund. *Id*.

## IV. RETENTION OF PROOF OF CLAIM FORMS AND OTHER DOCUMENTS

Plaintiff also requests that the Court permit Epiq to destroy any paper copies of the Proof of Claim forms and all supporting documentation one (1) year after the Initial Distribution, or the Second Distribution if it occurs, and electronic copies of the same one (1) year after all funds have been distributed. *See* Mejia Distrib. Decl. ¶46(e).

## V. RELEASE OF CLAIMS

To allow the full and final distribution of the Net Settlement Fund, Plaintiff respectfully requests that the Court bar any further Claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and release and discharge from any and all claims arising out of the claims administration all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein or otherwise involved in the administration or taxation of the Settlement Fund. *See* Stipulation ¶33.

11

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Motion for Distribution of the Net Settlement Fund should be granted, and the [Proposed] Distribution Order should be entered.

Dated: April 25, 2025

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: jwilson@faruqilaw.com

*Attorneys for Lead Plaintiff and Lead Counsel for the Settlement Class*