UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
IN RE PELOTON INTERACTIVE, INC., :
SECURITIES LITIGATION.          :        **REPORT AND**
                                :        **RECOMMENDATION**
                                :
                                :        21-CV-2369 (CBA)(PK)
----------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Richard Neswick ("Lead Plaintiff") has filed an unopposed Motion for Disbursement of Funds. ("Motion," Dkt. 108; *see* Notice of Non-Opposition, Dkt. 111.) The Court previously granted the parties' Motion for Final Settlement Approval. ("Final Approval Order," Dkt. 106.) The Honorable Catherine Bagley Amon has referred the Motion to me for a report and recommendation. For the reasons stated below, I respectfully recommend that the Motion be granted and that the funds be disbursed as described herein.

## BACKGROUND AND PROCEDURAL HISTORY

I assume familiarity with the underlying facts in this action as set forth in the Court's Preliminary Approval Order (Dkt. 91) and the Final Approval Order. This action alleges violations of federal securities laws against Peloton Interactive, Inc. ("Peloton"), John Foley, Jill Woodworth, Hisao Kushi, and Brad Olson (collectively, "Individual Defendants" and, with Peloton, "Defendants") on behalf of a settlement class consisting of purchasers of Peloton securities between September 11, 2020 and May 5, 2021. (Amended Complaint ¶ 1, Dkt. 45; Preliminary Approval Order at 2.) The Court previously appointed Richard Neswick as class representative ("Lead Plaintiff") and Faruqi & Faruqi, LLP as Class Counsel. (Nov. 16, 2021 Order.) The parties negotiated and executed a proposed settlement agreement, dated April 17, 2023, with a total settlement amount of $13,950,000. ("Settlement Agreement" ¶ 1-uu, Dkt. 80.)

On February 21, 2024, the Court preliminarily approved the parties' proposed class settlement, finding that it would likely be able to approve the proposed settlement as fair, reasonable, and adequate.  (Preliminary Approval Order at 21.)  The Court certified a class for settlement purposes only ("Settlement Class"), approved the Postcard Notice (Dkt. 98-2) and notice packet comprised of the Proposed Notice and Claim Form (Dkt. 98-3), approved the contemplated notice distribution process, and authorized Epiq Systems, Inc. ("Epiq") to be the settlement administration and begin issuing the notice packet to Settlement Class members.  (Prelim. Approval Order at 24–25.)

In the Final Approval Order, the Court approved the Plan of Allocation as described in the Proposed Notice.  The Lead Plaintiff now states that Epiq "has completed the processing of Claims . . . and is now prepared to distribute the Net Settlement Fund to Authorized Claimants in accordance with the Plan of Allocation."  (Lead Plaintiff's Memorandum of Law ("Pl. Mem.") at 2, Dkt. 109.)

## DISCUSSION

Lead Plaintiff asks that the Court adopt the proposed Distribution Order (Dkt. 108-1), authorize distribution for claims that Epiq accepted, reject for distribution claims that Epiq rejected, authorize payment of Epiq's fees and expenses, and grant release of any and all claims that may arise from the administration of this settlement.  (*See* Pl. Mem.)  In support of the Motion, Lead Plaintiff has filed Plaintiff's Memorandum, the proposed Distribution Order, and the Declaration of Melissa Mejia ("Mejia Decl.," Dkt. 110) and accompanying exhibits.

### I.    Approved Claims

Epiq disseminated 684,263 copies of the Postcard Notice to Settlement Class members and received 157,043 claim forms by January 6, 2025.  (Mejia Decl. ¶¶ 4–5.)  Epiq has determined that 79,213 claims should be accepted, comprised of 77,425 claims that were received by the submission deadline of May 21, 2024 ("Timely Claims") and 1,788 claims that were received after the deadline but

by January 6, 2025 ("Late Claims"). (Pl. Mem. at 4; *see* Timely Authorized Claims, Ex. D-1 to Mejia Decl., Dkt. 110-4, and Late But Authorized Claims, Ex. D-2 to Mejia Decl., Dkt. 110-5.)

Pursuant to the Preliminary Approval Order, in order to "be eligible to receive a distribution from the Net Settlement Fund," any potential claimant must have submitted a properly executed claim form to Epiq before May 21, 2024. (Prelim. Approval Order at 25, Dkt. 91.) It also states, however, that "Class Counsel may, it its discretion, accept late submitted claims for processing by [Epiq] so long as distribution of the Net Settlement Fund to the Authorized Claimants is not materially delayed thereby." (*Id.* at 26.)

Lead Plaintiff asks that the Court approve both the Late Claims and Timely Claims (Pl. Mem. at 2–5; *see* Mejia Decl. ¶¶ 39, 42.). He contends that "there has been no prejudice to any Authorized Claimant in provisionally accepting the Late Claims" (Pl. Mem. at 5), and "Epiq believes no delay has resulted from the provisional acceptance of these Late But Otherwise Eligible Claims" (Mejia Decl. ¶ 37). Lead Plaintiff does not specify why claims filed up to approximately six months after the Court-ordered Claim submission deadline should be accepted, but it is reasonable to infer that Epiq required this time to process the large volume of claims it received, such that including the Late Claims did not delay Lead Plaintiff's filing of the Motion. Moreover, the Late Claims comprise a very small amount— less than 3%—of the total claims for which Plaintiffs seeks approval for distribution. Courts routinely permit the inclusion of late but otherwise eligible claims. *See, e.g.*, *In re Oxford Health Plans, Inc.*, 383 F. App'x 43, 45 (2d Cir. 2010) ("A district court overseeing a settlement distribution has inherent power to accept late claims despite the contrary terms of an agreement" among the parties." (cleaned up)).

I find, therefore, that inclusion of Late Claims does not materially delay the distribution to those who filed Timely Claims. Accordingly, I respectfully recommend that the Court grant Lead Plaintiff's request to include in the distribution both the Late Claims and Timely Claims.

3

## II.   Rejected Claims

Lead Plaintiff recommends 77,830 claims for rejection.  The majority of these claims have no Recognized Loss[1] (62,652 claims); other claims are recommended for rejection because the claimant did not make an eligible purchase or acquisition of Peloton stock during the Class Period (13,453). (Pl. Mem. at 5; *see* Rejected Claims, Ex. D to Mejia Decl., Dkt. 110-6.)  Epiq also recommends for rejection 1,478 claims whose Proof of Claim defects were never cured, 103 claims that were withdrawn or voided at the claimant's request, and 144 claims that were duplicative of other claims.  (Pl Mem. at 5; *see* Mejia Decl. ¶ 40.)

Five claimants seek the Court's review of Epiq's determination that their claims are ineligible because they have no Recognized Loss.  (Pl. Mem. at 6; *see* Disputed Claimant Documents, Dkt. 110-3.)  The price at which four of these claimants purchased their shares of Peloton stock was less than the average closing price for stock during the 90-day lookback period, *i.e.*, they suffered no compensable loss from Defendants' alleged conduct and thus have no Recognized Loss.  (*See* Mejia Decl. ¶¶ 25–32.)  The fifth claimant purchased and sold shares outside the earliest Corrective Disclosure date, such that the Recognized Loss is zero.  (*Id.* ¶¶ 30–31.)

I find that these five claimants each have a Recognized Loss of 0 and are thus ineligible to receive a distribution of the Net Settlement Fund.

---

[1] "Recognized Loss" represents a claimant's loss on Peloton stock purchased from September 11, 2020 through May 5, 2021 (the "Class Period") that allegedly resulted from Defendants' conduct. (*See* Prop'd Notice at 10–13.)  The Proposed Notice states that "in order to have been damaged by the alleged violations of the federal securities laws, Peloton Common Stock purchased or otherwise acquired during the Settlement Class Period must have been held during a period of time in which its price declined due to the disclosure of information which allegedly corrected a misleading statement or omission. Lead Plaintiff and Class Counsel have determined that such price declines occurred on March 18, 2021, April 19, 2021, and May 5, 2021 (the 'Corrective Disclosure Dates').  Accordingly, if a share of Peloton Common Stock was sold before March 18, 2021 (the earliest Corrective Disclosure Date), the Recognized Loss for that share is $0.00, and any loss suffered is not compensable under the federal securities laws. Likewise, if a share of Peloton Common Stock was both purchased and sold between two consecutive Corrective Disclosure Dates, the Recognized Loss for that share is $0.00." (*Id.* at 10.)

Accordingly, I respectfully recommend that the Court reject and exclude from distribution the 77,830 claims that Epiq determined to be ineligible.

Lead Plaintiff asks that the Court establish the deadline of January 6, 2025 as the date after which no claims may be accepted to ensure no "further delay and expense for the Class." (Pl. Mem. at 6.) To effectuate timely settlement, a deadline must be established. *See, e.g.*, *In re Auction Houses Antitrust Litig.*, No. 00-CV-648 (LAK)(RLE), 2004 WL 3670993, at *4 (S.D.N.Y. Nov. 17, 2004) ("In any class settlement, it is necessary to establish a cutoff date to bring closure to the action."), *R&R adopted*, 2005 WL 23313 (S.D.N.Y. Jan. 5, 2005).

I find this deadline to be reasonable and, therefore, respectfully recommend that any claim submitted after January 6, 2025 be deemed ineligible to receive distribution.

## III.    Distribution and Payment to Epiq

Lead Plaintiff asks the Court to "authorize payment to Epiq of the outstanding balance of $833,171.77 for costs and expenses already incurred, and the reservation of $23,606.75 for anticipated costs and expenses related to the initial distribution." (Pl. Mem. at 11.) Lead Plaintiff also asks that Epiq be permitted to destroy all copies of Proof of Claim forms and all supporting documentation: paper copies one year after the Initial Distribution or any second distribution, and electronic copies one year after all funds have been distributed. (*Id.*)

Epiq provided notice to potential claimants, processed claims, calculated *pro rata* distribution amounts, prepared tax returns, and provided to Class Counsel regular reports of and invoices for all its work. (Pl. Mem. at 10; Mejia Decl. ¶ 44.) Epiq has received no payment thus far for its work. (Pl. Mem. at 11.)

If the Motion is granted, Epiq will calculate the final awards to all authorized claimants, distribute the funds to claimants, conduct any redistributions, and direct any final funds to a nonsectarian, non-profit organization identified by Class Counsel. (Mejia Decl. at 19–20.) It estimates

5

that this work will cost $23,606.75.  (Distribution Estimate, Ex. E to Mejia Decl., Dkt. 110-7.)  If the actual costs of the distribution are less than that amount, any excess will be returned to the settlement fund for redistribution.  (Pl. Mem. at 11.)

I respectfully recommend that the Court authorize payment to Epiq of the outstanding balance of $833,171.77 for costs and expenses already incurred and the reservation of $23,606.75 to be paid to Epiq for its work to accomplish the final distribution.  I further recommend that Epiq's request to destroy copies of the Proof of Claim forms and all supporting documentation be granted.

## IV.    Releases

Lead Plaintiff asks that the Court "bar any further Claims against the net Settlement Fund beyond the amount allocated to Authorized Claimants, and release and discharge from any and all claims arising out of the claims administration process" those individuals involved in processing claims. (Pl. Mem. at 11.)  The parties have agreed to this release of claims in the Settlement Agreement. (¶ 33.)

I find this request to be reasonable and respectfully recommend that it be included in the Court's final order.

**CONCLUSION**

For the above reasons, I respectfully recommend that the Motion be granted and that the Court enter the proposed Distribution Order (Dkt. 108-1).

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).



PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          May 21, 2025